David S. Kupetz (CA Bar No. 125062)
  *dkupetz@sulmeyerlaw.com*
Asa S. Hami (CA Bar No. 210728)
  *ahami@sulmeyerlaw.com*
Claire K. Wu (CA Bar No. 295966)
  *ckwu@sulmeyerlaw.com*
**Sulmeyer**Kupetz
A Professional Corporation
333 South Grand Ave., Suite 3400
Los Angeles, California  90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

Attorneys for Debtor and Debtor in Possession
One Way Loans, LLC, d/b/a PowerLend

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:18-bk-24572-SK |
| ONE WAY LOANS, LLC, a California limited liability company, d/b/a POWERLEND, | Chapter 11 |
| Debtor. | **DEBTOR'S MOTION FOR ORDER APPROVING NEW SUBLEASE OF REAL PROPERTY FOR DEBTOR'S OPERATIONS; DECLARATION OF DAVID REDLENER IN SUPPORT THEREOF** |
| | [No Hearing Required Unless Requested] |

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 · FAX 213.629.4520

CKW\2667359v2

1  **TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY JUDGE,**

2  **THE OFFICE OF THE UNITED STATES TRUSTEE, AND OTHER PARTIES IN INTEREST:**

3  **MOTION**

4      One Way Loans, LLC, d/b/a PowerLend, the debtor and debtor in possession in the above-

5  captioned bankruptcy case (the "Debtor"), hereby moves this Court, pursuant to 11 U.S.C. § 363, for an

6  order approving a new sublease of real property for the Debtor's business operations, which sublease is

7  between the Debtor and an insider of the Debtor, David Redlener (the "Sublessor"), the terms of which

8  are set forth in the sublease agreement (collectively with other lease documents that are incorporated

9  into the sublease agreement) (the "Sublease") attached hereto as **Exhibit 1**. The Motion is made

10  pursuant to 11 U.S.C. § 363 on the following grounds:

11      The Debtor's pre-petition commercial real property lease with CF Culver City Office LP (the

12  "Culver City Lease"), the landlord for the premises at 10325 Jefferson Blvd., Culver City, CA 90232,

13  was rejected as a matter of law effective April 17, 2019. As a result, the Debtor was required to and

14  has since vacated such premises and transitioned to a new premises, as of May 1, 2019, of a size more

15  appropriate for the Debtor's current operations, and at a monthly rent substantially lower than the

16  Culver City Lease. More specifically, the Debtor has entered into, and is seeking Court approval of,

17  the Sublease for real property located at 1134 S. Crest Dr., Los Angeles, CA 90035 (the "New

18  Premises").

19      While the New Premises is a residential real property, the landlord, Joseph Elishmereni, Yair

20  Elishmereni, and Nazila Elishmereni (collectively, the "Landlord"), is fully aware that the property will

21  be used primarily for business purposes, and the property is in an area that permits the operation of a

22  business on the premises. At the landlord's request, the underlying lease is between David Redlener

23  (the Sublessor) and the Landlord, with Mr. Redlener subleasing the New Premises to the Debtor on a

24  strict dollar-for-dollar basis.[1]

25      The Sublease is supported by a good business justification and is in the best interests of the

26

27  ────────────

[1]The Landlord is a third party, and the Debtor has no connections with the Landlord.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   Debtor's estate. The Sublease will allow the Debtor to lease a 3,000 square foot space at the monthly

2   rate of only $7,950 (as opposed to a 4,980 square foot space, at the monthly rate of $22,481, under the

3   Culver City Lease), and is therefore dramatically less costly. The substantial savings to the estate will

4   not only permit the Debtor to grow its business, but will also support the Debtor's ability to meet its

5   operational needs.

6          Finally, although this new arrangement (i.e., entering into the Sublease) may be considered an

7   ordinary course of business transaction that requires no Court approval, the Debtor brings the instant

8   Motion in an abundance of caution.

9          This Motion is based on the Motion, the accompanying memorandum of points and authorities,

10  declaration of David Redlener, any exhibits thereto, the concurrently-filed notice of this Motion, and

11  such other evidence and argument that may be presented to the Court prior to or at any hearing that

12  may be requested on the Motion.

13         **WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

14         1.      Granting the Motion;

15         2.      Approving the Sublease;

16         3.      Authorizing the Debtor to take any and all actions necessary or appropriate to

17                 effectuate the Sublease; and

18         4.      Granting such other and further relief as the Court deems just and proper.

19  DATED: May 9, 2019                    Respectfully submitted,

20
                                          **Sulmeyer**Kupetz
21                                        A Professional Corporation

22
                                          By:  _/s/ Claire K. Wu_
23                                             David S. Kupetz
                                               Asa S. Hami
24                                             Claire K. Wu
                                               Attorneys for Debtor and Debtor in Possession
25                                             One Way Loans, LLC, d/b/a/ PowerLend

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2    The Debtor hereby submits the following memorandum of points and authorities in support

3 of the foregoing motion (the "Motion").[2]

4

### I.

5

### FACTS

6    The Debtor, a California limited liability company, d/b/a PowerLend, was founded on April

7 11, 2017, in California.  The Debtor operates an online subprime small-loan consumer finance

8 business in the State of California.

9    On December 17, 2018 (the "Petition Date"), the Debtor filed its voluntary petition for relief

10 under Chapter 11 of the Bankruptcy Code, commencing this case.  The Debtor continues to operate its

11 business and manage its affairs as a debtor in possession in this case.

12    Prior to the Petition Date, the Debtor maintained its office at 10325 Jefferson Blvd., Culver

13 City, CA 90232 (the "Former Premises"), pursuant to the Culver City Lease.  The Former Premises was

14 approximately 4,980 square feet and carried a monthly base rent obligation of $20,816 (plus a parking

15 obligation of $1,665 per month), for a total monthly obligation of $22,481.

16    Prior to the Petition Date, when the Debtor had hopes for expansion, the size of the Former

17 Premises fit the Debtor's needs.  Since the Petition Date, however, the Debtor re-examined the Culver

18 City Lease and, among other reasons, including the Debtor's efforts to reduce costs, determined that

19 leasing such a large space was no longer in the best interests of the Debtor, its operations, or its estate.

20    Effective April 17, 2019, the Culver City Lease was deemed rejected as a matter of law under

21 section 365(d) of the Bankruptcy Code.  The Debtor had an informal agreement with the landlord for

22 the Culver City Lease to allow the Debtor until the end of April to fully vacate the Former Premises,

23 and the Debtor has since vacated the Former Premises.  In contemplation of the rejection of the Culver

24 City Lease and the need to re-locate to a premises more appropriate for the Debtor's current operations

25 in terms of size and cost, the Debtor searched for a more suitable space.  Based on its research and

26 _____

27 [2]Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   investigation, the Debtor determined that re-locating to another commercial space would not be cost-

2   effective for its operations, and that leasing residential space made the most economic and business

3   sense.

4          The Debtor ultimately found the New Premises, the residential real property located at 1134 S.

5   Crest Dr., Los Angeles, CA 90035.  The landlord agreed to lease the New Premises for the Debtor's

6   operations, but required that the lease be between the landlord and David Redlener (the "Sublessor").[3]

7   In turn, Mr. Redlener agreed to sublease the premises to the Debtor.[4]

8          As set forth above, while the Sublease is for a residential property, the Landlord is fully aware

9   that the property will be used primarily for business purposes, and the property is in an area that

10  permits the operation of a business on the premises.  Further, although the Sublease is with an insider

11  of the Debtor, Mr. Redlener agreed to sublease the property to the Debtor on a strict dollar-for-dollar

12  basis.

13         The salient terms of the Sublease are as follows:

14  1.      Premises:  3,000 square feet located at 1134 S. Crest Dr., Los Angeles, CA 90035.

15  2.      Consideration:  The Debtor shall pay a monthly base rent of $7,950, which equals

16  approximately only 35% of the Debtor's monthly obligations under the Former Lease.

17  3.      Term:  The Sublease has an identical term as Mr. Redlener's lease with the Landlord.

18  The Sublease will commence on April 8, 2019, and will terminate on April 30, 2020.

19         The New Premises includes a 1st floor open floor plan that will be used entirely for the Debtor's

20  business operations, and a 2nd floor with a split use for Mr. Redlener's business office and living space

21  while he is conducting business in Los Angeles.[5]

22

23  _____

24  [3] A true and correct copy of the original lease agreement between the Sublessor and the Landlord is attached hereto as **Exhibit 2**.

25  [4] A true and correct copy of the sublease agreement between the Debtor and the Sublessor is attached hereto as **Exhibit 1**.

    [5] Mr. Redlener resides in New York, and would otherwise have to rent a living space or stay in hotels while conducting
26  business in Los Angeles.  Before this Sublease, as set forth in prior papers filed with the Court, the Debtor was paying
    approximately $2,000 per month for Los Angeles living accommodations for Mr. Redlener through Mr. Redlener's lease of
27  a residence.  With this new Sublease, the Debtor will no longer need to, and will not, pay Mr. Redlener for such lease
    expenses.  This presents yet a further benefit and decrease in cost for the Debtor from the Sublease.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

## II.

## THE COURT SHOULD APPROVE THE NEW SUBLEASE

Under Bankruptcy Code Section 363(b)(1), the Debtor may use, sell, or lease property of the estate other than in the ordinary course of business after notice and a hearing. *See* 11 U.S.C. § 363(b)(1). Before approving a proposed use, sale, or lease, courts require that the trustee or debtor in possession articulate some business justification. *See, e.g., Institutional Creditors of Continental Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *see Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) (citing *In re Continental Airlines, Inc.*, 780 F.2d 1223 (5th Cir. 1986)). Under Bankruptcy Code Section 363(c)(1), a transaction in the ordinary course of business requires no Court approval. *See* 11 U.S.C. § 363(c)(1).

To the extent entry into the Sublease is not considered ordinary course of business, the Debtor submits the Sublease "makes good business sense" and should be approved, for the following reasons:

The Sublease will allow the Debtor to operate in a space at a substantially reduced rental rate than it had at the Former Premises. Specifically, the Sublease will allow the Debtor to sublease a 3,000 square foot space at the monthly rate of $7,950 (as opposed to a 4,980 square foot space, at the monthly rate of $22,481, under the Culver City Lease), and is significantly less costly. The Sublease will result in substantial savings to the estate, which savings will not only permit the Debtor to grow its business, but will also support the Debtor's ability to meet its operational needs.

In addition to the above, the Sublease was the quickest and most viable replacement lease the Debtor could find, and allows the Debtor to occupy a practical workspace that offers the Debtor the space it needs (and none that it does not). It is in the Debtor's business judgment that the Sublease is in the best interest of the estate and should be approved.

/ / /

/ / /

/ / /

/ / /

/ / /

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

CKW\ 2667359v2

# III.

## CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that the Court enter an order granting the Motion.

DATED:  May 9, 2019

Respectfully submitted,

**Sulmeyer**Kupetz
A Professional Corporation


By:   */s/ Claire K. Wu*  _____
        David S. Kupetz
        Asa S. Hami
        Claire K. Wu
        Attorneys for Debtor and Debtor in Possession
        One Way Loans, LLC, d/b/a/ PowerLend

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

# DECLARATION OF DAVID REDLENER[6]

I, David Redlener, declare:

1.     I am one of the co-founders, and am the Chief Executive Officer, of One Way Loans, LLC, a California limited liability company, d/b/a PowerLend (the "Debtor").

2.     I am a licensed attorney, and oversee the operations, procedures, and strategic growth initiatives of the Debtor. As CEO of the Debtor, I have, subject to the control and oversight of the Debtor's Manager and the Board of Directors, general and active supervision and management over the business of the Debtor and over its several officers, assistants, agents, and employees.

3.     As a founding member of the Debtor, and based on my position with the Debtor and my overall experience, I am extremely familiar with, and have an intimate knowledge of, the Debtor's operations, cash position, financial condition, and all other aspects of the Debtor and its business, as well as the consumer lending industry in general.

4.     I submit this declaration in support of the foregoing Motion.

5.     The Debtor, a California limited liability company, d/b/a PowerLend, was founded on April 11, 2017, in California. The Debtor operates an online subprime small-loan consumer finance business in the State of California.

6.     On December 17, 2018 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing this case. The Debtor continues to operate its business and manage its affairs as a debtor in possession in this case.

7.     Prior to the Petition Date, the Debtor maintained its office in 10325 Jefferson Blvd., Culver City, CA 90232 (the "Former Premises"), pursuant to a lease with CF Culver City Office LP (the "Culver City Lease"). The Former Premises was approximately 4,980 square feet and carried a monthly base rent obligation of $20,816 (plus a parking obligation of $1,665 per month), for a total monthly obligation of $22,481.

8.     Prior to the Petition Date, when the Debtor had hopes for expansion, the size of the

---

[6]Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the motion to which this declaration is attached (the "Motion").

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    Former Premises fit the Debtor's needs. Since the Petition Date, however, the Debtor re-examined the

2    Culver City Lease and, among other reasons, including the Debtor's efforts to reduce costs, determined

3    that leasing such a large space was no longer in the best interests of the Debtor, its operations, or its

4    estate.

5         9.    I understand that the Culver City Lease was rejected as a matter of law effective April

6    17, 2019. The Debtor had an informal agreement with the landlord for the Culver City Lease to allow

7    the Debtor until the end of April to fully vacate the Former Premises, and the Debtor has since vacated

8    the Former Premises.

9         10.    In contemplation of the rejection of the Culver City Lease and the need to re-locate to a

10    premises more appropriate for the Debtor's current operations in terms of size and cost, the Debtor

11    searched for a more suitable space. Based on the Debtor's research and investigation, the Debtor

12    determined that re-locating to another commercial space would not be cost-effective for its operations,

13    and that leasing residential space made the most economic and business sense.

14         11.    The Debtor ultimately found the residential real property located at 1134 S. Crest Dr.,

15    Los Angeles, CA 90035 (the "New Premises"). The landlord, Joseph Elishmereni, Yair Elishmereni,

16    and Nazila Elishmereni (collectively, the "Landlord"), agreed to lease the New Premises for the

17    Debtor's operations, but required that the lease be between me, individually (not the Debtor), and the

18    Landlord. In turn, I agreed to sublease the premises to the Debtor on a strict dollar-for-dollar basis.

19         12.    The Landlord is a third party, and the Debtor has no connections with the Landlord.

20         13.    A true and correct copy of the sublease agreement between me and the Debtor is

21    attached as **Exhibit 1**.

22         14.    A true and correct copy of the original lease agreement between me and the Landlord is

23    attached as **Exhibit 2**.

24         15.    Based on my discussions with the Landlord, while the Sublease is for a residential

25    property, the Landlord is fully aware that the property will be used primarily for business purposes. I

26    am also informed and understand that the property is in an area that permits the operation of a business

27    on the premises.

28         16.    The New Premises includes a 1st floor open floor plan that will be used entirely for the

1  Debtor's business operations, and a 2nd floor with a split use for my business office and living space

2  while I am conducting business in Los Angeles.

3      17.    I believe the Sublease "makes good business sense" because the Sublease will allow the

4  Debtor to operate in a space at a substantially reduced rental rate than it had at the Former Premises.

5  More specifically, the Sublease will allow the Debtor to sublease a 3,000 square foot space at the

6  monthly rate of $7,950 (as opposed to a 4,980 square foot space, at the monthly rate of $22,481, under

7  the Culver City Lease).  The Sublease will result in substantial savings to the Debtor's estate, which

8  savings will not only permit the Debtor to grow its business, but will also support the Debtor's ability to

9  meet its operational needs.

10      18.    The Sublease was the quickest and most viable replacement lease the Debtor could find,

11  and allows the Debtor to occupy a practical workspace that offers the Debtor the space it needs (and

12  none that it does not).

13      19.    It is in the Debtor's business judgment that the Sublease is in the best interest of the

14  estate and should be approved.

15      I declare under penalty of perjury that the foregoing is true and correct and that this declaration

16  was executed on May $\underline{8th}$, 2019, at Los Angeles, California.

17

18                    David Redlener

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

CKW\ 2667359v2

# EXHIBIT 1

# SUBLEASE AGREEMENT

This is an agreement to sublet real property according to the terms specified below.

The sublessor agrees to sublet and the subtenant agrees to take the premises described below.  Both parties agree to keep, perform and fulfill the promises, conditions and agreements below:

1.  The sublessor is: __David Redlener__

2.  The subtenant is: __One Way Loans, LLC dba PowerLend__

3.  The location of the premises is: __1134 S. Crest Drive, Los Angeles, CA 90035__

4.  The term of this sublease is __1 year 22 days__ , beginning __April 8__ , 20 __19__ . The rent is $ __7,950.00__ per month, payable in advance on the __1st__ day of each month.  The rent is payable by wire to to __Joseph Elishmereni__ .

5.  The sublease agreement will terminate on (date) __April 30, 2020__ .  There shall be no holding over under the terms of this sublease agreement under any circumstances.

6.  All charges for utilities connected with premises which are to be paid by the sublessor under the master lease shall be paid by the subtenant for the term of this sublease.

7.  Subtenant agrees to surrender and deliver to the sublessor the premises and all furniture and decorations within the premises in as good a condition as they were at the beginning of the term, reasonable wear and tear excepted.  The subtenant will be liable to the sublessor for any damages occurring to the premises or the contents thereof or to the building which are done by the subtenant or his guests.

8.  Subtenant agrees to pay to sublessor a deposit of $ __0__ to cover damages and cleaning. Sublessor agrees that if the premises and contents thereof are returned to him/her in the same condition as when received by the subtenant, reasonable wear and tear thereof excepted, (s)he will refund to the subtenant $ __N/A__ at the end of the term, or within 30 days thereafter.  Any reason for retaining a portion of the deposit shall be explained in writing within 30 days to the subtenant.

9.  ~~At the time of taking possession of the premises by the subtenant, the sublessor will provide the subtenant with an inventory form within three (3) days of taking possession.~~

10. This sublease agreement incorporates and is subject to the original lease agreement between the sublessor and his lessor, a copy of which has previously been provided, and which is hereby referred to and incorporated as if it were set out here at length.  The subtenant agrees to assume all of the obligations and responsibilities of the sublessor under the original lease for the duration of the sublease agreement.

1

EXHIBIT 1 - 000010

11. In the event of any legal action concerning this sublease, the losing party shall pay to the prevailing party reasonable attorney's fees and court costs to be fixed by the court wherein such judgment shall be entered.

12. Other ___N/A_____
_____
_____
_____

13. This lease constitutes the sole agreement between the parties, and no additions, deletions or modifications may be accomplished without the written consent of both parties (ANY ORAL REPRESENTATIONS MADE AT THE TIME OF EXECUTING THIS LEASE ARE NOT LEGALLY VALID AND, THEREFORE, ARE NOT BINDING UPON EITHER PARTY).

14. The words "sublessor" and "subtenant" as used herein include the plural as well as the singular; no regard for gender is intended by the language in this sublease.

15. If the subtenant is under 18 years of age, then his/her legal guardian or parent guarantees and agrees to perform all of the terms, covenants and conditions of this sublease by affixing his signature below.

16. Each signatory to this sublease acknowledges receipt of an executed copy thereof.

17. This sublease is not binding upon either party unless approved by the landlord as provided below.

18. The parties hereby bind themselves to this agreement by their signatures affixed below on this __8th__ day of ___April_____ , 20 19 .

**SUBLESSOR**                                    **SUBTENANT**

David Redlener                                    One Way Loans, LLC dba PowerLend

By: David Redlener, as an individual       By: David Redlener, CEO

ORIGINAL LEASE ATTACHED: _____Yes  __X__No
INVENTORY CHECKLIST ATTACHED: _____Yes  __X__No

2

EXHIBIT 1 - 000011

# EXHIBIT 2

DocuSign Envelope ID: 26D32B79-0B9E-41A5-ABFC-E5AF2660DDAE



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**RESIDENTIAL LEASE OR
MONTH-TO-MONTH RENTAL AGREEMENT**
(C.A.R. Form LR, Revised 6/18)

Date __04/03/2019__ , ____JOSEPH ELISHMERENI, YAIR ELISHMERENI, NAZILA ELISHMERENI____ ("Landlord") and
____DAVID REDLENER____ ("Tenant") agree as follows ("Agreement"):

**1. PROPERTY:**
   **A.** Landlord rents to Tenant and Tenant rents from Landlord, the real property and improvements described as: __1134 S. CREST__
   __DRIVE, LOS ANGELES, CA 90035__ ("Premises").
   **B.** The Premises are for the sole use as a personal residence by the following named person(s) only: __DAVID REDLENER__

   **C.** The following personal property, maintained pursuant to paragraph 11, is included:
   _____ or ☒ (if checked) the personal property on the attached addendum is included.
   **D.** The Premises may be subject to a local rent control ordinance _____ .

**2. TERM:** The term begins on (date) __April 8, 2019__ ("Commencement Date"). If Tenant has not paid all amounts then due;
   (i) Tenant has no right to possession or keys to the premises and; (ii) this Agreement is voidable at the option of Landlord, 2 calendar
   days after giving Tenant a Notice to Pay (C.A.R. Form PPN). Notice may be delivered to Tenant (i) in person; (ii) by mail to Tenant's last
   known address; or (iii) by email, if provided in Tenant's application or previously used by Tenant to communicate with Landlord or agent
   for Owner. If Landlord elects to void the lease, Landlord shall refund to Tenant all rent and security deposit paid.
   **(Check A or B):**
   ☐ **A. Month-to-Month:** This Agreement continues from the commencement date as a month-to-month tenancy. Tenant may
   terminate the tenancy by giving written notice at least 30 days prior to the intended termination date. Tenant shall be
   responsible for paying rent through the termination date even if moving out early. Landlord may terminate the tenancy by
   giving written notice as provided by law. Such notices may be given on any date.
   ☒ **B. Lease:** This Agreement shall terminate on (date) __April 30, 2020__ at __11:59__ ☐ AM/ ☒ PM. Tenant
   shall vacate the Premises upon termination of the Agreement, unless: (i) Landlord and Tenant have extended this
   Agreement in writing or signed a new agreement; (ii) mandated by local rent control law; or (iii) Landlord accepts Rent from
   Tenant (other than past due Rent), in which case a month-to-month tenancy shall be created which either party may
   terminate as specified in paragraph 2A. Rent shall be at a rate agreed to by Landlord and Tenant, or as allowed by law. All
   other terms and conditions of this Agreement shall remain in full force and effect.

**3. RENT:** "Rent" shall mean all monetary obligations of Tenant to Landlord under the terms of the Agreement, except security deposit.
   **A.** Tenant agrees to pay $7,950.00 _____ per month for the term of the Agreement.
   **B.** Rent is payable in advance on the 1st (or ☐ _____ ) day of each calendar month, and is delinquent on the next day.
   **C.** If Commencement Date falls on any day other than the day Rent is payable under paragraph 3B, and Tenant has paid one full
   month's Rent in advance of Commencement Date, Rent for the second calendar month shall be prorated and Tenant shall pay
   1/30th of the monthly rent per day for each day remaining in the prorated second month.
   **D. PAYMENT:** (1) Rent shall be paid by ☐ personal check, ☐ money order, ☐ cashier's check, made payable to __JOSEPH__
   __ELISHMERENI__ _____ , ☒ wire/electronic transfer, or ☐ other _____
   (2) Rent shall be delivered to (name) __JOSEPH ELISHMERENI (WIRING INSTRUCTIONS TO FOLLOW)__ _____
   (whose phone number is) __(310)772-7298__ at (address) _____
   _____ , (or at any other location subsequently specified by Landlord in writing to Tenant) (and ☐ if
   checked, rent may be paid personally, between the hours of _____ and _____ on the following days _____ ).
   (3) If any payment is returned for non-sufficient funds ("NSF") or because tenant stops payment, then, after that: (i) Landlord may, in
   writing, require Tenant to pay Rent in cash for three months and (ii) all future Rent shall be paid by ☐ money order, or ☒ cashier's check.
   **E.** Rent payments received by Landlord shall be applied to the earliest amount(s) due or past due.

**4. SECURITY DEPOSIT:**
   **A.** Tenant agrees to pay $15,900.00 _____ as a security deposit. Security deposit will be ☒ transferred to and held by the
   Owner of the Premises, or ☐ held in Owner's Broker's trust account.
   **B.** All or any portion of the security deposit may be used, as reasonably necessary, to: (i) cure Tenant's default in payment of Rent (which
   includes Late Charges, NSF fees or other sums due); (ii) repair damage, excluding ordinary wear and tear, caused by Tenant or by a guest,
   invitee or licensee of Tenant; (iii) clean Premises, if necessary, upon termination of the tenancy; and (iv) replace or return personal property
   or appurtenances. **SECURITY DEPOSIT SHALL NOT BE USED BY TENANT IN LIEU OF PAYMENT OF LAST MONTH'S RENT.** If all or
   any portion of the security deposit is used during the tenancy, Tenant agrees to reinstate the total security deposit within five days after written
   notice is delivered to Tenant. Within 21 days after Tenant vacates the Premises, Landlord shall: (1) furnish Tenant an itemized statement
   indicating the amount of any security deposit received and the basis for its disposition and supporting documentation as required by
   California Civil Code § 1950.5(g); and (2) return any remaining portion of the security deposit to Tenant.
   **C.** Security deposit will not be returned until all Tenants have vacated the Premises and all keys returned. Any security
   deposit returned by check shall be made out to all Tenants named on this Agreement, or as subsequently modified.
   **D.** No interest will be paid on security deposit unless required by local law.
   **E.** If the security deposit is held by Owner, Tenant agrees not to hold Broker responsible for its return. If the security deposit is held in
   Owner's Broker's trust account, and Broker's authority is terminated before expiration of this Agreement, and security deposit is
   released to someone other than Tenant, then Broker shall notify Tenant, in writing, where and to whom security deposit has been
   released. Once Tenant has been provided such notice, Tenant agrees not to hold Broker responsible for the security deposit.

Tenant's Initials ( __DR__ ) ( _____ )          Landlord's Initials ( __JE__ ) ( _____ )

© 2018, California Association of REALTORS®, Inc.
**LR REVISED 6/18 (PAGE 1 OF 8)**
**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 1 OF 8)**

| Compass, 9454 Wilshire Blvd Beverly Hills, CA 90212 | Phone: 310.858.1902 | Fax: | 1134 S Crest |
| Jeremy Ives | Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com | | |

EXHIBIT 2 - 000012

DocuSign Envelope ID: 26D32B79-0B9E-41A5-ABFC-E5AF2660DDAE

Premises: *1134 S. CREST DRIVE, LOS ANGELES, CA  90035* _____ Date: *04/03/2019*

**5.  MOVE-IN COSTS RECEIVED/DUE:** Move-in funds shall be paid by ☐ personal check, ☐ money order, or ☒ cashier's check, ☒ wire/ electronic transfer.

| Category | Total Due | Payment Received | Balance Due | Date Due | Payable To |
|---|---|---|---|---|---|
| Rent from  *04/08/2019* | | | | | |
| to  *04/30/2019*   (date) | *$6,095.00* | | *$6,095.00* | | *UPON ACCEPTANCE* |
| *Security Deposit | *$15,900.00* | | *$15,900.00* | | *UPON ACCEPTANCE* |
| Other _____ | | | | | |
| Other _____ | | | | | |
| Total | *$21,995.00* | | *$21,995.00* | | *UPON ACCEPTANCE* |

*The maximum amount of security deposit, however designated, cannot exceed two months' Rent for an unfurnished premises, or three months' Rent for a furnished premises.

**6.  LATE CHARGE; RETURNED CHECKS:**

   **A.** Tenant acknowledges either late payment of Rent or issuance of a returned check may cause Landlord to incur costs and expenses, the exact amounts of which are extremely difficult and impractical to determine. These costs may include, but are not limited to, processing, enforcement and accounting expenses, and late charges imposed on Landlord. If any installment of Rent due from Tenant is not received by Landlord within 5 (or ☒ *10* ) calendar days after the date due, or if a check is returned, Tenant shall pay to Landlord, respectively, an additional sum of $_____ or  *2.500* % of the Rent due as a Late Charge and $25.00 as a NSF fee for the first returned check and $35.00 as a NSF fee for each additional returned check, either or both of which shall be deemed additional Rent.

   **B.** Landlord and Tenant agree that these charges represent a fair and reasonable estimate of the costs Landlord may incur by reason of Tenant's late or NSF payment. Any Late Charge or NSF fee due shall be paid with the current installment of Rent. Landlord's acceptance of any Late Charge or NSF fee shall not constitute a waiver as to any default of Tenant. Landlord's right to collect a Late Charge or NSF fee shall neither be deemed an extension of the date Rent is due under paragraph 3 nor prevent Landlord from exercising any other rights and remedies under this Agreement and as provided by law.

**7.  PARKING: (Check A or B)**
   ☒ **A.**  Parking is permitted as follows:  *FRONT PARKING PAD/DRIVEWAY.* _____

   The right to parking ☒ is ☐ is not included in the Rent charged pursuant to paragraph 3. If not included in the Rent, the parking rental fee shall be an additional $_____ per month. Parking space(s) are to be used only for parking properly registered and operable motor vehicles, except for trailers, boats, campers, buses or trucks (other than pick-up trucks). Tenant shall park in assigned space(s) only. Parking space(s) are to be kept clean. Vehicles leaking oil, gas or other motor vehicle fluids shall not be parked on the Premises. Mechanical work, or storage of inoperable vehicles, or storage of any kind is not permitted in parking space(s) or elsewhere on the Premises except as specified in paragraph 8.
   OR ☐ **B.**  Parking is not permitted on the real property of which the Premises is a part.

**8.  STORAGE: (Check A or B)**
   ☒ **A.**  Storage is permitted as follows:  *STORAGE AREAS IN HOUSE AND CONVERTED GARAGE* _____
   The right to separate storage space ☒ is, ☐ is not, included in the Rent charged pursuant to paragraph 3. If not included in the Rent, storage space fee shall be an additional $_____ per month. Tenant shall store only personal property Tenant owns, and shall not store property claimed by another or in which another has any right, title or interest. Tenant shall not store any improperly packaged food or perishable goods, flammable materials, explosives, hazardous waste or other inherently dangerous material, or illegal substances.
   OR ☐ **B.**  Except for Tenant's personal property, contained entirely within the Premises, storage is not permitted on the Premises.

**9.  UTILITIES:** Tenant agrees to pay for all utilities and services, and the following charges: _____. except  *GARDENER* , which shall be paid for by Landlord. If any utilities are not separately metered, Tenant shall pay Tenant's proportional share, as reasonably determined and directed by Landlord. If utilities are separately metered, Tenant shall place utilities in Tenant's name as of the Commencement Date. Landlord is only responsible for installing and maintaining one usable telephone jack and one telephone line to the Premises. Tenant shall pay any cost for conversion from existing utilities service provider.

   ☐ **A.**  **Water Submeters:** Water use on the Premises is measured by a submeter and Tenant will be separately billed for water usage based on the submeter. See attached Water Submeter Addendum (C.A.R. Form WSM) for additional terms.

   ☐ **B.**  **Gas Meter:** The Premises does not have a separate gas meter.

   ☐ **C.**  **Electric Meter:** The Premises does not have a separate electrical meter.

**10. CONDITION OF PREMISES:** Tenant has examined Premises and, if any, all furniture, furnishings, appliances, landscaping and fixtures, including smoke alarm(s) and carbon monoxide detector(s).
   **(Check all that apply:)**

   ☐ **A.**  Tenant acknowledges these items are clean and in operable condition, with the following exceptions: _____

   ☐ **B.**  Tenant's acknowledgment of the condition of these items is contained in an attached statement of condition (C.A.R. Form MIMO).

   ☐ **C.**  **(i)** Landlord will Deliver to Tenant a statement of condition (C.A.R. Form MIMO) ☐ within **3 days** after execution of this Agreement; ☐ prior to the Commencement Date; ☐ within **3 days** after the Commencement Date.
   **(ii)** Tenant shall complete and return the MIMO to Landlord within 3 (or ☐ _____ ) **days** after Delivery. Tenant's failure to return the MIMO within that time shall conclusively be deemed Tenant's Acknowledgement of the condition as stated in the MIMO.

Tenant's Initials ( *DP* ) ( _____ )        Landlord's Initials ( *JE* ) ( _____ )

**LR REVISED 6/18 (PAGE 2 OF 8)**

EXHIBIT 2 - 000013

DocuSign Envelope ID: 26D32B79-0B9E-41A5-ABFC-E5AF2660DDAE

Premises: _1134 S. CREST DRIVE, LOS ANGELES, CA  90035_                                      Date: _04/03/2019_

[X] **D.** Tenant will provide Landlord a list of items that are damaged or not in operable condition within 3 (or [X]   7   ) days after Commencement Date, not as a contingency of this Agreement but rather as an acknowledgement of the condition of the Premises.

[ ] **E.** Other: _____.

## 11. MAINTENANCE USE AND REPORTING:

**A.** Tenant shall properly use, operate and safeguard Premises, including if applicable, any landscaping, furniture, furnishings and appliances, and all mechanical, electrical, gas and plumbing fixtures, carbon monoxide detector(s) and smoke alarms, and keep them and the Premises clean, sanitary and well ventilated. Tenant shall be responsible for checking and maintaining all carbon monoxide detectors and any additional phone lines beyond the one line and jack that Landlord shall provide and maintain. Tenant shall replace any burned out or malfunctioning light bulbs. Tenant shall immediately notify Landlord, in writing, of any problem, malfunction or damage with any item including carbon monoxide detector(s) and smoke alarms on the property. Tenant shall be charged for all repairs or replacements caused by Tenant, pets, guests or licensees of Tenant, excluding ordinary wear and tear. Tenant shall be charged for all damage to Premises as a result of failure to report a problem in a timely manner. Tenant shall be charged for repair of drain blockages or stoppages, unless caused by defective plumbing parts or tree roots invading sewer lines.

**B.** [X] Landlord [ ] Tenant shall water the garden, landscaping, trees and shrubs, except: _TENANT SHALL PAY WATER BILL._

**C.** [X] Landlord [ ] Tenant shall maintain the garden, landscaping, trees and shrubs, except: _____.

**D.** [ ] Landlord [ ] Tenant shall maintain _____.

**E.** Landlord and Tenant agree that State or local water use restrictions shall supersede any obligation of Landlord or Tenant to water or maintain any garden, landscaping, trees or shrubs pursuant to 11B, 11C, and 11D.

**F.** Tenant's failure to maintain any item for which Tenant is responsible shall give Landlord the right to hire someone to perform such maintenance and charge Tenant to cover the cost of such maintenance.

**G.** The following items of personal property are included in the Premises without warranty and Landlord will not maintain, repair or replace them: _____.

**H.** Tenant understands that if Premises is located in a Common Interest Development, Landlord may not have authority or control over certain parts of the Premises such as roof, electrical, gas or plumbing features inside certain walls, and common areas such as shared parking structure or garage.

**I.** Tenant shall not use the premises to plant, grow, cultivate or sell marijuana.

## 12. NEIGHBORHOOD CONDITIONS:
Tenant is advised to satisfy himself or herself as to neighborhood or area conditions, including, but not limited to, schools, proximity and adequacy of law enforcement, crime statistics, proximity of registered felons or offenders, fire protection, other governmental services, availability, adequacy and cost of any wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, cemeteries, facilities and condition of common areas, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Tenant.

## 13. PETS:
Unless otherwise provided in California Civil Code §54.2, or other law, no animal or pet shall be kept on or about the Premises without Landlord's prior written consent, [X] except as agreed to in the attached Pet Addendum (C.A.R. Form PET).

## 14. SMOKING:

**A.** (i) Tenant is responsible for all damage caused by smoking including, but not limited to stains, burns, odors and removal of debris; (ii) Tenant acknowledges that in order to remove odor caused by smoking, Landlord may need to replace carpet and drapes and paint the entire premises regardless of when these items were last cleaned, replaced or repainted. Such actions and other necessary steps will impact the return of any security deposit.

**B.** The Premises or common areas may be subject to a local non-smoking ordinance.

**C.** NO SMOKING of any substance is allowed on the Premises or common areas. If smoking does occur on the Premises or common areas, (i) Tenant is in material breach of this Agreement; (ii) Tenant, guests, and all others may be required to leave the Premises. [ ] Smoking of the following substances only is allowed: _____.

## 15. RULES/REGULATIONS:

**A.** Tenant agrees to comply with all Landlord rules and regulations that are at any time posted on the Premises or delivered to Tenant. Tenant shall not, and shall ensure that guests, invitees, and licensees of Tenant shall not, disturb, annoy, endanger or interfere with other tenants of the building or neighbors, or use the Premises for any unlawful purposes, under federal, state, or local law including, but not limited to, using, manufacturing, selling, storing or transporting illicit drugs or other contraband, or violate any law or ordinance, or commit a waste or nuisance on or about the Premises.

**B.** (If applicable, check one)
[ ] 1. Landlord shall provide Tenant with a copy of the rules and regulations within _____ days
or _____
OR [ ] 2. Tenant has been provided with, and acknowledges receipt of, a copy of the rules and regulations.

Tenant's Initials ( _DP_ ) ( _____ )          Landlord's Initials ( _JE_ ) ( _____ )

**LR REVISED 6/18 (PAGE 3 OF 8)**

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 3 OF 8)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          1134 S Crest



EXHIBIT 2 - 000014

DocuSign Envelope ID: 26D32B79-0B9E-41A5-ABFC-E5AF2660DDAE

Premises: *1134 S. CREST DRIVE, LOS ANGELES, CA  90035*                    Date: *04/03/2019*

**16.☐ (If checked) CONDOMINIUM; PLANNED UNIT DEVELOPMENT:**

    **A.** The Premises are a unit in a condominium, planned unit development, common interest subdivision or other development governed by a homeowners' association ("HOA"). The name of the HOA is _____ Tenant agrees to comply with all HOA covenants, conditions and restrictions, bylaws, rules and regulations and decisions ("HOA Rules"). Tenant shall reimburse Landlord for any fines or charges imposed by HOA or other authorities, due to any violation by Tenant, or the guests or licensees of Tenant or Landlord shall have the right to deduct such amounts from the security deposit.

    **B.** If applicable, Tenant is required to pay a fee to the HOA to gain access to certain areas within the development such as but not necessarily including or limited to the front gate, pool, and recreational facilities. If not specified in paragraph 5, Tenant is solely responsible for payment and satisfying any HOA requirements prior to or upon or after the Commencement Date.

    **C. (Check one)**
      ☐**1.** Landlord shall provide Tenant with a copy of the HOA Rules within _____ days
        or
    OR☐**2.** Tenant has been provided with, and acknowledges receipt of, a copy of the HOA Rules.

**17. ALTERATIONS; REPAIRS:** Unless otherwise specified by law or paragraph 25C, without Landlord's prior written consent, **(i)** Tenant shall not make any repairs, alterations or improvements in or about the Premises including: painting, wallpapering, adding or changing locks, installing antenna or satellite dish(es), placing signs, displays or exhibits, or using screws, fastening devices, large nails or adhesive materials; **(ii)** Landlord shall not be responsible for the costs of alterations or repairs made by Tenant; **(iii)** Tenant shall not deduct from Rent the costs of any repairs, alterations or improvements; and **(iv)** any deduction made by Tenant shall be considered unpaid Rent.

**18. KEYS; LOCKS:**

    **A.** Tenant acknowledges receipt of (or Tenant will receive ☐ prior to the Commencement Date, or ☒ *COMMENCEMENT DATE* ):
      ☒ **2**_____ key(s) to Premises,    _____ remote control device(s) for garage door/gate opener(s),
      ☐_____ key(s) to mailbox,      ☒ *2 KEYS TO CONVERTED GARAGE/GUESTHOUSE* _____ .
      ☐_____ key(s) to common area(s),

    **B.** Tenant acknowledges that locks to the Premises ☐ have, ☒ have not, been re-keyed.

    **C.** If Tenant re-keys existing locks or opening devices, Tenant shall immediately deliver copies of all keys to Landlord. Tenant shall pay all costs and charges related to loss of any keys or opening devices. Tenant may not remove locks, even if installed by Tenant.

**19. ENTRY:**

    **A.** Tenant shall make Premises available to Landlord or Landlord's representative for the purpose of entering to make necessary or agreed repairs (including, but not limited to, installing, repairing, testing, and maintaining smoke detectors and carbon monoxide devices, and bracing, anchoring or strapping water heaters, or repairing dilapidation relating to the presence of mold); providing decorations, alterations, or improvements, or supplying necessary or agreed services; or to show Premises to prospective or actual purchasers, tenants, mortgagees, lenders, appraisers, contractors and others (collectively "Interested Persons"). Tenant agrees that Landlord, Broker and Interested Persons may take photos of the Premises.

    **B.** Landlord and Tenant agree that 24-hour written notice shall be reasonable and sufficient notice, except as follows: (1) 48-hour written notice is required to conduct an inspection of the Premises prior to the Tenant moving out, unless the Tenant waives the right to such notice. (2) If Landlord has in writing informed Tenant that the Premises are for sale and that Tenant will be notified orally to show the premises (C.A.R. Form NSE), then, for the next 120 days following the delivery of the NSE, notice may be given orally to show the Premises to actual or prospective purchasers. (3) No written notice is required if Landlord and Tenant orally agree to an entry for agreed services or repairs if the date and time of entry are within one week of the oral agreement. (4) No notice is required: **(i)** to enter in case of an emergency; **(ii)** if the Tenant is present and consents at the time of entry; or **(iii)** if the Tenant has abandoned or surrendered the Premises.

    **C.** ☐ (If checked) Tenant authorizes the use of a keysafe/lockbox to allow entry into the Premises and agrees to sign a keysafe/lockbox addendum (C.A.R. Form KLA).

**20. PHOTOGRAPHS AND INTERNET ADVERTISING:**

    **A.** In order to effectively market the Premises for sale or rental it is often necessary to provide photographs, virtual tours and other media to Interested Persons. Tenant agrees that Broker may photograph or otherwise electronically capture images of the exterior and interior of the Premises ("Images") for static and/or virtual tours of the Premises by Interested Persons for use on Broker's website, the MLS, and other marketing materials and sites. Tenant acknowledges that once Images are placed on the Internet neither Broker nor Landlord has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet.

    **B.** Tenant acknowledges that prospective Interested Persons coming onto the Premises may take photographs, videos or other images of the Premises. Tenant understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Landlord has control over who views such Images nor what use viewers may make of the Images.

**21. SIGNS:** Tenant authorizes Landlord to place FOR SALE/LEASE signs on the Premises.

**22. ASSIGNMENT; SUBLETTING: A.** Tenant shall not sublet all or any part of Premises, or parking or storage spaces, or assign or transfer this Agreement or any interest in it, without Landlord's prior written consent. Unless such consent is obtained, any assignment, transfer or subletting of Premises or this Agreement or tenancy, by voluntary act of Tenant, operation of law or otherwise, shall, at the option of Landlord, terminate this Agreement. Any proposed assignee, transferee or sublessee shall submit to Landlord an application and credit information for Landlord's approval and, if approved, sign a separate written agreement with Landlord and Tenant. Landlord's consent to any one assignment, transfer or sublease, shall not be construed as consent to any subsequent assignment, transfer or sublease and does not release Tenant of Tenant's obligations under this Agreement. **B.** This prohibition also applies ( ☐ does not apply) to short term, vacation, and transient rentals such as, but not limited to, those arranged through AirBnB, VRBO, HomeAway or other short term rental services. **C.** Any violation of this prohibition is a non-curable, material breach of this Agreement.

Tenant's Initials ( ___ ) ( ___ )      Landlord's Initials ( ___ ) ( ___ )

EXHIBIT 2 - 000015

DocuSign Envelope ID: 26D32B79-0B9E-41A5-ABFC-E5AF2660DDAE

Premises: *1134 S. CREST DRIVE, LOS ANGELES, CA  90035*                                              Date: *04/03/2019*

**23. JOINT AND INDIVIDUAL OBLIGATIONS:** If there is more than one Tenant, each one shall be individually and completely responsible for the performance of all obligations of Tenant under this Agreement, jointly with every other Tenant, and individually, whether or not in possession.

**24. POSSESSION:**
**A. (1)** Tenant is not in possession of the Premises. If Landlord is unable to deliver possession of Premises on Commencement Date, such Date shall be extended to the date on which possession is made available to Tenant. If Landlord is unable to deliver possession within 5 (or ☐ _____ ) calendar days after agreed Commencement Date, Tenant may terminate this Agreement by giving written notice to Landlord, and shall be refunded all Rent and security deposit paid.
**or (2)** Possession is deemed terminated when Tenant has returned all keys to the Premises to Landlord.
**B.** ☐ Tenant is already in possession of the Premises.

**25. TENANT'S OBLIGATIONS UPON VACATING PREMISES:**
**A.** Upon termination of this Agreement, Tenant shall: (i) give Landlord all copies of all keys and any opening devices to Premises, including any common areas; (ii) vacate and surrender Premises to Landlord, empty of all persons; and personal property belonging to Tenant (iii) vacate any/all parking and/or storage space; (iv) clean and deliver Premises, as specified in paragraph C below, to Landlord in the same condition as referenced in paragraph 10; (v) remove all debris; (vi) give written notice to Landlord of Tenant's forwarding address; and (vii) _____ .
**B.** All alterations/improvements made by or caused to be made by Tenant, with or without Landlord's consent, become the property of Landlord upon termination. Landlord may charge Tenant for restoration of the Premises to the condition it was in prior to any alterations/improvements.
**C. Right to Pre-Move-Out Inspection and Repairs:** (i) After giving or receiving notice of termination of a tenancy (C.A.R. Form NTT), or before the expiration of this Agreement, Tenant has the right to request that an inspection of the Premises take place prior to termination of the lease or rental (C.A.R. Form NRI). If Tenant requests such an inspection, Tenant shall be given an opportunity to remedy identified deficiencies prior to termination, consistent with the terms of this Agreement. (ii) Any repairs or alterations made to the Premises as a result of this inspection (collectively, "Repairs") shall be made at Tenant's expense. Repairs may be performed by Tenant or through others, who have adequate insurance and licenses and are approved by Landlord. The work shall comply with applicable law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. (iii) Tenant shall: (a) obtain receipts for Repairs performed by others; (b) prepare a written statement indicating the Repairs performed by Tenant and the date of such Repairs; and (c) provide copies of receipts and statements to Landlord prior to termination. Paragraph 25C does not apply when the tenancy is terminated pursuant to California Code of Civil Procedure § 1161(2), (3), or (4).

**26. BREACH OF CONTRACT; EARLY TERMINATION:** In addition to any obligations established by paragraph 25, in the event of termination by Tenant prior to completion of the original term of the Agreement, Tenant shall also be responsible for lost Rent, rental commissions, advertising expenses and painting costs necessary to ready Premises for re-rental. Landlord may withhold any such amounts from Tenant's security deposit.

**27. TEMPORARY RELOCATION:** Subject to local law, Tenant agrees, upon demand of Landlord, to temporarily vacate Premises for a reasonable period, to allow for fumigation (or other methods) to control wood destroying pests or organisms, or other repairs to Premises. Tenant agrees to comply with all instructions and requirements necessary to prepare Premises to accommodate pest control, fumigation or other work, including bagging or storage of food and medicine, and removal of perishables and valuables. Tenant shall only be entitled to a credit of Rent equal to the per diem Rent for the period of time Tenant is required to vacate Premises.

**28. DAMAGE TO PREMISES:** If, by no fault of Tenant, Premises are totally or partially damaged or destroyed by fire, earthquake, accident or other casualty that render Premises totally or partially uninhabitable, either Landlord or Tenant may terminate this Agreement by giving the other written notice. Rent shall be abated as of the date Premises become totally or partially uninhabitable. The abated amount shall be the current monthly Rent prorated on a 30-day period. If the Agreement is not terminated, Landlord shall promptly repair the damage, and Rent shall be reduced based on the extent to which the damage interferes with Tenant's reasonable use of Premises. If damage occurs as a result of an act of Tenant or Tenant's guests, only Landlord shall have the right of termination, and no reduction in Rent shall be made.

**29. INSURANCE: A.** Tenant's, guest's, invitees or licensee's personal property and vehicles are not insured by Landlord, manager or, if applicable, HOA, against loss or damage due to fire, theft, vandalism, rain, water, criminal or negligent acts of others, or any other cause. **Tenant is advised to carry Tenant's own insurance (renter's insurance) to protect Tenant from any such loss or damage. B.** Tenant shall comply with any requirement imposed on Tenant by Landlord's insurer to avoid: (i) an increase in Landlord's insurance premium (or Tenant shall pay for the increase in premium); or (ii) loss of insurance. **C.** ☒ Tenant shall obtain liability insurance, in an amount not less than $*100,000.00* _____, naming Landlord and, if applicable, Property Manager as additional insured for injury or damage to, or upon, the Premises during the term of this agreement or any extension. Tenant shall provide Landlord a copy of the insurance policy before commencement of this Agreement, and a rider prior to any renewal.

**30. WATERBEDS/PORTABLE WASHERS:** Tenant shall not use or have waterbeds on the Premises unless: (i) Tenant obtains a valid waterbed insurance policy; (ii) Tenant increases the security deposit in an amount equal to one-half of one month's Rent; and (iii) the bed conforms to the floor load capacity of Premises. Tenant shall not use on the Premises ☐ Portable Dishwasher ☐ Portable Washing Machine.

**31. WAIVER:** The waiver of any breach shall not be construed as a continuing waiver of the same or any subsequent breach.

Tenant's Initials (      ) (      )                          Landlord's Initials (  JE  ) (          )

**LR REVISED 6/18 (PAGE 5 OF 8)**

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 5 OF 8)**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                     1134 S Crest

EXHIBIT 2 - 000016

DocuSign Envelope ID: 26D32B79-0B9E-41A5-ABFC-E5AF2660DDAE

Premises: _1134 S. CREST DRIVE, LOS ANGELES, CA  90035_                                                Date: _04/03/2019_

**32 NOTICE:** Notices may be served at the following address, or at any other location subsequently designated:

Landlord: _JOSEPH  ELISHMERENI_                                      Tenant: _DAVID REDLENER_
_43 W. 86TH STREET, #3A_                                                      _1134 S. CREST DRIVE_
_NEW YORK, MY 10024_                                                          _LOS ANGELES, CA 90035_

**33. TENANT ESTOPPEL CERTIFICATE:** Tenant shall execute and return a tenant estoppel certificate delivered to Tenant by Landlord or Landlord's agent within **3 days** after its receipt (C.A.R. Form TEC). Failure to comply with this requirement shall be deemed Tenant's acknowledgment that the tenant estoppel certificate is true and correct, and may be relied upon by a lender or purchaser.

**34. REPRESENTATION**

**A. TENANT REPRESENTATION; OBLIGATIONS REGARDING OCCUPANTS; CREDIT:** Tenant warrants that all statements in Tenant's rental application are accurate. Landlord requires all occupants 18 years of age or older and all emancipated minors to complete a lease rental application. Tenant acknowledges this requirement and agrees to notify Landlord when any occupant of the Premises reaches the age of 18 or becomes an emancipated minor. Tenant authorizes Landlord and Broker(s) to obtain Tenant's credit report periodically during the tenancy in connection with the modification or enforcement of this Agreement. Landlord may cancel this Agreement: **(i)** before occupancy begins; upon disapproval of the credit report(s), or upon discovering that information in Tenant's application is false; **(ii)** After commencement date, upon disapproval of an updated credit report or upon discovering that information in Tenant's application is no longer true. A negative credit report reflecting on Tenant's record may be submitted to a credit reporting agency if Tenant fails to fulfill the terms of payment and other obligations under this Agreement.

**B. LANDLORD REPRESENTATIONS:** Landlord warrants that, unless otherwise specified in writing, Landlord is unaware of **(i)** any recorded Notices of Default affecting the Premise; **(ii)** any delinquent amounts due under any loan secured by the Premises; and **(iii)** any bankruptcy proceeding affecting the Premises.

**35. MEDIATION:**

**A.** Consistent with paragraphs B and C below, Landlord and Tenant agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action.

**B.** The following matters are excluded from mediation: **(i)** an unlawful detainer action; **(ii)** the filing or enforcement of a mechanic's lien; and **(iii)** any matter within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation provision.

**C.** Landlord and Tenant agree to mediate disputes or claims involving Listing Agent, Leasing Agent or property manager ("Broker"), provided Broker shall have agreed to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to such Broker. Any election by Broker to participate in mediation shall not result in Broker being deemed a party to this Agreement.

**36. ATTORNEY FEES:** In any action or proceeding arising out of this Agreement, the prevailing party between Landlord and Tenant shall be entitled to reasonable attorney fees and costs, collectively not to exceed $1,000 (or $_____), except as provided in paragraph 35A.

**37. C.A.R. FORM:** C.A.R. Form means the specific form referenced or another comparable form agreed to by the parties.

**38. STATUTORY DISCLOSURES:**

**A.** ☒ **LEAD-BASED PAINT (If checked):** Premises were constructed prior to 1978. In accordance with federal law, Landlord gives and Tenant acknowledges receipt of the disclosures on the attached form (C.A.R. Form FLD) and a federally approved lead pamphlet.

**B. PERIODIC PEST CONTROL (CHECK IF EITHER APPLIES):**

**1.** ☐ Landlord has entered into a contract for periodic pest control treatment of the Premises and shall give Tenant a copy of the notice originally given to Landlord by the pest control company.

**2.** ☐ Premises is a house. Tenant is responsible for periodic pest control treatment.

**C.** ☐ **METHAMPHETAMINE CONTAMINATION:** Prior to signing this Agreement, Landlord has given Tenant a notice that a health official has issued an order prohibiting occupancy of the property because of methamphetamine contamination. A copy of the notice and order are attached.

**D. BED BUGS:** Landlord has no knowledge of any infestation in the Premises by bed bugs. See attached Bed Bug Disclosure (C.A.R. Form BBD) for further information. Tenant shall report suspected bed bug infestation to Landlord or, if applicable, property manager and cooperate with any inspection for and treatment of bed bugs. Landlord will notify tenants of any units infested by bed bugs.

**E. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides: (Neither Landlord nor Brokers, if any, are required to check this website. If Tenant wants further information, Tenant should obtain information directly from this website.)

**F.** ☒ **RESIDENTIAL ENVIRONMENTAL HAZARDS BOOKLET:** Tenant acknowledges receipt of the residential environmental hazards booklet.

**G.** ☐ **MILITARY ORDNANCE DISCLOSURE:** (If applicable and known to Landlord) Premises are located within one mile of an area once used for military training, and may contain potentially explosive munitions.

**H. FLOOD HAZARD DISCLOSURE:** Flooding has the potential to cause significant damage to personal property owned by Tenant. See attached Tenant Flood Hazard Disclosure (C.A.R. Form TFHD) for additional information.

Tenant's Initials ( DR ) (              )                           Landlord's Initials ( JE ) (              )

**LR REVISED 6/18 (PAGE 6 OF 8)**

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 6 OF 8)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                1134 S Crest

EXHIBIT 2 - 000017

DocuSign Envelope ID: 26D32B79-0B9E-41A5-ABFC-E5AF2660DDAE

Premises: *1134 S. CREST DRIVE, LOS ANGELES, CA  90035*                                        Date: *04/03/2019*

**39. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed except in writing. This Agreement is subject to California landlord-tenant law and shall incorporate all changes required by amendment or successors to such law. This Agreement and any supplement, addendum or modification, including any copy, may be signed in two or more counterparts, all of which shall constitute one and the same writing.

**40. AGENCY:**
   **A. CONFIRMATION:** The following agency relationship(s) are hereby confirmed for this transaction:
   Listing Agent: (Print firm name)                        ***COMPASS***
   is the agent of (check one): ☐ the Landlord exclusively; or ☒ both the Landlord and Tenant.
   Leasing Agent: (Print firm name)                        ***COMPASS***
   (If not same as Listing Agent) is the agent of (check one): ☐ the Tenant exclusively; or ☐ the Landlord exclusively; or ☒ both the Tenant and Landlord.
   **B. DISCLOSURE:** ☒ (If checked): The term of this Agreement exceeds one year. A disclosure regarding real estate agency relationships (C.A.R. Form AD) has been provided to Landlord and Tenant, who each acknowledge its receipt.

**41.** ☐ **TENANT COMPENSATION TO BROKER:** Upon execution of this Agreement, Tenant agrees to pay compensation to Broker as specified in a separate written agreement between Tenant and Broker.

**42. NOTICE OF RIGHT TO RECEIVE FOREIGN LANGUAGE TRANSLATION OF LEASE/RENTAL AGREEMENTS:** California Civil Code requires a landlord or property manager to provide a tenant with a foreign language translation copy of a lease or rental agreement if the agreement was negotiated primarily in Spanish, Chinese, Korean, Tagalog or Vietnamese. If applicable, every term of the lease/rental needs to be translated except for, among others, names, dollar amounts and dates written as numerals, and words with no generally accepted non-English translation.

**43. OWNER COMPENSATION TO BROKER:** Upon execution of this Agreement, Owner agrees to pay compensation to Broker as specified in a separate written agreement between Owner and Broker (C.A.R. Form LL or LCA).

**44. RECEIPT:** If specified in paragraph 5, Landlord or Broker, acknowledges receipt of move-in funds.

**45. OTHER TERMS AND CONDITIONS;** If checked, the following ATTACHED documents are incorporated in this Agreement:
   ☐ Keysafe/Lockbox Addendum (C.A.R. Form KLA); ☒ Lead-Based Paint and Lead-Based Paint Hazards Disclosure (C.A.R. Form FLD);
   ☒ Lease/Rental Mold and Ventilation Addendum (C.A.R. Form LRM); ☐ Landlord in Default Addendum (C.A.R. Form LID)
   ☒ Bed Bug Disclosure (C.A.R. Form BBD); ☒ Tenant Flood Hazard Disclosure (C.A.R. Form TFHD)
   Other: ***ADDENDUM #1 (CAR FORM ADM).***

**46. REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 49 or 50 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within 3 Days After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

Landlord and Tenant acknowledge and agree Brokers: (a) do not guarantee the condition of the Premises; (b) cannot verify representations made by others; (c) cannot provide legal or tax advice; (d) will not provide other advice or information that exceeds the knowledge, education or experience required to obtain a real estate license. Furthermore, if Brokers are not also acting as Landlord in this Agreement, Brokers: (e) do not decide what rental rate a Tenant should pay or Landlord should accept; and (f) do not decide upon the length or other terms of this Agreement. Landlord and Tenant agree that they will seek legal, tax, insurance and other desired assistance from appropriate professionals.

**47.** ☐ **INTERPRETER/TRANSLATOR:** The terms of this Agreement have been interpreted for Tenant into the following language: _____. Landlord and Tenant acknowledge receipt of the attached interpreter/translator agreement (C.A.R. Form ITA).

**48. The Premises is being managed by Owner, (or, if checked):**
   ☐ Listing firm in box below      ☐ Leasing firm in box below      ☐ Property Management firm immediately below

Real Estate Broker (Property Manager) _____ DRE Lic # _____

By (Agent) _____ DRE Lic # _____

Address _____ Telephone # _____

Tenant's Initials ( QP ) ( _____ )          Landlord's Initials ( JE ) ( _____ )

**LR REVISED 6/18 (PAGE 7 OF 8)**

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 7 OF 8)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          1134 S Crest

EXHIBIT 2 - 000018

DocuSign Envelope ID: 26D32B79-0B9E-41A5-ABFC-E5AF2660DDAE

Premises: _1134 S. CREST DRIVE, LOS ANGELES, CA 90035_ _____ Date: _04/03/2019_

**49. Tenant agrees to rent the Premises on the above terms and conditions.**

☐ One or more Tenants is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (For Tenant Representative) (C.A.R. Form RCSD-T) for additional terms.

Tenant _____ Date 4/4/2019

Print Name _DAVID REDLENER_

Address _____ City _____ State ____ Zip ____

Telephone _____ Fax _____ E-mail _DAVID@POWERLEND.COM_

Tenant _____ Date _____

Print Name _____

Address _____ City _____ State ____ Zip ____

Telephone _____ Fax _____ E-mail _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

☐ **GUARANTEE:** In consideration of the execution of this Agreement by and between Landlord and Tenant and for valuable consideration, receipt of which is hereby acknowledged, the undersigned ("Guarantor") does hereby: **(i)** guarantee unconditionally to Landlord and Landlord's agents, successors and assigns, the prompt payment of Rent or other sums that become due pursuant to this Agreement, including any and all court costs and attorney fees included in enforcing the Agreement; **(ii)** consent to any changes, modifications or alterations of any term in this Agreement agreed to by Landlord and Tenant; and **(iii)** waive any right to require Landlord and/or Landlord's agents to proceed against Tenant for any default occurring under this Agreement before seeking to enforce this Guarantee.

Guarantor (Print Name) _____

Guarantor _____ Date _____

Address _____ City _____ State ____ Zip ____

Telephone _____ Fax _____ E-mail _____

**50. Landlord (owner or ☐ agent for owner) agrees to rent the Premises on the above terms and conditions.**

☐ One or more Landlords is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (For Landlord Representative) (C.A.R. Form RCSD-LL) for additional terms. 4/4/2019

Landlord _Joseph Elishmereni_ Date 4/5/2019   Landlord _____ Date _____
_JOSEPH ELISHMERENI_                            _YAIR ELISHMERENI, NAZILA ELISHMERENI,_ 4/4/2019

Address _____

Telephone _____ Fax _____ E-mail _YOSSIELISH@GMAIL.COM_

---

**REAL ESTATE BROKERS:**

**A.** Real estate brokers who are not also Landlord under this Agreement are not parties to the Agreement between Landlord and Tenant.

**B.** Agency relationships are confirmed in paragraph 40.

**C.** **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (Leasing Firm) and Cooperating Broker agrees to accept: **(i)** the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or lease or a reciprocal MLS; or **(ii)** ☐ (if checked) the amount specified in a separate written agreement between Listing Broker and Cooperating Broker.

Real Estate Broker (Leasing Firm) _COMPASS_ _____ DRE Lic. # _01991628_

By (Agent) _Jeremy Ives_ _____ _JEREMY IVES_ DRE Lic. # _01420214_ Date 4/4/2019

Address _9454 WILSHIRE BLVD., 4TH FLOOR_ _____ City _BEVERLY HILLS_ State _CA_ Zip _90212_

Telephone _(310)858-1902_ Fax _____ E-mail _JEREMY@JEREMYIVES.COM_

Real Estate Broker (Listing Firm) _COMPASS_ _____ DRE Lic. # _01991628_

By (Agent) _Jeremy Ives_ _____ _JEREMY IVES_ DRE Lic. # _01420214_ Date 4/4/2019

Address _9454 WILSHIRE BLVD., 4TH FLOOR_ _____ City _BEVERLY HILLS_ State _CA_ Zip _90212_

Telephone _(310)858-1902_ Fax _____ E-mail _JEREMY@JEREMYIVES.COM_

© 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
**REAL ESTATE BUSINESS SERVICES, INC.**
_a subsidiary of the California Association of REALTORS®_
525 South Virgil Avenue, Los Angeles, California 90020



**LR REVISED 6/18 (PAGE 8 OF 8)**

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 8 OF 8)**

EXHIBIT 2 - 000019

DocuSign Envelope ID: 26D32B79-0B9E-41A5-ABFC-E5AF2660DDAE



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

# BED BUG DISCLOSURE
(C.A.R. Form BBD, Revised 12/18)
(California Civil Code §1954.603)

The following terms and conditions are hereby incorporated in and made a part of the: Residential Lease or Month-to-Month Rental Agreement, ("Agreement"), dated _____**April 3, 2019**_____, on property known as _____**1134 S. CREST DRIVE, LOS ANGELES, CA 90035**_____
in which _____**DAVID REDLENER**_____ is referred to as ("Tenant")
and _____**JOSEPH ELISHMERENI, YAIR ELISHMERENI, NAZILA ELISHMERENI**_____ is referred to as ("Landlord").

## INFORMATION ABOUT BED BUGS:

1. **Bed Bug Appearance:** Bed bugs have six legs. Adult bed bugs have flat bodies about 1/4 of an inch in length. Their color can vary from red and brown to copper colored. Young bed bugs are very small. Their bodies are about 1/16 of an inch in length. They have almost no color. When a bed bug feeds, its body swells, may lengthen, and becomes bright red, sometimes making it appear to be a different insect. Bed bugs do not fly. They can either crawl or be carried from place to place on objects, people, or animals. Bed bugs can be hard to find and identify because they are tiny and try to stay hidden.
2. **Life Cycle and Reproduction:** An average bed bug lives for about 10 months. Female bed bugs lay one to five eggs per day. Bed bugs grow to full adulthood in about 21 days.
3. Bed bugs can survive for months without feeding.
4. **Bed Bug Bites:** Because bed bugs usually feed at night, most people are bitten in their sleep and do not realize they were bitten. A person's reaction to insect bites is an immune response and so varies from person to person. Sometimes the red welts caused by the bites will not be noticed until many days after a person was bitten, if at all.
5. Common signs and symptoms of a possible bed bug infestation:
   * Small red to reddish brown fecal spots on mattresses, box springs, bed frames, mattresses, linens, upholstery, or walls.
   * Molted bed bug skins, white, sticky eggs, or empty eggshells.
   * Very heavily infested areas may have a characteristically sweet odor.
   * Red, itchy bite marks, especially on the legs, arms, and other body parts exposed while sleeping. However, some people do not show bed bug lesions on their bodies even though bed bugs may have fed on them.
6. For more information, see the Internet Web sites of the United States Environmental Protection Agency and the National Pest Management Association.
7. **Tenant shall report suspected infestations** by bed bugs to the Landlord or Property Manager at the mailing, or email address or phone number provided in the Agreement and cooperate with any inspection for and treatment of bed bugs.
8. Landlord will notify tenants of any units inspected by a pest control operator of the findings by such an operator within 2 business days of the receipt of the findings. All Tenants will be notified of confirmed infestations within common areas.

Tenant agrees to release, indemnify, hold harmless and forever discharge Landlord and Landlord's employees, agents, successors and assigns from any and all claims, liabilities or causes of action of any kind that Tenant, members of Tenant's household or Tenant's guests or invitees may have at any time against Landlord or Landlord's agents resulting from the presence of bedbugs due to Tenant's failure to comply with this Bed Bug Disclosure.

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date **4/4/2019** _____      Date **4/5/2019** _____

Tenant ┌─DocuSigned by:─────────
       **DAVID REDLENER**
       └──1D53560A7404C─────────

Tenant _____

Landlord ┌─DocuSigned by:─────────
         *Joseph Elishmereni*
         **JOSEPH ELISHMERENI**
         └────────────────────

Landlord ┌────────────────────
         **YAIR ELISHMERENI, NAZILA ELISHMERENI**
         └────────────────────

© 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**BBD REVISED 12/18 (PAGE 1 OF 1)**

**BED BUG DISCLOSURE (BBD PAGE 1 OF 1)**

EXHIBIT 2 - 000020

DocuSign Envelope ID: 26D32B79-0B9E-41A5-ABFC-E5AF2660DDAE



**CALIFORNIA
ASSOCIATION
OF REALTORS ®**

# TENANT FLOOD HAZARD DISCLOSURE
(C.A.R. Form TFHD, Revised 12/18)

The following terms and conditions are hereby incorporated in and made a part of the: Residential Lease or Month-to-Month Rental Agreement, ("Agreement"), ☐ Residential Lease After Sale, ☐ Other _____, dated **April 3, 2019** _____,
on property known as _____ **1134 S. CREST DRIVE, LOS ANGELES, CA  90035** _____.
in which _____ **DAVID REDLENER** _____ is referred to as ("Tenant")
and _____ **JOSEPH  ELISHMERENI, YAIR  ELISHMERENI, NAZILA ELISHMERENI** _____ is referred to as ("Landlord").

**INFORMATION ABOUT FLOOD HAZARDS: Tenant is informed of the following:**

**1.  The Property is not located in a special flood hazard area or an area of potential flooding.**

**OR**

☐ The Property is located in a special flood hazard area or an area of potential flooding.
   Property is deemed to be in a special flood hazard area or area of potentially flooding if any of the following scenarios apply:

   **A.** The owner has actual knowledge of that fact.
   **B.** The owner has received written notice from any public agency stating that the Property is located in a special flood
         hazard area or an area of potential flooding.
   **C.** The Property is located in an area in which the owner's mortgage holder requires the owner to carry flood insurance.
   **D.** The owner currently carries flood insurance.

**2.** The tenant may obtain information about hazards, including flood hazards, that may affect the Property from the Internet Web site of
    the Office of Emergency Services, My Hazards Tool (http://myhazards.caloes.ca.gov).

**3.** The owner's insurance does not cover the loss of the tenant's personal possessions and it is recommended that the tenant consider
    purchasing renter's insurance and flood insurance to insure his or her possessions from loss due to fire, flood, or other risk of loss.

**4.** The owner is not required to provide additional information concerning the flood hazards to the Property and that the information
    provided pursuant to this section (California Government Code section 8589.45) is deemed to inform the tenant.

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date  4/4/2019                                          Date  4/5/2019

Tenant _____                           Landlord  _Joseph Elishmereni__
        DAVID REDLENER                                           JOSEPH ELISHMERENI

Tenant _____                           Landlord  _____
                                                                 YAIR ELISHMERENI, NAZILA ELISHMERENI

© 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

TFHD REVISED 12/18 (PAGE 1 OF 1)
## TENANT FLOOD HAZARD DISCLOSURE  (TFHD PAGE 1 OF 1)

EXHIBIT 2 - 000021

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S MOTION FOR ORDER APPROVING NEW SUBLEASE OF REAL PROPERTY FOR DEBTOR'S OPERATIONS; DECLARATION OF DAVID REDLENER IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) May 9, 2019 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Dawn M Coulson on behalf of Interested Party Courtesy NEF
dcoulson@eppscoulson.com, cmadero@eppscoulson.com

Carl Grumer on behalf of Interested Party JGB (Cayman) Glenmachrie Ltd.
cgrumer@manatt.com, mchung@manatt.com;fstephenson@manatt.com

Carl Grumer on behalf of Interested Party JGB Collateral, LLC
cgrumer@manatt.com, mchung@manatt.com;fstephenson@manatt.com

Andrew Haley on behalf of Interested Party CF Culver City Office, L.P.
ahaley@shoreline-law.com, kbarone@shoreline-law.com

Asa S Hami on behalf of Debtor One Way Loans, LLC, d/b/a PowerLend
ahami@sulmeyerlaw.com, agonzalez@sulmeyerlaw.com;agonzalez@ecf.inforuptcy.com;ahami@ecf.inforuptcy.com

Asa S Hami on behalf of Interested Party Courtesy NEF
ahami@sulmeyerlaw.com, agonzalez@sulmeyerlaw.com;agonzalez@ecf.inforuptcy.com;ahami@ecf.inforuptcy.com

David S Kupetz on behalf of Debtor One Way Loans, LLC, d/b/a PowerLend
dkupetz@sulmeyerlaw.com, dperez@sulmeyerlaw.com;dperez@ecf.courtdrive.com;dkupetz@ecf.courtdrive.com

Dare Law on behalf of U.S. Trustee United States Trustee (LA)
dare.law@usdoj.gov, ron.maroko@usdoj.gov;Alvin.mar@usdoj.gov

Ron Maroko on behalf of U.S. Trustee United States Trustee (LA)
ron.maroko@usdoj.gov

Sabrina L Streusand on behalf of Creditor Actum Processing
Streusand@slollp.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Claire K Wu on behalf of Debtor One Way Loans, LLC, d/b/a PowerLend
ckwu@sulmeyerlaw.com, mviramontes@sulmeyerlaw.com;ckwu@ecf.courtdrive.com;ckwu@ecf.inforuptcy.com

Claire K Wu on behalf of Interested Party Courtesy NEF
ckwu@sulmeyerlaw.com, mviramontes@sulmeyerlaw.com;ckwu@ecf.courtdrive.com;ckwu@ecf.inforuptcy.com

☐ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:

On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) <u>May 9, 2019</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY**
The Honorable Sandra R. Klein
U.S. Bankruptcy Court
Roybal Federal Building
Bin outside of Suite 1582
255 E. Temple Street
Los Angeles, CA 90012

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| May 9, 2019 | Debbie A. Perez | /s/Debbie A. Perez |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**