David S. Kupetz (CA Bar No. 125062)
  dkupetz@sulmeyerlaw.com
Asa S. Hami (CA Bar No. 210728)
  ahami@sulmeyerlaw.com
Claire K. Wu (CA Bar No. 295966)
  ckwu@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Grand Ave., Suite 3400
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

Attorneys for Debtor and Debtor in Possession
One Way Loans, LLC, d/b/a PowerLend

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:18-bk-24572-SK |
| ONE WAY LOANS, LLC, a California limited liability company, d/b/a POWERLEND, | Chapter 11 |
| Debtor. | **FIRST AMENDED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION FOR ONE WAY LOANS, LLC** |
| | <u>Disclosure Statement Hearing</u> |
| | Date:   October 2, 2019<br>Time:  9:00 a.m.<br>Place:  Courtroom 1575<br>         255 East Temple Street<br>         Los Angeles, CA 90012 |
| | <u>Plan Confirmation Hearing</u> |
| | Date:   To Be Set<br>Time:  To Be Set<br>Place:  Courtroom 1575<br>         255 East Temple Street<br>         Los Angeles, CA 90012 |

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................1

II.  GENERAL DISCLAIMER AND VOTING PROCEDURE .................................1

III.  WHO MAY OBJECT TO CONFIRMATION OF THE PLAN .........................5

IV.  WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN .............................5

V.  VOTES NECESSARY TO CONFIRM THE PLAN ..........................................8

VI.  INFORMATION REGARDING VOTING IN THIS CASE ................................9

VII.  DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS AND
      EVENTS PRECIPITATING BANKRUPTCY FILING........................................9

VIII.  CRITICAL PLAN PROVISIONS ....................................................................13

        (a)    Collections on the Debtor's performing and non-performing
               loan portfolios. ..................................................................................13

        (b)    Recovery from litigation to be commenced against First
               Associates Loan Servicing, LLC (the "FA Litigation"). ..................13

        (c)    Sale of the Watermark Property. .......................................................13

        (d)    Repayment of DIP Lender. ...............................................................14

        (e)    Distribution to Unsecured Creditors. ...............................................14

IX.  DESCRIPTION AND TREATMENT OF CLAIMS.........................................15

      A.    Overview of Plan Payments .....................................................................15

      B.    Administrative Expense Claims ................................................................19

            Administrative Expense # 4 ......................................................................21

      C.    Priority Unsecured Tax Claims ................................................................22

      D.    CLASS ONE: First Priority Secured Claim and Superpriority Claim of
            IGCFCO III, LLC (DIP Lender). ...............................................................23

      E.    CLASS TWO:  General Unsecured Claims of Non-Insiders ..................25

      F.    CLASS THREE:  Insider General Unsecured Claims ............................26

      G.    CLASS FOUR:  Unsecured Priority Wage Claims of Non-Insiders ......29

      H.    CLASS FIVE:  Unsecured Priority Wage Claims of Insiders ................30

      I.    CLASS SIX:  Equity Interests..................................................................31

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

X.      SOURCE OF MONEY TO PAY CLAIMS AND INTEREST-HOLDERS ........................32

XI.     FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER
        PROPOSED PAYMENT IS FEASIBLE .........................................................................33

XII.    ASSETS AND LIABILITIES OF THE ESTATE ...........................................................33

        A.      Assets ..................................................................................................................33

        B.      Liabilities ............................................................................................................33

        C.      Summary ..............................................................................................................33

XIII.   TREATMENT OF NONCONSENTING CLASSES ......................................................33

XIV.    TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING CLASS
        (CHAPTER 7 LIQUIDATION ANALYSIS) ..................................................................34

XV.     FUTURE DEBTOR ........................................................................................................36

        D.      Management of Debtor ........................................................................................36

        E.      Disbursing Agent ................................................................................................40

        F.      Future Financial Outlook ....................................................................................40

XVI.    SALE OR TRANSFER OF PROPERTY; ASSUMPTION OF CONTRACTS AND
        LEASES; OTHER PROVISIONS ...................................................................................43

        G.      Assumption and Rejection of Unexpired Leases and Executory Contracts ...........43

        H.      Amendment #1 to Crest Sublease .......................................................................45

        I.      Miscellaneous and Other Plan Provisions ..........................................................45

XVII.   BANKRUPTCY PROCEEDINGS .................................................................................49

        J.      Filing of Petition, Schedules, And Statement of Financial Affairs ......................49

        K.      "First Day" Motions And Related Orders ...........................................................50

        L.      Employment of Professionals ..............................................................................50

        M.      DIP Financing Facility ........................................................................................51

        N.      First Motion to Extend Plan Exclusivity Periods ................................................51

        O.      Claim Objections .................................................................................................51

        P.      Motion to Approve Sublease ...............................................................................52

        H.      Second Motion to Extend Plan Exclusivity Periods ............................................52

        I.      Motion to Reject Loan Servicing Agreement with First Associates ......................52

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

CKW 2686315v2

J.        Motion for Relief from the Automatic Stay ........................................... 52

XVIII. TAX CONSEQUENCES OF PLAN .................................................................... 52

XIX.    EFFECT OF CONFIRMATION OF PLAN ....................................................... 57

A.        General Comments ................................................................................ 57

B.        Discharge of Liability for Payment of Debts; Status of Liens; Equity
          Security Holders .................................................................................... 58

C.        Modification of the Plan ....................................................................... 58

D.        Post-Confirmation Causes of Action .................................................. 58

E.        Final Decree .......................................................................................... 58

F.        Other Administrative Provisions ......................................................... 59

XX.      DECLARATION IN SUPPORT OF DISCLOSURE STATEMENT AND PLAN ........... 65

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LIST OF EXHIBITS**

| | |
|---|---|
| Appendix of Definitions | **EXH A** |
| List of all GUCs | **EXH B** |
| List of all Priority Unsecured Wage Claims | **EXH C** |
| Additional Plan and DS Provisions | **EXH D** |
| Projected Income, Expenses and Plan Payments | **EXH E** |
| List of all Non-Insider GUCs and Amount of Claim | **EXH F** |
| List of all Insider GUCs and Amount of Claim | **EXH G** |
| List of all Non-Insider Priority Wage Claims and Amount of Claim | **EXH H** |
| List of all Insider Priority Wage Claims and Amount of Claim | **EXH I** |
| Balance Sheets, Cash Flow, Income and Expense Statements | **EXH J** |
| List of FMV of Assets | **EXH K** |
| Payroll Analysis | **EXH L** |
| Amendment #1 to Crest Sublease | **EXH M** |
| Liquidation Analysis | **EXH N** |
| Vendor List | **EXH O** |

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

## I.      INTRODUCTION[1]

On December 17, 2018 (the "Petition Date"), One Way Loans, LLC, d/b/a PowerLend (the "Debtor") filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code (the "Code").  The document you are reading is both the Plan of Liquidation (the "Plan") and the Disclosure Statement (the "DS").  The Debtor (the "Proponent") has proposed the Plan to treat the claims of the Debtor's creditors and, if applicable, the interests of shareholders or partners.  A DS describes the assumptions that underlie the Plan and how the Plan will be executed.  The Bankruptcy Court (the "Court") has approved the form of this document as an adequate DS, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan.  The Court has not yet confirmed the Plan, which means the terms of the Plan are not now binding on anyone.

The Proponent has reserved _____, 2019 at _____ a.m./p.m. in Courtroom 1575 for a hearing to determine whether the Court will confirm the Plan.

Any interested party desiring further information should contact:  Asa S. Hami or Claire K. Wu, SulmeyerKupetz, A Professional Corporation, 333 S. Grand Ave., Suite 3400, Los Angeles, California 90071; Tel: 213-626-2311; E-mail: ahami@sulmeyerlaw.com; ckwu@sulmeyerlaw.com.

## II.      GENERAL DISCLAIMER AND VOTING PROCEDURE

PLEASE READ THIS DOCUMENT, INCLUDING THE ATTACHED EXHIBITS, CAREFULLY.  IT EXPLAINS WHO MAY OBJECT TO CONFIRMATION OF THE PLAN.

IT EXPLAINS WHO IS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.  IT ALSO TELLS ALL CREDITORS AND ANY SHAREHOLDERS OR PARTNERS WHAT TREATMENT THEY CAN EXPECT TO RECEIVE UNDER THE PLAN, SHOULD THE PLAN BE CONFIRMED BY THE COURT.

THE SOURCES OF FINANCIAL DATA RELIED UPON IN FORMULATING THIS DOCUMENT ARE SET FORTH IN THE DECLARATION IN **SECTION XX** BELOW. ALL REPRESENTATIONS ARE TRUE AND CORRECT TO THE PROPONENT'S KNOWLEDGE.

---

[1] Capitalized terms not otherwise defined in the body of this Plan and DS shall have the meaning ascribed to them in the Appendix of Definitions attached hereto as **Exhibit A**. In the event of any inconsistency between the definition of a capitalized term as defined in the Appendix of Definitions and as may be defined in the body of this Plan and DS, the definition in the Appendix of Definitions shall control.

NO REPRESENTATIONS CONCERNING THE DEBTOR THAT ARE INCONSISTENT WITH ANYTHING CONTAINED HEREIN ARE AUTHORIZED EXCEPT TO THE EXTENT, IF AT ALL, THAT THE COURT ORDERS OTHERWISE.

After carefully reviewing this document and the attached exhibits, please vote on the enclosed ballot and return it in the enclosed envelope.

The Proponent has reserved a hearing date for a hearing to determine whether the Court will confirm the Plan.  Please refer to **Section I** above for the specific hearing date.  If, after receiving the ballots, it appears that the Proponent has the requisite number of votes required by the Code, the Proponent will file a Motion for an Order Confirming the Plan.

The Motion shall at least be served on all impaired creditors and partners or shareholders who reject the Plan and on the Office of the United States Trustee.  Any Opposition to the Motion shall be filed and served on the Proponent no later than fourteen days prior to the hearing date. Failure to oppose the confirmation of the Plan may be deemed consent to the Plan's confirmation.

IN MAKING A DECISION TO ACCEPT OR REJECT THE PLAN, EACH HOLDER OF A CLAIM OR INTEREST MUST RELY ON ITS OWN EXAMINATION OF THE DEBTOR, AND THE TERMS OF THE PLAN, INCLUDING THE MERITS AND RISKS INVOLVED, AS DESCRIBED IN THE DS.  IN ADDITION, CONFIRMATION, AND CONSUMMATION OF THE PLAN MAY BE SUBJECT TO CONDITIONS PRECEDENT.  THERE CAN BE NO ASSURANCE THAT EACH OF THESE CONDITIONS WILL BE SATISFIED OR WAIVED, AS PROVIDED IN THE PLAN, OR THAT THE PLAN WILL BE CONSUMMATED.  EVEN AFTER THE EFFECTIVE DATE, DISTRIBUTIONS UNDER THE PLAN MAY BE SUBJECT TO SUBSTANTIAL DELAYS FOR HOLDERS OF CLAIMS THAT ARE DISPUTED.

SOME MATTERS DISCUSSED HEREIN OR IN ACCOMPANYING EXHIBITS, SUCH AS PROJECTIONS OR FORECASTS, ARE "FORWARD LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995.  SUCH FORWARD LOOKING STATEMENTS ARE SUBJECT TO RISKS, UNCERTAINTIES, AND OTHER FACTORS THAT COULD CAUSE ACTUAL RESULTS TO DIFFER MATERIALLY FROM FUTURE RESULTS EXPRESSED OR IMPLIED BY SUCH

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    FORWARD LOOKING STATEMENTS.  FURTHERMORE, THE FINANCIAL

2    INFORMATION CONTAINED HEREIN HAS NOT BEEN THE SUBJECT OF AN AUDIT.

3    ANY PROJECTED PERCENTAGE OF DISTRIBUTIONS REPRESENTS THE DEBTOR'S

4    GOOD FAITH ESTIMATE OF WHAT CREDITORS WILL RECEIVE PURSUANT TO THE

5    PLAN.  SUBSEQUENT TO THE DATE HEREOF, THERE CAN BE NO ASSURANCE THAT:

6    (A) THE INFORMATION AND REPRESENTATIONS CONTAINED HEREIN WILL

7    CONTINUE TO BE MATERIALLY ACCURATE; OR (B) THE DS CONTAINS ALL

8    MATERIAL INFORMATION.

9        NO PARTY IS AUTHORIZED BY THE DEBTOR TO GIVE ANY INFORMATION OR

10    MAKE ANY REPRESENTATIONS WITH RESPECT TO THE PLAN OTHER THAN THAT

11    WHICH IS CONTAINED IN THIS DS.  NO REPRESENTATIONS OR INFORMATION

12    CONCERNING THE DEBTOR, ITS PRESENT OR FUTURE BUSINESS OPERATIONS, OR

13    THE VALUE OF ITS ASSETS HAVE BEEN AUTHORIZED BY THE DEBTOR, OTHER THAN

14    AS SET FORTH HEREIN.  ANY INFORMATION OR REPRESENTATIONS GIVEN TO

15    OBTAIN YOUR ACCEPTANCE OR REJECTION OF THE PLAN THAT ARE DIFFERENT

16    FROM OR INCONSISTENT WITH THE INFORMATION OR REPRESENTATIONS

17    CONTAINED HEREIN AND IN THE PLAN SHOULD NOT BE RELIED UPON BY ANY

18    HOLDERS OF CLAIMS OR INTERESTS VOTING ON THE PLAN.

19        THE DS HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE

20    BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE

21    SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.  ENTITIES

22    HOLDING OR TRADING IN OR OTHERWISE PURCHASING, SELLING OR

23    TRANSFERRING CLAIMS AGAINST, INTERESTS IN, OR SECURITIES OF, THE DEBTOR

24    SHOULD EVALUATE THE DS ONLY IN LIGHT OF THE PURPOSE FOR WHICH IT WAS

25    PREPARED.

26        THE DS HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND

27    EXCHANGE COMMISSION (THE "COMMISSION") OR BY ANY STATE SECURITIES

28    COMMISSION OR SIMILAR PUBLIC, GOVERNMENTAL OR REGULATORY AUTHORITY,

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  AND NEITHER THE COMMISSION NOR ANY SUCH AUTHORITY HAS PASSED UPON

2  THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

3      WITH RESPECT TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND

4  OTHER PENDING OR THREATENED ACTIONS (WHETHER PENDING OR NOT), THE DS

5  AND THE INFORMATION CONTAINED HEREIN SHALL NOT BE CONSTRUED AS AN

6  ADMISSION OR STIPULATION BY ANY ENTITY, BUT RATHER STATEMENTS MADE IN

7  SETTLEMENT NEGOTIATIONS GOVERNED BY RULE 408 OF THE FEDERAL RULES OF

8  EVIDENCE AND ANY OTHER RULE OR STATUTE OF SIMILAR IMPORT.

9      THE CONTENTS OF THE DS SHOULD NOT BE CONSTRUED AS LEGAL,

10  BUSINESS, OR TAX ADVICE.  EACH CREDITOR AND INTEREST HOLDER SHOULD

11  CONSULT ITS OWN LEGAL COUNSEL AND ACCOUNTANT AS TO LEGAL, TAX, AND

12  OTHER MATTERS CONCERNING ITS CLAIM OR INTEREST.

13      UNDER THE BANKRUPTCY CODE, A VOTE FOR ACCEPTANCE OR REJECTION

14  OF A PLAN MAY NOT BE SOLICITED UNLESS THE CLAIMANT HAS RECEIVED A COPY

15  OF A DISCLOSURE STATEMENT THAT IS ULTIMATELY APPROVED BY THE

16  BANKRUPTCY COURT.  WITH THIS DS, THE DEBTOR IS SOLICITING ACCEPTANCES OF

17  THE PLAN BY CREDITORS WHO ARE IMPAIRED BY, AND ENTITLED TO VOTE UNDER,

18  THE PLAN.  THIS SOLICITATION OF VOTES TO ACCEPT THE PLAN IS GOVERNED BY

19  THE PROVISIONS OF SECTION 1125(f) OF THE BANKRUPTCY CODE.  VIOLATIONS OF

20  SECTION 1125(f) OF THE BANKRUPTCY CODE MAY RESULT IN SANCTIONS BY THE

21  BANKRUPTCY COURT, INCLUDING DISALLOWANCE OF ANY IMPROPERLY-

22  SOLICITED VOTE.

23      **NO REPRESENTATIONS OR ASSURANCES, IF ANY, CONCERNING THE**

24  **DEBTOR OR CONCERNING THE PLAN ARE AUTHORIZED BY THE DEBTOR OTHER**

25  **THAN AS SET FORTH IN THIS DS.  YOU SHOULD NOT RELY ON ANY**

26  **REPRESENTATIONS OR INDUCEMENTS MADE BY ANY PERSON TO SECURE YOUR**

27  **VOTE OTHER THAN THOSE IN THIS DS IN DETERMINING WHETHER TO VOTE**

28  **FOR OR AGAINST THE PLAN.  ANY ADDITIONAL REPRESENTATIONS OR**

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

CKW 2686315v2                                    4

1    **INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR WHO**

2    **RESERVES THE RIGHT TO DELIVER SUCH INFORMATION TO THE BANKRUPTCY**

3    **COURT.**

4         **THIS IS A SOLICITATION SOLELY BY THE DEBTOR AND IS NOT A**

5    **SOLICITATION BY ANY ATTORNEY, FINANCIAL ADVISOR, ACCOUNTANT, OR**

6    **OTHER PROFESSIONAL OF THE DEBTOR.  THE REPRESENTATIONS, IF ANY,**

7    **MADE IN THIS DS ARE THOSE OF THE DEBTOR AND NOT OF ANY ATTORNEY,**

8    **FINANCIAL ADVISOR, ACCOUNTANT, OR OTHER PROFESSIONAL OF THE**

9    **DEBTOR, EXCEPT AS MAY BE OTHERWISE SPECIFICALLY AND EXPRESSLY**

10   **INDICATED.**

11        THE DS SETS FORTH INFORMATION FROM AND ABOUT THE DEBTOR WITHOUT

12   PROFESSIONAL COMMENT, OPINION, OR VERIFICATION AND DOES NOT SUGGEST

13   COMPREHENSIVE OR EXHAUSTIVE TREATMENT HAS BEEN GIVEN TO MATTERS

14   IDENTIFIED HEREIN.  AGAIN, EACH HOLDER OF A CLAIM, AND ANY OTHER PARTY IN

15   INTEREST, IS URGED TO CONSULT WITH INDEPENDENT PROFESSIONALS AND

16   INVESTIGATE ANY SUCH MATTERS PRIOR TO RELIANCE.

17   **III.    WHO MAY OBJECT TO CONFIRMATION OF THE PLAN**

18        Any party in interest may object to confirmation of the Plan, but as explained below not

19   everyone is entitled to vote to accept or reject the Plan.

20   **IV.    WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN**

21        A party can vote to accept or reject the Plan only if the party has an Allowed and Impaired

22   claim or interest.  A claim is defined by the Code to include a right to payment from the Debtor.

23   An interest represents an ownership stake in the Debtor.

24        In order to vote, a Creditor or Interest-holder must first have an <u>allowed claim or interest</u>.

25   With the exceptions explained below, a claim is allowed for voting purposes if proof of the claim or

26   interest is properly filed before any bar date and no party in interest has objected, or if the Court has

27   entered an order allowing the claim or interest.  Please refer to **Section VI** below for specific

28   information regarding bar dates in this case.

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    Under certain circumstances, a creditor may have an allowed claim for voting purposes even

2    if a proof of claim was not filed and the bar date for filing a proof of claim has passed.  A claim or

3    interest is allowed for voting purposes if it is (a) timely and properly scheduled or filed, and not

4    objected to; (b) objected to, and was allowed by settlement of the parties or a court order, or (c)

5    deemed allowed.  A claim is deemed allowed for voting purposes if the claim is listed on the

6    Debtor's schedules and is not scheduled as disputed, contingent, unliquidated, or unknown, and is

7    not otherwise the subject of an objection.  **Exhibit B** contains a list of general unsecured claims that

8    are not scheduled as disputed, contingent, or unliquidated.  **Exhibit C** contains a list of priority

9    unsecured wage claims that are not scheduled as disputed, contingent, or unliquidated.  The claimant

10   in Class 1 is the only party holding a secured claim (which secured claim is not disputed, contingent,

11   or unliquidated).  The unsecured tax claim identified below (**Section IX.C**) is the only priority

12   unsecured tax claim (which priority unsecured tax claim is not disputed, contingent, or unliquidated).

13   Similarly, an interest is deemed allowed for voting purposes if it is shown on the list of

14   equity security holders filed by the Debtor with the Court and is not scheduled as disputed, and is not

15   otherwise the subject of an objection.  Allowed claims and interests are provided for in the Plan in

16   the relevant category or class (respectively, an "Allowed Claim" or "Allowed Interest").

17   In order to vote, an Allowed Claim or Interest must also be impaired by the Plan.

18   Impaired creditors include those whose legal, equitable, and contractual rights are altered by

19   the Plan, even if the alteration is beneficial to the creditor.  A contract provision that entitles a

20   creditor to accelerated payment upon default does not, however, necessarily render the claimant

21   impaired, even if the Debtor defaulted and the Plan does not provide the creditor with accelerated

22   payment.  The creditor is deemed unimpaired so long as the Plan cures the default, reinstates the

23   maturity of such claim as it existed before default, compensates for any damages incurred as a result

24   of reasonable reliance upon the acceleration clause, and (except for a default arising from failure to

25   operate a nonresidential lease subject to 11 U.S.C. § 365 (b)(1)(A) (West Supp. 2006)) compensates

26   for any actual pecuniary loss incurred as a result of any failure to perform a non-monetary

27   obligation.

28   Impaired interest-holders include those whose legal, equitable, and contractual rights are

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1   altered by the Plan, even if the alteration is beneficial to the interest holder.

2      There are also some types of claims that the Code requires be treated a certain way.  For that

3   reason they are considered unimpaired and, therefore, holders of these claims cannot vote.

4      To summarize, there are two prerequisites to voting:  a Claim or Interest must be both

5   Allowed and Impaired under the Plan.

6      If a creditor or interest-holder has an Allowed and Impaired Claim or Interest, then he or she

7   may vote either to accept or reject the Plan (unimpaired claimants or interest-holders are deemed to

8   have accepted the Plan).  Impaired Claims or Interests are placed in classes and it is the class that

9   must accept the Plan.  Members of unimpaired classes do not vote, although as stated above, they

10   may object to confirmation of the Plan.  Even if all classes do not vote in favor of the Plan, the Plan

11   may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by the

12   Code.  Please refer to **Section VI** below for information regarding impaired and unimpaired classes

13   in this case.

14      **Section IX** sets forth which Claims are in which class.  Secured Claims are placed in

15   separate classes from unsecured claims.  Fed. R. Bankr. P. 3018(d) provides: "A creditor whose

16   claim has been allowed in part as a secured claim and in part as an unsecured claim shall be entitled

17   to accept or reject a plan in both capacities."

18      A Claim or Interest is disallowed if it was timely objected to by a party in interest and the

19   court ordered that the claim or interest be disallowed in part or entirely.  A claim also is disallowed

20   if: (a) it is listed on the Debtor's schedules as disputed, contingent, or unliquidated, and the Claimant

21   did not file a timely proof of claim; or (b) it is not listed on the Debtor's schedules at all and the

22   Claimant did not file a timely proof of claim.  **Disallowed claims and interests are not treated**

23   **under the Plan**.

24      A claim or interest is disputed (each, a "Disputed Claim," and collectively, "Disputed

25   Claims") if a ruling on allowance has not been made, and (a) a proof of claim or interest has been

26   filed or deemed filed and a party in interest has filed an objection that remains pending; or (b) a

27   proof of claim or interest has not been filed (and the deadline to file a proof of claim has not yet

28   expired) and the Debtor scheduled such claim or interest as disputed, contingent, unliquidated, or

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    unknown.

2          If the holder of a claim or interest wants to vote, but holds a claim or interest that has either

3    (a) been objected to, or (b) has been scheduled by the Debtor as contingent, disputed, unliquidated,

4    or unknown, and the holder has not filed a proof of claim or interest, the holder must file a motion to

5    have its claim or interest allowed for voting purposes in time for that motion to be heard before the

6    hearing on confirmation of the Plan.

7          No distribution will be made on the disputed portion of a claim or interest unless allowed by

8    a final non-appealable order.  FRBP 9019 authorizes the Debtor to settle disputed claims with court

9    approval; but, court approval is not required for any settlement on or after the Effective Date.  *See*

10   **Exhibit D** for additional provisions regarding post-confirmation compromises.  The Debtor is

11   required to reserve funds to pay the amount claimants would receive if the claim is allowed in full

12   (unless the court approves a different amount).  To the extent a Disputed Claim is disallowed, the

13   funds that had been reserved for such claims will be distributed to the Post-Confirmation Debtor.

14   *See* **Section XVI** below for additional provisions relating to disputed claims.

15         A holder of a claim or interest who has delivered a valid ballot voting on the Plan may

16   withdraw or change such vote prior to confirmation of the Plan solely in accordance with Rule

17   3018(a) of the Bankruptcy Rules, which provides, in relevant part, that the Bankruptcy Court may

18   permit a creditor or interest holder to change or withdraw its vote after notice and hearing and for

19   cause shown.

20         Section 1111(b) allows a partially secured claim to be treated as fully secured under certain

21   conditions, notwithstanding § 506(a).  Claimants should consult their attorney to evaluate if a

22   § 1111(b) election is available and is in their best interest, and to identify the deadline for making an

23   election.

24   **V.     VOTES NECESSARY TO CONFIRM THE PLAN**

25         The Court may confirm the Plan if at least one non-insider impaired class of claims has

26   accepted the Plan and certain statutory requirements are met as to both nonconsenting members

27   within a consenting class and as to dissenting classes.  A class of claims has accepted the Plan when

28   more than one-half in number and at least two-thirds in amount of the allowed claims actually

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

voting, vote in favor of the Plan.  A class of interests has accepted the Plan when at least two-thirds in amount of the allowed interests of such class actually voting have accepted it.  It is important to remember that even if the requisite number of votes to confirm the Plan are obtained, the Plan will not bind the parties unless and until the Court makes an independent determination that confirmation is appropriate.  That is the subject of any upcoming confirmation hearing.

The Debtor intends to utilize the "cramdown" requirements and procedures if and as necessary to confirm the Plan.

**VI.    INFORMATION REGARDING VOTING IN THIS CASE**

The bar date for filing a proof of claim in this case was **March 15, 2019**.

The bar date for objecting to claims was **May 15, 2019**.

With respect to a claim arising from the rejection of any executory contract or unexpired lease ("Rejection Claim"), the deadline for the Debtor to file an objection to any such Rejection Claim is 30 days from the filing of the Rejection Claim.

In this case the Proponent believes that Classes 1, 2, 3, 4, and 6 are impaired and therefore entitled to vote.  Class 5 is unimpaired and therefore do not vote.  A party that disputes the Proponent's characterization of its claim or interest as unimpaired may request a finding of impairment from the Court in order to obtain the right to vote.

Ballots must be received by the Proponent, addressed to Claire K. Wu, SulmeyerKupetz, A Professional Corporation, 333 S. Grand Avenue, Suite 3400, Los Angeles, California 90071; Facsimile: 213-629-4520; e-mail: ckwu@sulmeyerlaw.com, by _____, 2019.

**VII.    DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS AND EVENTS PRECIPITATING BANKRUPTCY FILING**

The Debtor is a limited liability company.  The Debtor conducted 100% of its business activity in Los Angeles, California, since April 2017.

What follows is a brief summary of the dates and circumstances that led Debtor to file bankruptcy:

The Debtor, a California limited liability company, dba PowerLend, was founded on April 11, 2017, in California.  The Debtor operates an online subprime small-loan consumer finance

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    business in the State of California.  It provided fast, flexible, and affordable loan products to

2    individuals in need of immediate cash.  The Debtor's goal was to bridge cash flow shortages with

3    industry-leading financial solutions that are both affordable to, and in the best interest of,

4    individuals, while at the same time improve their credit.  The Debtor is licensed in California,

5    Missouri, and Utah.

6        The Debtor originated its first loan on February 6, 2018.  The Debtor funded over 1,000

7    consumer loans in excess of $2,800,000 during its first few months of operations in 2018, and

8    continued to do so with limited staffing.  As of the Petition Date, the Debtor was servicing

9    approximately $1,900,000 of delinquent loans.

10        The Debtor's active loan accounts were serviced (until recently) by a third-party servicer,

11    First Associates, where regular consumer payments from these loans were deposited into an account

12    in the Debtor's name.  Defaulted or "de-boarded" customer loan accounts were and are currently

13    serviced by the Debtor's in-house collection team.

14        Around the time the Debtor was created, it entered negotiations with JGB Collateral, LLC,

15    as agent for JGB (Cayman) Glenmachrie Ltd., and JGB (Cayman) Glenmachrie Ltd. (together,

16    "JGB"), who agreed to provide the Debtor an initial credit facility in the amount of $30,125,000.00

17    (the "JGB Facility").  The JGB Facility was supposed to allow the Debtor to begin its loan making

18    operations.  The loan arrangement between the parties included numerous forms of collateral

19    demanded by JGB to secure its interests, including primarily a first priority lien on a certain parcel

20    of real property known as "Watermark" in Muskegon, MI, which includes 23-acres and a mixed use

21    building (the "Watermark Property").  As of June 2018, the owner of the Watermark Property, P&G

22    Holdings, LLC ("P&G"), estimated the value of the Watermark Property at $12.1 million.

23        Pursuant to the terms of the Debtor's loan agreement with JGB, it was further agreed and

24    understood that JGB would continue to fund the Debtor's loan operations on a regular basis, with up

25    to an additional $25,000,000.00 in capital.  However, JGB then only funded $5,125,000 under that

26    JGB Facility, and refused to provide additional capital funds.  This left the Debtor with a limited

27    amount of working capital and affected its ability to generate new loans.

28        On or about October 8, 2018, JGB defaulted the Debtor for a litany of alleged defaults

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

CKW 2686315v2                                10

1   (which the Debtor disputed).  JGB then commenced an action against the Debtor in the New York

2   Supreme Court and sought a preliminary injunction, among other things, to seize the Debtor's bank

3   accounts and access to loan collections.

4        To avoid the disastrous results to the Debtor and its creditors if JGB were successful, the

5   Debtor commenced this case on December 17, 2018, to protect it and its creditors' interests with the

6   goal of reorganizing.  The Debtor continues to manage and operate its business as a debtor in

7   possession.

8        <u>What follows is a brief description of the Debtor's business and future business plans</u>:

9        As explained above, the Debtor operates an online subprime small-loan consumer finance

10  business in the State of California.  The Debtor offered three short-term loan programs in the

11  principal sums of $2,600, $5,000, and $10,000.  Over the course of the Debtor's operations, the

12  $2,600 loan program consisted of approximately 92% of its new loans, with the remaining 8%

13  consisting of the $5,000 loan program.  As of the Petition Date, the Debtor had not originated any

14  loans under its $10,000 loan program.

15       The Debtor originally intended to continue this same business post-confirmation, and had

16  been working to obtain replacement financing to retire the JGB Facility and provide the Debtor with

17  working capital and additional funding to resume originating new loans.  To that end, pre-petition,

18  the Debtor sought financing from credit facilities that would leverage its existing loan portfolio.  The

19  Debtor continued to seek such financing during this case to payoff and replace the JGB Facility, and

20  obtain additional capital for operations and to originate new loans.  The Debtor's efforts were

21  ultimately successful.

22       More specifically, after intense negotiations, on or about March 14, 2019, the Debtor

23  finalized the terms of a proposed superpriority, senior secured, single-draw post-petition credit

24  facility in the aggregate principal amount of $6,575,000 (the "<u>DIP Facility</u>") from IGCFCO III, LLC

25  (the "<u>DIP Lender</u>").

26       On March 14, 2019, the Debtor filed an emergency motion for interim and final orders

27  approving the DIP Facility and for related relief.  The Court set the matter for an interim hearing on

28  an emergency basis for March 15, 2019.  After the interim hearing, on March 18, 2019, the Court

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1   entered an order authorizing the DIP Facility on an interim basis [Dkt. No. 115] (the "Interim DIP

2   Financing Order"), pursuant to the terms of the Interim DIP Financing Order and that certain

3   "Superpriority Senior Secured Debtor-in-Possession Credit Agreement," by and among the Debtor,

4   P&G (together with the Debtor, the "DIP Loan Borrowers"), certain identified guarantor parties (the

5   "DIP Loan Guarantors"), and the DIP Lender (as the same may be amended, restated, supplemented

6   or otherwise modified from time to time, the "DIP Loan Agreement").

7            As more specifically set forth in the DIP Loan Agreement, except with respect to Excluded

8   Assets (defined in Section 1 to the DIP Loan Agreement), and subordinate only to the Carve-Out and

9   Permitted Priming Liens (defined in Section 1 to the DIP Loan Agreement), the DIP Lender holds a

10  first priority, valid, binding, enforceable, and perfected security interest in, and liens upon, all of the

11  assets of the DIP Loan Borrowers and DIP Loan Guarantors, whether now existing or hereafter

12  arising or acquired and wherever located, including without limitation any such property in which a

13  lien is granted to the DIP Lender pursuant to any of the Loan Documents (as defined in the DIP

14  Loan Agreement), the Interim Order, or any other order entered or issued by the Bankruptcy Court

15  (the "DIP Collateral").  Among other things, the DIP Collateral includes the Watermark Property.

16           As part of negotiations relating to the DIP Facility, the Debtor managed to negotiate a

17  discounted payoff amount for the JGB Facility.  Whereas JGB asserted that, as of March 1, 2019, the

18  outstanding balance due under the JGB Facility was over $6,300,000, JGB agreed to accept

19  $5,800,000 in full and complete satisfaction and release of all obligations under the JGB Facility (the

20  "Discounted JGB Payoff Amount"), on the condition that such amount be paid no later than March

21  20, 2019, subject to extension pursuant to agreement of the parties.

22           On March 26, 2019, after additional extensive efforts by the Debtor and other parties

23  involved, and two extensions of the deadline to pay the Discounted JGB Payoff Amount, the DIP

24  Facility closed.  Through this new funding, JGB received the Discounted JGB Payoff Amount and

25  the Debtor obtained critical working capital and funds.  On March 29, 2019, the Court entered its

26  order authorizing the DIP Facility on a final basis (the "Final DIP Order").  A true and correct copy

27  of the executed DIP Loan Agreement are attached as an exhibit to the Debtor's emergency motion

28  located on the Bankruptcy Court's docket at Docket No. 104, and the Final DIP Order is located on

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  the Bankruptcy Court's docket at Docket No. 123. A copy of the DIP Loan Agreement and the Final

2  DIP Order are also available upon written request to the Debtor's counsel.

3       Since the entry of the Final DIP Order, the Debtor began working towards an exit strategy,

4  which involved identifying and negotiating an infusion of additional cash to fund a Chapter 11 plan

5  and post-confirmation operations of the Debtor. Based on the circumstances of the case, however,

6  the Debtor's strategy necessarily shifted. As set forth in further detail in **Section VIII** below, the

7  Debtor is now seeking to engage in an orderly liquidation through this Plan. Further details relating

8  to the Debtor's financial condition and post-confirmation operations (consisting solely of collections

9  on the Debtor's currently existing performing and non-performing loan portfolios) are found in

10  **Sections X, XI, XII, XVI, and XV**.

11  **VIII.   CRITICAL PLAN PROVISIONS**

12       Listed below are the sources of money earmarked to pay creditors and interest-holders, and

13  an overview of critical plan provisions:

14      (a)    <u>Collections on the Debtor's performing and non-performing loan portfolios</u>. The

15  Debtor will collect on performing and non-performing loans using bare-bones staffing in

16  accordance with a budget to be agreed upon among the Debtor and the DIP Lender. The Debtor

17  anticipates collection on its loan portfolios in the total amount of $1,621,049 over a 24-month

18  period ($122,229 on account of performing loans and $1,498,750 on account of non-performing

19  loans). Net collections are estimated to be $716,908. Other than the costs necessary for

20  collection, the proceeds from such collections shall be held in escrow and not disbursed pending

21  the sale of the Watermark Property.

22      (b)    <u>Recovery from litigation to be commenced against First Associates Loan Servicing,</u>

23  <u>LLC (the "FA Litigation")</u>. The FA litigation will seek to recover approximately $78,000 in pre-

24  petition fees paid to First Associates post-petition. The Debtor anticipates employing special

25  counsel on a contingency basis to pursue such litigation. The estimated net amount of recovery is

26  approximately $50,000.

27      (c)    <u>Sale of the Watermark Property</u>. In July 2019, P&G entered into a broker

28  agreement for the marketing of the Watermark Property. The Debtor, after consultation with P&G

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

13

1  and the DIP Lender, anticipates a robust marketing process, and that the Watermark Property will

2  be sold by P&G before the end of 2019 in an amount sufficient to pay all obligations owed to the

3  DIP Lender under the DIP Loan Agreement.  The Debtor further anticipates that confirmation of

4  this Plan will proceed on a parallel track with the marketing and sale of the Watermark Property

5  by P&G.  The Debtor does not believe that the sale of the Watermark Property (including, but not

6  limited to, any marketing, sales commissions, timing of any sale, or the net proceeds realized from

7  such sale) will impact feasibility or confirmation of the Plan.  Its relevance to the liquidation plan

8  lies in the fact that the DIP Lender is contemplated to be repaid from the sale of the Watermark

9  Property.

10          (d)      Repayment of DIP Lender.  While the Watermark Property is being marketed, the

11  Debtor will continue to collect upon the Debtor's performing and non-performing loan portfolios,

12  the proceeds of which remain subject to the DIP Lender's collateral.  By agreement with the

13  Debtor and expressly subject to a separate agreement among P&G and the DIP Loan Guarantors,

14  the DIP Lender has agreed to permit the Debtor to continue to use the DIP Collateral to collect

15  upon its loan portfolios, and rather than taking possession of the net proceeds from those

16  collections, all proceeds from such collections, other than the Debtor's expenses, shall be held in

17  escrow pending the sale of the Watermark Property. The DIP Lender is contemplated to be repaid

18  from the sale of the Watermark Property, however, if the proceeds from the sale of the Watermark

19  Property are not sufficient to repay the DIP Lender in full, the DIP Lender has agreed it will not

20  seek repayment on account of its security interest in the Debtor's property, including from the

21  proceeds of the Debtor's performing and non-performing loan portfolios, without first seeking to

22  satisfy its claims from P&G or another DIP Loan Guarantor.  As set forth above, the net proceeds

23  of the Debtor's collections shall be held in escrow pending the sale of the Watermark Property, and

24  not disbursed until such time as the DIP Facility is satisfied.

25          (e)      Distribution to Unsecured Creditors.  When the Watermark Property has been sold,

26  and the DIP Facility has been fully satisfied, the amounts held in escrow shall be available for a

27  distribution on account of general unsecured creditors.  The Debtor anticipates that general

28  unsecured creditors can expect payment in:

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    ● January 2020 (est.) (based upon the anticipated closing of the Watermark Property

2    in December 2019);

3    ● in the amount of $22,223 (to be distributed among general unsecured creditors

4    holding Allowed General Unsecured Claims); and

5    ● continuing every 3 months for 24 months (in amounts as set forth in the

6    accompanying cash projections until approximately <u>45%</u> of the Allowed amount of General

7    Unsecured Claims is paid) (See **<u>Exhibit E</u>**).

8    **IX.    DESCRIPTION AND TREATMENT OF CLAIMS**

9        **A.    <u>Overview of Plan Payments</u>**

10    Below is a summary of who gets paid what, when, and from what source.  The identity of

11    members within a particular class is explained beginning on the next page.  The second column lists

12    two amounts: (1) first, the amount of each payment, or if only one is to be made, then that amount;

13    (2) second, the total amount that will be paid.  <u>The Proponent is usually not required by law to pay</u>

14    <u>an unsecured creditor or interest holder everything it would otherwise be entitled to, had a</u>

15    <u>bankruptcy case not commenced</u>.  The "Payment Due Date" column states the frequency with which

16    payments will be made and the starting and ending dates.  Look at the starting date to figure out who

17    will be paid before and after you and in what amount.  The "Source of Payment" column describes

18    the expected source of payment.  Further details regarding the source of payment are found in

19    **Sections X and XI**.

20    The timing of payments to many creditors is normally determined by the "Effective Date."

21    For instance, administrative claims, unless otherwise stated, must be paid by the Effective Date.  The

22    timing of payments to impaired creditors is also generally measured from the Effective Date.  In this

23    case, however, the timing of payments (including administrative claims) is not tied to the Effective

24    Date, but rather, to the dates set forth in the accompanying cash projections (See **<u>Exhibit E</u>**).  For

25    Plan purposes, the Effective Date will be _____, 2019.

| Payment Recipient | Amount of each Payment (Total amount to be paid) | Payment Due Date | Source of Payment |
|---|---|---|---|
| 1. Administrative Expense Claim of: | $350,000 (est.), or such other Amount Allowed by | In full satisfaction, settlement, release, discharge, and | Net collections on loan portfolios/ |

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 ● FAX 213.629.4520

| | Court | extinguishment of, and in exchange for such, Administrative Expense Claim, the holder of the Administrative Expense Claim shall receive: (a) a cash distribution equal to approximately <u>87%</u> of the unpaid portion of the Allowed amount of the Administrative Expense Claim; (b) to be paid, as set forth in the accompanying cash projections, in regular installments (every 3 months over 24 months), pending the sale of the Watermark Property; (c) with the first installment payment anticipated to be made in January 2020. | Recovery from FA Litigation |
|---|---|---|---|
| SulmeyerKupetz, A Professional Corporation<br><br>(Debtor's Bankruptcy Counsel) | ($305,375) | | |
| 2. Administrative Expense Claim of:<br><br>ASI Advisors LLC<br><br>(Debtor's Financial Advisor) | $40,000 (est.), or such other Amount Allowed by Court<br><br>($34,900) | In full satisfaction, settlement, release, discharge, and extinguishment of, and in exchange for such, Administrative Expense Claim, the holder of the Administrative Expense Claim shall receive: (a) a cash distribution equal to approximately <u>87%</u> of the unpaid portion of the Allowed amount of the Administrative Expense Claim; (b) to be paid, as set forth in the accompanying cash projections, in regular installments (every 3 months over 24 months), pending the sale of the Watermark Property; (c) with the first installment payment anticipated to be made in January 2020. | Net collections on loan portfolios/ Recovery from FA Litigation |
| 3. Administrative Expense Claim of:<br><br>Ordinary Course Trade Vendors<br><br>*See* <u>Exhibit O</u> for a list of all Ordinary Course Trade Vendors | $11,793, or such other Amount Allowed by Court<br><br>($11,793) | In full satisfaction, settlement, release, discharge, and extinguishment of, and in exchange for such, Administrative Expense Claim, the holder of the Administrative Expense Claim shall: (a) be paid the Allowed Amount in the ordinary course pursuant to contract; or (b) pursuant to such other terms (including with respect to the amount paid) as may be agreed upon between the holder of such Administrative Expense Claim and the Debtor.  Obligations that arise after confirmation of the Plan shall be paid as they come due. | Net collections on loan portfolios/ Recovery from FA Litigation |
| 4. Administrative Expense Claim/Cure Claims of: | $31,625 (est.), or such other Amount Allowed by Court | In full satisfaction, settlement, release, discharge, and extinguishment of, and in | Net collections on loan portfolios/ Recovery from FA |

| | | | |
|---|---|---|---|
| Parties to the following Executory Contracts<br><br>a.  Effortless<br>b.  Infinity Enterprise Lending<br>c.  Trans Union LLC | a.  ($20,824)<br>b.  ($5,895)<br><br>c.  ($4,905) | exchange for such, Administrative Expense Claim, the holder of the Administrative Expense Claim shall: (a) be paid, as set forth in the accompanying cash projections; or (b) pursuant to such other terms (including with respect to the amount paid) as may be agreed upon between the holder of such Administrative Expense Claim and the Debtor. (See Section XVI for further details on payment of Cure Claims). Obligations that arise after confirmation of the Plan shall be paid as they come due. | Litigation |
| 5.  Priority Unsecured Tax Claim City of:<br><br>Culver City, Revenue Division | $12,865<br><br>($13,508) | In full satisfaction, settlement, release, discharge, and extinguishment of, and in exchange for such, Priority Unsecured Tax Claim, the holder of this Claim shall receive regular installment payments, in cash, to be paid, as set forth in the accompanying cash projections, in regular installments (every 3 months over 24 months), pending the sale of the Watermark Property. | Net collections on loan portfolios/ Recovery from FA Litigation |
| 6. Class 1:  First Priority Secured Claim of DIP Lender | Pursuant to DIP Loan Agreement | March 26, 2021 (current Maturity Date of DIP Facility under DIP Loan Agreement, unless extended or otherwise modified in accordance with the DIP Loan Agreement). | Sale proceeds from the Watermark Property, with any deficiency to be first paid by P&G or another DIP Loan Guarantor, and in the event that the DIP Facility is not paid in full, from net collections on loan portfolios/ Recovery from FA Litigation. |
| 7. Class 2: Non-Insider General Unsecured Claims<br><br>*See* Exhibit F for a list of all Class 2 claimants and amount of Claim as scheduled and/or filed (as of March 28, 2019). | $477,655<br><br>($214,945) | In full satisfaction, settlement, release, discharge, and extinguishment of, and in exchange for such, Allowed Non-Insider General Unsecured Claims, the holder of such a General Unsecured Claim shall receive: (a) a cash distribution equal to approximately 45% of the Allowed amount of its General Unsecured Claim; (b) paid, as set forth in the accompanying cash projections, in regular installments (every 3 months over 24 months), pending | Net collections on loan portfolios/ Recovery from FA Litigation |

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

| | | the sale of the Watermark Property; (c) with the first installment payment anticipated to be made in January 2020.  Holders of Non-Insider General Unsecured Claim will not receive any interest on account of such Claim. | |
| --- | --- | --- | --- |
| 8. Class 3:  Insider General Unsecured Claims<br><br>*See* <u>Exhibit G</u> for a list of all Class 3 claimants and amount of Claim as scheduled and/or filed (as of March 28, 2019). | $203,890<br><br>(Up to no more than the aggregate of $81,556) | In full satisfaction, settlement, release, discharge, and extinguishment of, and in exchange for such, Allowed Insider General Unsecured Claims, after payment of Allowed Administrative Expense Claims, Priority Unsecured Tax Claims, Non-Insider Priority Wage Claims, and Non-Insider General Unsecured Claims in accordance with the respective treatment of such Claims under the Plan, only to the extent of available funds, the holders of Insider General Unsecured Claims shall: (a) receive a cash distribution equal to approximately <u>40%</u> of the Allowed amount of its General Unsecured Claim; or (b) paid pursuant to such other terms (including with respect to the amount paid) as may be agreed upon between the holder of such Insider General Unsecured Claim and the Debtor.  Holders of Insider General Unsecured Claims will not receive any interest on account of such Claim. | Net collections on loan portfolios/ Recovery from FA Litigation |
| 9. Class 4: Non-Insider Priority Wage Claims<br><br>*See* <u>Exhibit H</u> for a list of all Class 4 claimants and amoun of Claim as scheduled. | $57,118<br><br>($59,974) | In full satisfaction, settlement, release, discharge, and extinguishment of, and in exchange for such, Non-Insider Priority Wage Claim, the holder of this Claim shall receive regular installment payments, in cash: (a) of a total value, as of the Effective Date, equal to the Allowed amount of such claim; (b) to be paid, as set forth in the accompanying cash projections, in regular installments (every 3 months over 24 months), pending the sale of the Watermark Property; (c) with the first installment payment anticipated to be made in January 2020. | Net collections on loan portfolios/ Recovery from FA Litigation |
| 10. Class 5: Insider Priority Wage Claims<br><br>*See* <u>Exhibit I</u> for a list of all | $51,400<br><br>(Up to no more than the aggregate of $51,400) | In full satisfaction, settlement, release, discharge, and extinguishment of, and in exchange for such, Insider Priority | Net collections on loan portfolios/ Recovery from FA Litigation |

| Class 5 claimants and amount of Claim as scheduled. | | Wage Claim, after payment of Allowed Administrative Expense Claims, Priority Unsecured Tax Claims, Non-Insider Priority Wage Claims, and Non-Insider General Unsecured Claims in accordance with the respective treatment of such Claims under the Plan, only to the extent of available funds, the holders of Insider Priority Wage Claims shall: (a) receive a cash distribution equal to approximately <u>100%</u> of the Allowed amount of its Priority Wage Claim; or (b) be paid pursuant to such other terms (including with respect to the amount paid) as may be agreed upon between the holder of such Insider Priority Wage Claim and the Debtor.  Holders of Insider Priority Wage Claims will not receive any interest on account of such Claim. | |
| 11. Class 6:  Interests | No payment received. Holders of allowed Class 6 Interests will retain their existing Equity Interests in the Debtor, pending implementation of the Plan and dissolution of Debtor. | N/a | N/a |

All claims listed below are undisputed.  Certain Claimants or Interest holders are affiliates of the Debtor.

<u>Below is a detailed description and treatment of Administrative Expense Claims, Claims and Interests</u>

**B.    <u>Administrative Expense Claims</u>**

1.    These include the "actual, necessary costs and expenses of preserving the estate" as determined by the Court after notice to creditors of a request for payment and after a hearing thereon.

2.    The Code requires that allowed administrative expenses be paid on the Effective Date unless the party holding the administrative expense agrees otherwise.  The Claimants have agreed otherwise (i.e., Claimants have agreed to accept later payment), as set forth

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

below.

3.     The deadline to file requests for allowance and payment of any and all Administrative Expense Claims is 45 calendar days after the Effective Date.  Other than post-Petition Date trade payables not payable in the ordinary course of business until after the Effective Date, all applications for allowance and payment of Administrative Expense Claims that have not been paid, released, or otherwise settled, including, but not limited to, final applications for allowance and payment of Administrative Expense Claims for Professional fees and expenses, shall be filed by this deadline or forever be barred from doing so.  Professionals shall file a final application for allowance and payment of their fees and expenses in accordance with the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, and any orders or rules of the Court, which shall act as the only necessary documentation of Administrative Expense Claims for Professionals.

4.     All requests for allowance and payment of Administrative Expense Claims have been filed or are anticipated to be filed, and the Claims and amounts indicated below are the amounts requested or anticipated to be requested.

Administrative Expense #1

1.     Claimant: **Sulmeyer**Kupetz, A Professional Corporation, Debtor's Bankruptcy Counsel

2.     $350,000 (est.), subject to Court approval[2]

3.     In full satisfaction, settlement, release, discharge, and extinguishment of, and in exchange for such, Administrative Expense Claim, the holder of the Administrative Expense Claim shall receive: (a) a cash distribution equal to approximately <u>87%</u> of the unpaid portion of the Allowed amount of the Administrative Expense Claim; (b) to be paid, as set forth in the accompanying cash projections, in regular installments (every 3 months over 24 months), pending the sale of the Watermark Property; (c) with the first installment payment anticipated to be made in January 2020.  Claimant has agreed to not be paid on the Effective Date.

---

[2] This is only an estimate; the actual amount of Professional fees and costs outstanding on the Effective Date may be higher or lower than the amount reflected above, and, as a result, this amount is subject to modification.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

Administrative Expense # 2

1. Claimant: ASI Advisors, LLC, Debtor's Financial Advisor

2. $40,000 (est.), subject to Court approval[3]

3. In full satisfaction, settlement, release, discharge, and extinguishment of, and in exchange for such, Administrative Expense Claim, the holder of the Administrative Expense Claim shall receive: (a) a cash distribution equal to approximately 87% of the unpaid portion of the Allowed amount of the Administrative Expense Claim; (b) to be paid, as set forth in the accompanying cash projections, in regular installments (every 3 months over 24 months), pending the sale of the Watermark Property; (c) with the first installment payment anticipated to be made in January 2020. Claimant has agreed to not be paid on the Effective Date.

Administrative Expense # 3

1. Claimant: Ordinary Course Trade Vendors (See **Exhibit O**)

2. $11,793

3. In full satisfaction, settlement, release, discharge, and extinguishment of, and in exchange for such, Administrative Expense Claim, the holder of the Administrative Expense Claim shall: (a) be paid the Allowed Amount in the ordinary course pursuant to contract; or (b) pursuant to such other terms (including with respect to the amount paid) as may be agreed upon between the holder of such Administrative Expense Claim and the Debtor. Obligations that arise after confirmation of the Plan shall be paid as they come due.

Administrative Expense # 4

1. Claimants: Parties to the following Executory Contracts and in the following amounts (or such other amounts as may be Allowed by the Court), which amount shall constitute the Cure Claim for such Executory Contract:

  (a) Effortless: $20,824

  (b) Infinity Enterprise Lending: $5,895

  (c) Trans Union LLC: $4,905

---

[3] See immediately preceding footnote.

2.     In full satisfaction, settlement, release, discharge, and extinguishment of, and in exchange for such, Administrative Expense Claim, the holder of the Administrative Expense Claim shall: (a) be paid, as set forth in the accompanying cash projections; or (b) pursuant to such other terms (including with respect to the amount paid) as may be agreed upon between the holder of such Administrative Expense Claim and the Debtor.  See **Section XVI** for further details on payment of Cure Claims.  Obligations that arise after confirmation of the Plan shall be paid as they come due.

**TOTAL ADMINISTRATIVE EXPENSE CLAIMS (est.): $383,692.**

C.     **Priority Unsecured Tax Claims**

1.     This is a city license business tax.

2.     The Code requires that the holders of such claims receive regular installment payments in cash over a period ending not later than five years after the date of the order for relief, unless agreed otherwise.  The claimant has not agreed otherwise.  The total cash payments must have a present value equal to the amount of the allowed claim.  The treatment of this claim is in a manner not less favorable than the most favored nonpriority unsecured claim provided in this Plan (other than any cash payments to an administratively convenient class).  The amount of the allowed claim includes the amount of tax owed plus 2.5% interest.  *See* 11 U.S.C. § 511.  The present value is calculated as of the Effective Date.

3.     The only Unsecured Tax Claim of which the Debtor is aware and its treatment is as follows:

(a)     Claimant:  City of Culver City, Revenue Division

(b)     Date of order for relief:  December 17, 2018

(c)     Total amount of Allowed Claim as of Petition Date:  $12,865

(d)     Total amount of cash payments (over time) to satisfy the Claim: $13,508

(e)     Interest rate (to compensate creditor because claim is paid over time): 2.5% (or as may be required or otherwise Allowed by the Court)

(f)     First payment date:  January 2020 (est.)

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

(g)    Amount of each installment: *See* <u>Exhibit E</u> attached

(h)    Frequency of payments: Every 3 months over 24 months

(i)    Total yearly payments: $0.00 (YR1); $6,458 (YR2); $7,051 (YR3)

(j)    Final Payment date:  September 2021 (est.)

(k)    Additional Comments:  In full satisfaction, settlement, release, discharge, and extinguishment of, and in exchange for such, Priority Unsecured Tax Claim, the holder of this Claim shall receive regular installment payments, in cash, to be paid, as set forth in the accompanying cash projections, in regular installments (every 3 months over 24 months), pending the sale of the Watermark Property.

**TOTAL UNSECURED TAX CLAIM(S):  <u>$13,508</u>.**

**D.    <u>CLASS ONE</u>: First Priority Secured Claim and Superpriority Claim of IGCFCO III, LLC (DIP Lender).**

1.    <u>Total amount of Allowed Claim</u>: $6,575,000 (principal), plus interest as set forth in the DIP Loan Agreement, but in no event less than $8,320,000.

2.    <u>Total amount of payments (over time) to satisfy the secured claim</u>:  Except as otherwise set forth in the DIP Loan Agreement, no less than $8,320,000.

3.    <u>Interest rate (to compensate creditor because claim is paid over time)</u>: Except as otherwise set forth in the DIP Loan Agreement: (i) non-default interest rate of 16%, compounded quarterly, on the principal portion of the DIP Loan outstanding from time to time, to be paid-in-kind as set forth in Section 7.1 to the DIP Loan Agreement; and (ii) default interest rate of 19% on all obligations due upon the occurrence and during the continuance of an Event of Default (as defined in the DIP Loan Agreement).

4.    <u>Impairment</u>: Impaired.

5.    <u>First payment date</u>: Except as otherwise set forth in the DIP Loan Agreement, or as agreed between the Debtor and the DIP Lender, no payments due until the DIP Loan Maturity Date.

6.    <u>Amount of each installment</u>: Except as otherwise set forth in the DIP Loan Agreement, or as agreed between the Debtor and the DIP Lender, no installment payments to be

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  made.

2      7.    Frequency of payments:  Except as otherwise set forth in the DIP Loan

3  Agreement, or as agreed between the Debtor and the DIP Lender, no payments due until the DIP

4  Loan Maturity Date.

5      8.    Total yearly payments: Except as otherwise set forth in the DIP Loan

6  Agreement, or as agreed between the Debtor and the DIP Lender, no payments due until the DIP

7  Loan Maturity Date.

8      9.    Final payment date: The earlier of: (i) March 26, 2021, (ii) the occurrence

9  of an Event of Default (as defined in the DIP Loan Agreement), unless the DIP Lender in its sole

10  and absolute discretion waives such occurrence); or (iii) the date on which the DIP Loan

11  Obligations are paid in full (the "DIP Loan Maturity Date").

12      10.    Lien: Lien is modified by the Plan.  Upon confirmation, and based upon a

13  budget for actual necessary expenses, the DIP Lender shall release the Debtor's performing and

14  non-performing loan portfolios from its collateral base to be used by the Debtor in connection with

15  its collection of performing and non-performing loans.  The net proceeds of the Debtor's

16  collections shall be held in escrow and not disbursed pending the satisfaction of the DIP Facility.

17      11.    Description of Collateral:  As more specifically set forth in the DIP Loan

18  Agreement, except with respect to Excluded Assets (defined in Section 1 to the DIP Loan

19  Agreement), and subordinate only to the Carve-Out and Permitted Priming Liens (defined in

20  Section 1 to the DIP Loan Agreement), the DIP Lender holds a first priority, valid, binding,

21  enforceable, and perfected security interest in, and liens upon, all of the assets of the DIP Loan

22  Borrowers and DIP Loan Guarantors, whether now existing or hereafter arising or acquired and

23  wherever located, including without limitation any such property in which a lien is granted to the

24  DIP Lender pursuant to any of the Loan Documents (as defined in the DIP Loan Agreement), the

25  Interim Order, or any other order entered or issued by the Bankruptcy Court (the "DIP

26  Collateral").  See DIP Loan Agreement, § 5.4.  A nonexclusive list of the DIP Collateral is set

27  forth in Section 5.4 to the DIP Loan Agreement, which includes a first lien on the parcels of real

28  property owned by P&G at 1321 Division Street, Muskegon, MI 49441 and 930 Washington

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

Avenue, Muskegon, MI 49441.  Significantly, the Syndicate Loans and Subscriptions, Excluded

Accounts, as those terms are defined in the Section 1 to the DIP Loan Agreement, and any

proceeds, substitutions or replacements of any of the above, other than fees due to the Debtor on

account of the Syndication Loans and Subscriptions are not DIP Collateral.

**E.** **CLASS TWO:  General Unsecured Claims of Non-Insiders**

1. *See* <u>Exhibit F</u> for list of claimants holding General Unsecured Claims and

amount owed to, or asserted by, each.[4]

2. <u>Total amount of allowed claims</u>: $477,655

3. <u>Total amount of payments (over time) to holders of General Unsecured</u>

<u>Claims</u>: $214,945

4. <u>Interest rate</u>: 0%

5. <u>Impairment</u>: Impaired

6. <u>First payment date</u>: January 2020 (est.)

7. <u>Amount of each installment</u>: *See* <u>Exhibit E</u> attached.

8. <u>Frequency of payments</u>: Every 3 months over 24 months

9. <u>Total yearly payments</u>: $0.00 (YR1), $102,566 (YR2), and $112,379 (YR3)

10. <u>Final payment date</u>: September 2021 (est.)

11. <u>Additional comments</u>: This Class 2 only consists of holders of Allowed

General Unsecured Claims of non-Insiders.  In full satisfaction, settlement, release, discharge, and

extinguishment of, and in exchange for, Allowed Non-Insider General Unsecured Claims, the

holder of such a General Unsecured Claim shall receive: (a) a cash distribution in an amount up to

approximately <u>45%</u> of the Allowed amount of its General Unsecured Claim; (b) paid, as set forth

in the  accompanying cash projections, in regular installments (every 3 months over 24 months),

pending the sale of the Watermark Property; (c) with the first installment payment anticipated to

be made in January 2020.  Holders of Non-Insider General Unsecured Claim will not receive any

---

[4]The table attached as <u>Exhibit B</u> includes all General Unsecured Claims that have been scheduled or filed, and, for each such Claim, identifies: (a) the claimant name, (b) whether the claimant is an Insider, (c) the scheduled and filed amounts of the Claims, (d) the proof of claim number (if any), (e) whether the Claim is disputed, (f) the estimated Allowed amount of the Claim, and (g) the Class in which such Claim is classified in the Plan.

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    interest on account of such Claim.

2    **F.**    **CLASS THREE:  Insider General Unsecured Claims**

3    This is the claim of a person as defined in 11 U.S.C. § 101(31) (West Supp. 2006), who

4    holds a General Unsecured Claim.  Essentially, an insider is a person with a close relationship

5    with the Debtor, other than a creditor-debtor relationship.  *See* <u>Exhibit G</u> for list of General

6    Unsecured Claims of Insiders.

7    <u>**Insider # 1**</u>

8    1.    <u>Claimant</u>:  David Redlener

9    2.    <u>Total amount of allowed claim</u>: $29,900

10    3.    <u>Total amount of payments (over time) to satisfy claims</u>: Up to no more than

11    $11,960

12    4.    <u>Interest rate (to compensate creditor because claim is paid over time)</u>:

13    0.00%

14    5.    <u>Impairment</u>: Impaired

15    6.    <u>First payment date</u>: *See* <u>Exhibit E</u> attached

16    7.    <u>Amount of each installment</u>: 14.66% of amounts, if any, available for

17    disbursement to this Class

18    8.    <u>Frequency of payments</u>: *See* <u>Exhibit E</u> attached

19    9.    <u>Total yearly payments</u>: *See* <u>Exhibit E</u> attached

20    10.    <u>Final payment date</u>: *See* <u>Exhibit E</u> attached

21    11.    <u>Additional comments</u>:  In full satisfaction, settlement, release, discharge,

22    and extinguishment of, and in exchange for such, Allowed Insider General Unsecured Claims,

23    after payment of Allowed Administrative Expense Claims, Priority Unsecured Tax Claims, Non-

24    Insider Priority Wage Claims, and Non-Insider General Unsecured Claims in accordance with the

25    respective treatment of such Claims under the Plan, only to the extent of available funds, the

26    holders of Insider General Unsecured Claims shall: (a) receive a cash distribution equal to

27    approximately <u>45%</u> of the Allowed amount of its General Unsecured Claim; or (b) be paid

28    pursuant to such other terms (including with respect to the amount paid) as may be agreed upon

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1   between the holder of such Insider General Unsecured Claim and the Debtor.  Holders of Insider

2   General Unsecured Claims will not receive any interest on account of such Claim. Up to no more

3   than the aggregate of $91,751)

4          **Insider # 2**

5          1.    Claimant:  Erika Harvel

6          2.    Total amount of allowed claim: $15,695

7          3.    Total amount of payments (over time) to satisfy claims: Up to no more than

8   $6,278

9          4.    Interest rate (to compensate creditors because claim is paid over time):

10   0.00%

11          5.    Impairment: Impaired

12          6.    First payment date: *See* Exhibit E attached

13          7.    Amount of each installment: 7.70% of amounts, if any, available for

14   disbursement to this Class

15          8.    Frequency of payments: *See* Exhibit E attached

16          9.    Total yearly payments: *See* Exhibit E attached

17          10.    Final payment date: *See* Exhibit E attached

18          11.    Additional comments: In full satisfaction, settlement, release, discharge,

19   and extinguishment of, and in exchange for such, Allowed Insider General Unsecured Claims,

20   after payment of Allowed Administrative Expense Claims, Priority Unsecured Tax Claims, Non-

21   Insider Priority Wage Claims, and Non-Insider General Unsecured Claims in accordance with the

22   respective treatment of such Claims under the Plan, only to the extent of available funds, the

23   holders of Insider General Unsecured Claims shall: (a) receive a cash distribution equal to

24   approximately 45% of the Allowed amount of its General Unsecured Claim; or (b) be paid

25   pursuant to such other terms (including with respect to the amount paid) as may be agreed upon

26   between the holder of such Insider General Unsecured Claim and the Debtor.  Holders of Insider

27   General Unsecured Claims will not receive any interest on account of such Claim.

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**Insider # 3**

    1.    Claimant:  Harinder Rana

    2.    Total amount of allowed claim: $43,200

    3.    Total amount of payments (over time) to satisfy claims: Up to no more than $17,280

    4.    Interest rate (to compensate creditors because claim is paid over time): 0.00%

    5.    Impairment: Impaired

    6.    First payment date: *See* Exhibit E attached

    7.    Amount of each installment:  21.19% of amounts, if any, available for disbursement to this Class

    8.    Frequency of payments: *See* Exhibit E attached

    9.    Total yearly payments: *See* Exhibit E attached

    10.    Final payment date: *See* Exhibit E attached

    11.    Additional comments:  In full satisfaction, settlement, release, discharge, and extinguishment of, and in exchange for such, Allowed Insider General Unsecured Claims, after payment of Allowed Administrative Expense Claims, Priority Unsecured Tax Claims, Non-Insider Priority Wage Claims, and Non-Insider General Unsecured Claims in accordance with the respective treatment of such Claims under the Plan, only to the extent of available funds, the holders of Insider General Unsecured Claims shall: (a) receive a cash distribution equal to approximately 45% of the Allowed amount of its General Unsecured Claim; or (b) be paid pursuant to such other terms (including with respect to the amount paid) as may be agreed upon between the holder of such Insider General Unsecured Claim and the Debtor.  Holders of Insider General Unsecured Claims will not receive any interest on account of such Claim.

**Insider # 4**

    1.    Claimant:  Michael Silberman

    2.    Total amount of allowed claim: $115,095

    3.    Total amount of payments (over time) to satisfy claims: Up to no more than

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

$46,038

    4.    Interest rate (to compensate creditors because claim is paid over time): 0.00%

    5.    Impairment: Impaired

    6.    First payment date: *See* Exhibit E attached

    7.    Amount of each installment: 56.45% of amounts, if any, available for disbursement to this Class

    8.    Frequency of payments: *See* Exhibit E attached

    9.    Total yearly payments: *See* Exhibit E attached

    10.    Final payment date: *See* Exhibit E attached

    11.    Additional comments:  In full satisfaction, settlement, release, discharge, and extinguishment of, and in exchange for such, Allowed Insider General Unsecured Claims, after payment of Allowed Administrative Expense Claims, Priority Unsecured Tax Claims, Non-Insider Priority Wage Claims, and Non-Insider General Unsecured Claims in accordance with the respective treatment of such Claims under the Plan, only to the extent of available funds, the holders of Insider General Unsecured Claims shall: (a) receive a cash distribution equal to approximately 45% of the Allowed amount of its General Unsecured Claim; or (b) be paid pursuant to such other terms (including with respect to the amount paid) as may be agreed upon between the holder of such Insider General Unsecured Claim and the Debtor.  Holders of Insider General Unsecured Claims will not receive any interest on account of such Claim.

**TOTAL INSIDER CLAIMS: $81,556.**

    **G.**    **CLASS FOUR:  Unsecured Priority Wage Claims of Non-Insiders**

These include non-Insider unsecured claims for certain employee wages, salary, and commissions or unsecured claims for contributions to an employee benefit plan entitled to priority treatment and payment relative to other unsecured claims pursuant to Section 507(a)(4) through (a)(5) of the Code.

Section 1129(a)(9)(B) of the Code requires such unsecured claims to be treated with priority over general unsecured claims, and pay them in full on the Effective Date, or as soon as

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  practicable after the Effective Date, unless claimants vote as a class to accept deferred payments.

2  If so, claims are impaired and claimants are entitled to vote to accept or reject the Plan.

3       1.   Claimants:  *See* Exhibit H attached

4       2.   <u>Total aggregate amount of allowed claim as of Petition Date</u>:  $57,118

5       3.   <u>Total aggregate amount of cash payments (over time) to satisfy the claim</u>:

6  $59,974

7       4.   <u>Interest rate (to compensate creditor because claim is paid over time)</u>: 2.5%

8       5.   <u>Impairment</u>: Impaired

9       6.   <u>First payment date</u>:  January 2020 (est.)

10      7.   <u>Amount of each installment</u>: *See* <u>Exhibit E</u> attached

11      8.   <u>Frequency of payments</u>: Every 3 months over 24 months

12      9.   <u>Total yearly payments</u>: $0.00 (YR1); $28,159 (YR2); $31,815 (YR3)

13      10.  <u>Final Payment date</u>:  September 2021 (est.)

14      11.  <u>Additional Comments</u>:  In full satisfaction, settlement, release, discharge,

15 and extinguishment of, and in exchange for such, Non-Insider Priority Wage Claim, the holder of

16 this Claim shall receive regular installment payments, in cash: (a) of a total value, as of the

17 Effective Date, equal to the Allowed amount of such claim; (b) to be paid, as set forth in the

18 accompanying cash projections, in regular installments (every 3 months over 24 months), pending

19 the sale of the Watermark Property; (c) with the first installment payment anticipated to be made

20 in January 2020.

21 **H.    <u>CLASS FIVE</u>:  Unsecured Priority Wage Claims of Insiders**

22      These include Insider unsecured claims for certain employee wages, salary, and

23 commissions or unsecured claims for contributions to an employee benefit plan entitled to priority

24 treatment and payment relative to other unsecured claims pursuant to Section 507(a)(4) through

25 (a)(5) of the Code.

26      Section 1129(a)(9)(B) of the Code requires such unsecured claims to be treated with

27 priority over general unsecured claims, and pay them in full on the Effective Date, or as soon as

28 practicable after the Effective Date, unless claimants vote as a class to accept deferred payments.

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

If so, claims are impaired and claimants are entitled to vote to accept or reject the Plan.

    1.    Claimants:  *See* Exhibit I attached

    2.    <u>Total aggregate amount of allowed claim as of Petition Date</u>:  $51,400

    3.    <u>Total aggregate amount of cash payments (over time) to satisfy the claim</u>: Up to no more than the aggregate of $51,400.

    4.    <u>Interest rate (to compensate creditor because claim is paid over time)</u>: 0.00%[5]

    5.    <u>Impairment</u>: Unimpaired

    6.    <u>First payment date</u>:  January 2020 (est.)

    7.    <u>Amount of each installment</u>: *See* <u>Exhibit E</u> attached

    8.    <u>Frequency of payments</u>: *See* <u>Exhibit E</u> attached

    9.    <u>Total yearly payments</u>: *See* <u>Exhibit E</u> attached

    10.    <u>Final Payment date</u>: September 2021 (est.)

    11.    <u>Additional Comments</u>:  In full satisfaction, settlement, release, discharge, and extinguishment of, and in exchange for such, Insider Priority Wage Claim, after payment of Allowed Administrative Expense Claims, Priority Unsecured Tax Claims, Non-Insider Priority Wage Claims, and Non-Insider General Unsecured Claims in accordance with the respective treatment of such Claims under the Plan, only to the extent of available funds, the holders of Insider Priority Wage Claims shall: (a) receive a cash distribution equal to approximately <u>100%</u> of the Allowed amount of its Priority Wage Claim; or (b) be paid pursuant to such other terms (including with respect to the amount paid) as may be agreed upon between the holder of such Insider Priority Wage Claim and the Debtor.  Holders of Insider Priority Wage Claims will not receive any interest on account of such Claim.

    **I.**    **<u>CLASS SIX</u>: Equity Interests**

    1.    Class 6 consists of all equity holders, including holders of membership interests, common stock, preferred stock, stock options, warrants, and similar equity instruments

---

[5] Claimants have agreed to a 0.00% interest rate.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

("Equity Interests" or "Interests").  Holders of allowed Class 6 Interests will retain their existing Equity Interests in the Debtor, pending implementation of the Plan and dissolution of Debtor.

       2.    Impairment: Impaired.

       3.    Additional Comments:  To the extent applicable, the corporate governance for the Post-Confirmation Debtor, including charters, bylaws, operating agreements, or other organization or formation documents, as applicable, have been or shall be changed to include a provision prohibiting the issuance of nonvoting equity securities, as required by § 1123(a)(6) of the Code.

## X.    SOURCE OF MONEY TO PAY CLAIMS AND INTEREST-HOLDERS

The Plan cannot be confirmed unless the Court finds that it is "feasible," which means that the Proponent has timely submitted evidence establishing that the Debtor will have sufficient funds available to satisfy all expenses, including the scheduled creditor payments discussed above.  What follows is a statement of projected cash flow for the duration of the Plan.  The focus is on projected cash receipts and cash disbursements.  All non-cash items such as depreciation, amortization, gains and losses are omitted.  A positive number reflects a source of cash; a (negative number) reflects a use of cash.  A more detailed statement of cash flow projections for the duration of Plan payments is attached as Exhibit E.

| Cash Flow | YR #1 (2019) 3 months | YR #2 (2020) 12 months | YR #3 (2021) 9 months |
|---|---|---|---|
| Cash at Start of Year | $27,598 | $56,405 | $69,280 |
| Collections (Portfolios) | $171,044 | $739,586 | $710,419 |
| Collections (FA) | $0 | $50,000 | $0 |
| Cost of Collections | ($127,237) | ($476,711) | ($351,938) |
| Non-Insider Plan Payments | ($15,000) | ($300,000) | ($328,702) |
| Insider Plan Payments | $0 | $0 | ($98,798) |
| Cash at End of Year | $56,405 | $69,280 | $261 |
| | | | |
| Total Plan Payments (Non-Insiders) | | | $643,702 |
| Total Plan Payments (Insiders) | | | $98,798 |

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**Section XV** states the assumptions and details surrounding the statement of projected cash flow.

As set forth in the accompanying cash flow projections (<u>Exhibit E</u>), on the Effective Date, the Plan pays $15,000.  As set forth in the accompanying cash flow projections, the Debtor anticipates having sufficient cash on hand to make such payment on the Effective Date.

## XI.  FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER PROPOSED PAYMENT IS FEASIBLE

Attached as <u>Exhibit J</u> are three types of financial documents, including balance sheets, cash flow statements, and income and expense statements for the period including the most recent twelve-month calendar year and all months subsequent thereto.

## XII.  ASSETS AND LIABILITIES OF THE ESTATE

### A.  <u>Assets</u>

The identity and fair market value of the estate's assets are listed in <u>Exhibit K</u> so that the reader can assess what assets are at least theoretically available to satisfy claims and to evaluate the overall worth of the bankruptcy estate.  Whether the Plan proposes to sell any of these assets is discussed in **Section XVI**.

### B.  <u>Liabilities</u>

<u>Exhibit B</u> and <u>Exhibit C</u> show the estimated Allowed Claims against the estate, claims whose treatment is explained in detail by **Section IX**. The estate's liabilities are also listed in <u>Exhibit K</u>.

### C.  <u>Summary</u>

The fair market value of all assets equals $219,312.35.  Total liabilities equal $7,661,810.50 (undisputed).

## XIII.  TREATMENT OF NONCONSENTING CLASSES

As stated above, even if all classes do not consent to the proposed treatment of their claims under the Plan, the Plan may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by the Code.  The process by which dissenting classes are forced to abide by the terms of a plan is commonly referred to as "cramdown."  The Code allows dissenting classes to be crammed down if the Plan does not "discriminate unfairly" and is "fair and equitable."  The Code

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    does not define discrimination, but it does provide a minimum definition of "fair and equitable."

2    The term can mean that <u>secured claimants</u> retain their liens and receive cash payments whose

3    present value equals the value of their security interest.  For example, if a creditor lends the Debtor

4    $100,000 and obtains a security interest in property that is worth only $80,000, the "fair and

5    equitable" requirement means that the claimant is entitled to cash payments whose present value

6    equals $80,000 and not $100,000.

7    The term means that <u>unsecured claimants</u> whose claims are not fully satisfied at least know

8    that no claim or interest that is junior to theirs will receive anything under the Plan, except where the

9    Debtor is an individual, has elected to retain property included in the Estate under 11 U.S.C. § 1115

10    (West Supp. 2006) and has satisfied 11 U.S.C. § 1129(b)(2)(B)(ii) (West Supp. 2006). "Fair and

11    equitable" means that each <u>holder of an interest</u> must receive the value of such interest or else no

12    junior interest is entitled to receive anything.

13    Therefore, if a class of general unsecured claims votes against the Plan, the Plan cannot be

14    confirmed where the Debtor or a class of interest holders (e.g. shareholders or partners) will receive

15    or retain any property under the Plan, <u>unless</u> the Plan provides that the class of general unsecured

16    claims shall be paid in full with interest.  If a class of interest holders votes against the Plan, the Plan

17    cannot be confirmed where the Debtor will receive or retain any property under the Plan, unless the

18    Plan provides that the class of interest holders shall be paid in full with interest.  These are complex

19    statutory provisions and the preceding paragraphs do not purport to state or explain all of them.

20    **XIV.    TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING CLASS**

21    **(CHAPTER 7 LIQUIDATION ANALYSIS)**

22    The Plan must provide that a nonconsenting impaired claimant or interest holder of a

23    consenting class receive at least as much as would be available had the Debtor filed a Chapter 7

24    petition instead.

25    In a Chapter 7 case the general rule is that the Debtor's assets are sold by a trustee.

26    Unsecured creditors generally share in the proceeds of sale only after secured creditors and

27    administrative claimants are paid.  Certain unsecured creditors get paid before other unsecured

28    creditors do.  Unsecured creditors with the same priority share in proportion to the amount of their

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    allowed claim in relationship to the total amount of allowed claims.

2        A creditor would recover from the assets of the bankruptcy estate less under Chapter 7 than

3    under Chapter 11 for, at least, the following reasons:

4        (1)    First, in light of the DIP Facility, the DIP Lender currently holds a first priority lien

5    on substantially all of the Debtor's assets in the amount of, at least, $8,320,000 (Make Whole

6    Payment).  Further, any outright sale by a Chapter 7 trustee of the Debtor's loan portfolios would net

7    no more than approximately $202,231.  As a result, the entirety of any proceeds generated from the

8    liquidation, by a Chapter 7 trustee, of the Debtor's current assets would be used to pay the DIP

9    Lender, leaving no money available to pay any amount to general unsecured claims.

10        (2)    Second, setting aside the fact that the secured claim precludes payment of any sum to

11    general unsecured creditors, in a Chapter 7 case a trustee is appointed and is entitled to

12    compensation from the bankruptcy estate in an amount no more than 25% of the first $5,000 of all

13    moneys disbursed, 10% on any amounts over $5,000 and up to $50,000, 5% on all amounts over

14    $50,000 and up to $1,000,000, and such reasonable compensation no more than 3% of moneys over

15    $1,000,000.  Assuming a trustee obtains and distributes the amounts identified above upon a sale of

16    all assets, the trustee's compensation alone would be approximately $25,000-50,000, all of which

17    must be paid before any amounts could be distributed to general unsecured creditors.  In addition,

18    the fees and costs of the trustee's professionals, as well as fees and costs of the Debtor's

19    professionals incurred while the case was in Chapter 11, also would need to be paid before any

20    amounts could be distributed to general unsecured claims.

21        (3)    Finally, unsecured priority claims must be paid before any distribution could be made

22    to general unsecured creditors.  The Debtor has more than $121,000 in priority tax and priority wage

23    claims.  No amounts would be available to pay any of those priority claims in a Chapter 7

24    liquidation, let alone to pay general unsecured creditors.

25        In sum, general unsecured creditors would receive nothing in a Chapter 7 case.  On the other

26    hand, as set forth in this Plan, general unsecured creditors are expected to receive an estimated 45%

27    of their allowed claims.

28        A table reflecting how general unsecured creditors are projected to receive more under the

1    Plan than in a Chapter 7 case follows below (See **Exhibit N** for further detail and explanation):

|  | **Chapter 7** | **Chapter 11 Liquidation** |
|---|---|---|
| 1. value of assets | **$204,130** | **$716,908** |
| 2. administrative exp. secured claims priority unsecured claims | **$9,108,144** | **$9,108,144** |
| 3. chapter 7 trustee fee | **$25,000 - $50,000 (est.)** | **n/a** |
| 4. exemption(s) | **n/a** | **n/a** |
| TOTAL AVAILABLE FOR DISTRIBUTION TO GENERAL UNSECURED CREDITORS | **$0.00** | **$716,908[6]** |
|  | unsecured creditors receive payment of 0.00% of total claims | unsecured creditors receive payment of 45% of total allowed claims under Plan |

## XV.   FUTURE DEBTOR

To the extent applicable, corporate governance for the Post-Confirmation Debtor, including charters, bylaws, operating agreements, or other organization or formation documents, as applicable, shall be consistent with section 1123(a)(6) of the Bankruptcy Code.

### D.   **Management of Debtor**

1.   Names of persons who will manage the Debtor's business affairs:

(a)   David Redlener ("Redlener"):  Redlener, who currently serves as the Debtor's Chief Executive Officer, shall continue in such capacity with respect to the Post-Confirmation Debtor, and also take on the role of Collections.

(b)   Michael Silberman ("Silberman"):  Silberman, who currently serves as the Debtor's President, Chief Financial Officer, and Secretary, shall continue in such capacities with respect to the Post-Confirmation Debtor, and also take on the role of Collections.

(c)   Erika Harvel ("Harvel"):  Harvel, who currently serves as the Debtor's Chief Operating Officer, shall continue in such capacity with respect to the Post-Confirmation Debtor, and also take on the role of Collections.

In addition, Redlener, Silberman, and Harvel, who currently serve on the Debtor's Board of Directors, shall continue to serve on the Post-Confirmation Debtor's Board of Directors.

---

[6]Secured claim of DIP Lender is being released/modified to allow for a distribution to unsecured creditors.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

2.    Proposed compensation to persons listed above:

(a)    <u>Redlener</u>:  $60,000 annual base salary ($5,000 per month, paid in amounts ranging from $0 to $5,000 per month).  In addition, Redlener shall receive $926.50 per month as a medical insurance benefit, and be entitled to reimbursement of valid business expenses.[7]

(b)    <u>Silberman</u>:  $60,000 annual base salary ($5,000 per month, paid in amounts ranging from $1,250 to $5,000 per month).  In addition, Silberman shall receive $875.00 per month as a medical insurance benefit, and be entitled to reimbursement of valid business expenses.[8]

(c)    <u>Harvel</u>:  $60,000 annual base salary ($5,000 per month, paid in amounts ranging from $1,250 to $5,000 per month).  In addition, Harvel shall receive $587.00 per month as a medical insurance benefit, and be entitled to reimbursement of valid business expenses.[9]

3.    Qualifications:

(a)    <u>Redlener</u>:  Redlener is one of the co-founders, and is the current Chief Executive Officer, of the Debtor.  He is a licensed attorney, and is responsible for overseeing the operations and procedures of the Debtor.  As the former Senior Vice President and Deputy Director of Loan Services at one of the nation's largest non-bank small business financing companies, Redlener established and had direct oversight of that company's Loan Servicing, Workout, Liquidation, REO & Alternative Disposition Departments.  In this position, he established a record of accomplishments that included the development of an operational infrastructure to support portfolio growth from $70 million to more than $4 billion.  As CEO of the Debtor, Redlener has, subject to the control and oversight of the Debtor's Manager and Board of Directors, general and active supervision and management over the business of the Debtor and over its several officers, assistants, agents, and employees.  As a founding member of the Debtor,

---

[7] As set forth in the payroll analysis (<u>Exhibit L</u>), Redlener, Silberman, and Harvel have each agreed that their monthly salary of $5,000 shall be discounted by 50% months 1-2, 75% for months 3-4, and 50% for months 5-8, in order to ensure adequate cash flow for plan payments.  To the extent that there is net cash available at the end of each month that exceeds the Plan budget (<u>Exhibit E</u>), Redlener, Silberman, and Harvel shall be permitted to be paid up to the full amount of their monthly salary of $5,000/month.

[8] See immediately preceding footnote.

[9] See immediately preceding footnote.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  and based on Redlener's position with the Debtor and his overall experience, Redlener is

2  extremely familiar and has an intimate knowledge of the Debtor's operations, cash position,

3  financial condition, and all other aspects of the Debtor and its business, as well as the consumer

4  lending industry in general.

5          (b)     Silberman:  Silberman is one of the co-founders and is currently President

6  and CFO of the Debtor.  Silberman is an experienced FinTech and operations executive in financial

7  services, specialty servicing, the federally chartered banking sector, technology industries and

8  public and private capital markets.  Silberman is the former CFO of two public companies on

9  Nasdaq, NYSE, and AMEX including co-founding and taking public a half-billion-dollar social

10  network.  Silberman holds an MBA from the Anderson School, University of California, Los

11  Angeles (UCLA) and a BA in Economics from UCLA.  Silberman is a licensed CPA in the state

12  of California, a Certified Global Management Accountant (CGMA) and Certified Fraud Examiner

13  (CFE).  As a founding member of the Debtor, and based on Silberman's position with the Debtor

14  and his overall experience, Silberman is extremely familiar and has an intimate knowledge of the

15  Debtor's operations, cash position, financial condition, and all other aspects of the Debtor and its

16  business, as well as the consumer lending industry in general.

17          (c)     Harvel:  Harvel is one of the co-founders and COO and is responsible for the

18  daily operation of the company.  Harvel has extensive knowledge and experience in Loan

19  Servicing, Human Resources, Compliance, Quality Control and Non-performing loan

20  collections.  Harvel's prior experience includes holding leadership positions at American Express,

21  CashCall and LoanMe in Training & Development and Customer Service Manager for Clear

22  Wireless.  Harvel holds a BS in Business Management from the University of Phoenix.  Harvel

23  also belongs to several local leadership networking organizations.  As a founding member of the

24  Debtor, and based on Harvel's position with the Debtor and his overall experience, Harvel is

25  extremely familiar and has an intimate knowledge of the Debtor's operations, loan portfolios, and

26  all other aspects of the Debtor and its business, as well as the consumer lending industry in

27  general.

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

CKW 2686315v2

4.    Affiliation of persons to Debtor:

In addition to his respective relationship to the Debtor identified in this Section XV, Redlener is the sole manager of DCMRed, LLC, which is the Manager of the Debtor and holds a 47.49% membership interest in the Debtor.  Silberman and Harvel have no other affiliation with the Debtor beyond his/her role as President, Chief Financial Officer & Secretary, and Chief Operating Officer, respectively.

1.    Job description:

(a)    Redlener:  Overall control and management of the Debtor.  Subject to the control and oversight of the Manager and the Board of Directors, general and active supervision and management over the business of the Debtor and over its several officers, assistants, agents and employees.  In addition, Redlener will provide oversight and hands-on assistance with respect to all aspects of the loan collection process such as developing communication campaigns, special collection offers and anything else that will drive collection of the non-performing loan portfolio.

(b)    Silberman:  Responsible for the general care and custody of the funds and securities of the Debtor; shall receive, and give receipts for, moneys due and payable to the Debtor from any source whatsoever; shall exercise general supervision over expenditures and disbursements made by officers, agents and employees of the Debtor and the preparation of such records and reports in connection therewith as may be necessary or desirable; shall, in general, perform all other duties incident to the office of CFO and such other duties as from time to time may be assigned to the CFO by the Manager and the Board of Directors.  In addition, Silberman will provide oversight and hands-on assistance with respect to all aspects of the loan collection process such as developing communication campaigns, special collection offers and anything else that will drive collection of the non-performing loan portfolio.

(c)    Harvel:  Overall control and management.  Subject to the control and oversight of the Manager and the Board of Directors, general and active supervision and management over day-to-day operation matters of the Debtor.  In addition, Harvel will provide oversight and hands-on assistance with respect to all aspects of the loan collection process such as developing communication campaigns, special collection offers and anything else that will drive collection of

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1   the non-performing loan portfolio.

2   **E.**    **Disbursing Agent**

3       The Post-Confirmation Debtor, c/o David Redlener, is responsible for collecting money

4   intended for distribution to claimants and transmitting it to them.

5        1.    The Disbursing Agent's address and telephone number are: 1134 S. Crest

6   Dr., Los Angeles, CA 90035; Tel: 310-531-3400.

7        2.    Proposed compensation to person listed above:  None (in the capacity of,

8   and for services rendered as, Disbursing Agent).

9        3.    Qualifications:  *See* Section XV.A. above

10        4.    Affiliation of person to Debtor:  *See* Section XV.A. above

11        5.    Job description:  Among general responsibilities and duties, responsible for

12   collecting and distributing money to claimants in accordance with the Plan.  The Post-

13   Confirmation Debtor shall serve as the Disbursing Agent and shall be responsible for paying all

14   amounts due under the Plan from an account hereby authorized to be opened (if necessary and/or

15   administratively convenient for the Disbursing Agent).  As Disbursing Agent, the Post-

16   Confirmation Debtor shall be the sole and exclusive representative of the Debtor and the Estate,

17   and shall be imbued and vested with the rights, powers, and duties under Sections 1106, 1107,

18   1108, and 1123 of the Bankruptcy Code.  The Post-Confirmation Debtor shall, among other

19   things, be vested with the sole and exclusive authority to (a) consummate the Plan, (b) settle,

20   adjust, retain, enforce, commence, continue to pursue or prosecute, or abandon any of the

21   Reserved Claims and/or Disputed Claims, and (c) take such further actions with respect to

22   property of the Estate or claims against the Estate as is necessary to effectuate the terms of the

23   Plan.  The Post-Confirmation Debtor, as representative of the Debtor and the Estate, shall pay all

24   Allowed Administrative Expense Claims, all Allowed Priority Wage Claims, all Allowed Priority

25   Tax Claims, all Allowed Secured Claims, and all Allowed General Unsecured Claims in

26   accordance with applicable provisions of the Plan.

27   **F.**    **Future Financial Outlook**

28       The Proponent believes that the Debtor's economic health has improved from its

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

prebankruptcy state for the following reasons:

(1)    In late March 2019, the Debtor received critical funding through the DIP Facility.  As discussed above, as a result of JGB's refusal to advance more funds under the JGB Facility, the Debtor ultimately did not have sufficient capital to generate new loans.  As a result, both pre-petition and post-petition, the Debtor searched for new financing to retire the JGB Facility.  Eventually, after extensive efforts and intense negotiations, the Debtor secured the DIP Facility, which paid off JGB (at a discounted payoff amount) and provided the Debtor with funds.

(2)    The Debtor's pre-petition lease with CF Culver City Office LP (the "Culver City Lease"), the landlord for the premises at 10325 Jefferson Blvd., Culver City, CA 90232, where the Debtor's business operated as of the Petition Date, was rejected as a matter of law effective April 17, 2019, and the Debtor transitioned to a new lease of new premises (of a size more appropriate for the Debtor's current operations) at a monthly rental substantially less than the Culver City Lease.  The rejection of the Culver City Lease, and the Debtor's entry into the new sublease at 1134 S. Crest Dr., Los Angeles, CA 90035 (the "Crest Sublease"), has resulted in substantial savings to the Estate, more specifically, by reducing the Debtor's monthly rent from approximately $22,481 to approximately $7,950 per month.

(3)    Effective December 1, 2019, the Debtor's monthly rent for the Crest Sublease will be reduced from approximately $7,950 per month to approximately $3,250 per month, as a result of the Debtor's entry into a new amendment for the Crest Sublease.  Exhibit M is a true and correct copy of Amendment #1 to the Crest Sublease.

(4)    The Debtor's pre-petition "Loan Servicing Agreement" (the "Servicing Agreement") with First Associates Loan Servicing, LLC ("First Associates") was rejected effective July 18, 2019, and the Debtor is in the process of "de-boarding" and getting back its performing loan portfolio from First Associates.  The rejection of the Servicing Agreement has and will provide the Debtor with substantial cost savings and allow the Debtor to realize significantly more value from its loans, as the monthly minimum fees charged by First Associates to service the Debtor's performing loans were excessive in relation to the amount collected on such loans.

(5)    The Debtor reduced its employee pool from 8 employees pre-petition, to 7 employees

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

contemplated post-confirmation, as well as realigned employee day-to-day job responsibilities.  This will result in savings to the Estate of approximately $90,000 on a yearly basis.  Exhibit L is a payroll analysis.

**Section X** provides a summary of the projected cash flow of the Debtor for the duration of the Plan.  The following assumptions underlie the projections:

a.    55% of the Non-Performing Loan Portfolio is Collectible:

The Debtor assumes that 55% of the total due on the non-performing loan portfolio (approximately $2,725,000) or $1,498,750 will be collected.  The total due on the non-performing loan portfolio is based on a collections report generated by the Debtor's loan management system on July 26, 2019.  The maximum judgement issued in small claims court is $2,500 + $110 filing fee costs for a total of $2,610.  The 55% collection rate assumes that 35% of the non-performing portfolio is uncollectible as a result of the borrower filing for bankruptcy or being unemployed.  This 35% (or $914) drops the collectible portion of the maximum judgment from $2,610 to $1,696.  The total estimated small claims proceeding costs is $225.  The net recoverable amount becomes $1,471 or 56%. See table below:

| | |
|---|---|
| Max Small Claims Court Judgement | $2,600 |
| Average Loan Amount | $2,600 |
| | |
| **Recovery Assumptions** | |
| % Uncollectible (borrower filed BK) | 20% |
| Non-Recoverable Judgement (borrower unemployed) | 15% |
| Legal Costs *(Small Claims Filing Fees)* | $225 |
| | |
| **Recovery Calculation** | |
| Loan Amount | $2,600 |
| **LESS** Uncollectible ($2,600 x 20%) | ($520) |
| Gross Collectible | $2,080 |
| | |
| LESS Non-Recoverable ($2,600 x 15%) | ($390) |
| LESS Legal Costs | ($225) |
| | |
| **NET Recovery** | $1,465 |
| **Legal Recovery Rate** ($1465/$2,600) | 56% |

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

b.     Non-Performing Portfolio Collection Cash Flow

The Debtor's historical weekly collections against the non-performing loan portfolio has experienced an average week over week increase of 13% since January 2019. Increasing from $2,796 (January) to a projected $5,883.23 (through July) per week. These historical weekly increases combined with a dramatic increase in small claims court filings in August will result in ongoing week over week cash flow increases.

c.     Performing Portfolio Collection Cash Flow

In May 2019, First Associates provided the Debtor with projected cash flow from the remaining performing loan portfolio through maturity. To date, actual collections is 4.34% greater than projected. Based on portfolio's collection performance to date, the Debtor is relying upon the projection provided by First Associates.

As previously stated, Plan payments will come from the Debtor's collections on its performing and non-performing loan portfolios, and a recovery from the FA Litigation.

If there are insufficient funds to provide all of the Plan payments, then the Proponent will make up the shortfall under the following conditions and subject to the following terms: Insiders will forego or reduce their payroll, as necessary. The Proponent's financial solvency, which is relevant to its ability to honor its commitment to make up any shortfall, is demonstrated by the Plan budget: See **Exhibit E**.

## XVI.    SALE OR TRANSFER OF PROPERTY; ASSUMPTION OF CONTRACTS AND LEASES; OTHER PROVISIONS

The Plan provides for the following:

**G.     Assumption and Rejection of Unexpired Leases and Executory Contracts**

1.     Assumption. The Post-Confirmation Debtor will perform all related obligations whether arising before or after confirmation of the Plan. For the avoidance of doubt, such obligations shall include, but not be limited to, amounts owed under a contract or lease (as modified by any agreement of the parties) that have not been billed or not yet become due, any regular or periodic adjustment or reconciliation of charges under a contract or lease (as modified by any agreement of the parties), any percentage rent, and any indemnification obligations,

whether such obligations accrued or relate to the pre- or post- confirmation period. Any arrearages arising before confirmation of the Plan will (a) be paid, as set forth in the accompanying cash projections, pending the sale of the Watermark Property, or (b) pursuant to agreement with the Debtor. Obligations that arise after confirmation of the Plan will be paid as they come due.

Except as otherwise provided in the Plan or Confirmation Order, on the Effective Date, all contracts, leases, and other agreements entered into by the Debtor on or after the Petition Date and which agreements have not been terminated on or before the Confirmation Date, shall revest in and remain in full force and effect as against the Post-Confirmation Debtor and the Estate and the other parties to such contracts, leases and other agreements.

Pursuant to the Plan, any objection to the Cure Claim or timing of payment of the Cure Claim set forth herein (the "Cure Claim Objection") must be filed and served upon counsel for the Debtor on or before the deadline to file an Objection to Confirmation of the Plan set forth in the Notice (the "Cure Claim Objection Deadline"). The Cure Claim Objection need not be accompanied by a declaration, but shall include detailed accounts statements from the corresponding lessor's records that support the Cure Claim Objection. In the event that any such Cure Claim Objection is not filed and served by the Cure Claim Objection Deadline, the Cure Claim and timing of payment of the Cure Claim will be deemed forever to be as set forth in this Plan and DS, and any Cure Claim in excess of the amount set forth herein and will be forever barred in the Bankruptcy Case, without further notice. If the Debtor cannot consensually resolve any such Cure Claim Objection with the counterparty to the Executory Contract in advance of the Confirmation Hearing, without delaying confirmation of the Plan, and except as otherwise may be agreed or later consensually resolved between the Debtor and the particular objecting counterparty, the following procedures shall apply: (a) the Debtor shall pay the undisputed portion of the Cure Claim, as set forth in the accompanying cash projections, pending the sale of the Watermark Property; (b) the Post-Confirmation Debtor shall maintain the disputed portion of the Cure Claim in a segregated account pending resolution of the Cure Claim Objection; and (c) at the Confirmation Hearing, the Court shall set a post-confirmation status conference for a date that is approximately 30 calendar days after the Confirmation Hearing, at

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1   which time the Court will set a further hearing and related briefing schedule (which briefing shall

2   include declarations) to determine the merits of the outstanding Cure Claim Objection, in which

3   event, any unpaid amount of the Cure Claim (if any) will be due and payable on or before the

4   fourteenth (14th) calendar day after the entry of a Final Order fixing the amount of the Cure Claim

5   and then only in the amount fixed by such Final Order.

6          The Plan provides for the assumption of the following executory contracts, with the

7   following Cure Claim:

8            (a)     Effortless: $20,824

9            (b)     Infinity Enterprise Lending: $5,895

10           (c)     Trans Union LLC: $4,905

11        2.   <u>Rejection</u>.  Claims arising from the rejection of an Executory Contract or

12  Unexpired Lease are treated as general unsecured claims in Class 2, except to the extent the Court

13  orders otherwise.  A claim arising from the rejection under this Plan must be filed no later than 30

14  days after the date of the order confirming the Plan.  Effective as of the Effective Date, any

15  Unexpired Lease or Executory Contract not identified herein for assumption, shall be deemed

16  rejected.

17       **H.**     <u>**Amendment #1 to Crest Sublease**</u>

18         The Debtor is currently operating out of a premises located at 1134 S. Crest Dr., Los

19  Angeles, CA 90035.  The Debtor intends to remain in its current sublease (which term expires on

20  April 30, 2020), and has entered into an amendment to the sublease to further reduce the Debtor's

21  monthly rent, effective as of December 1, 2019.  As set forth in the Amendment #1 to the Crest

22  Sublease (*see* <u>Exhibit M</u>), as of December 1, 2019, the Debtor's monthly rent shall be reduced

23  from the current rate of approximately $7,950/month, to only approximately $3,250/month.  The

24  difference in rent between the new sublease rental rate, and the rate under the lease, shall be paid

25  by an insider of the Debtor, David Redlener, individually.

26       **I.**     <u>**Miscellaneous and Other Plan Provisions**</u>

27        1.   <u>Findings of Fact</u>.  The Court must make certain findings of fact before

28  approving the aforementioned provisions as part of the Plan.  The Proponent will request that the

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1   Court make the appropriate findings at the confirmation hearing, based upon evidence submitted

2   in support of the confirmation motion.

3          2.    The Post-Confirmation Debtor and Corporate Governance.  The Debtor, as

4   the Post-Confirmation Debtor, shall continue to exist after the Effective Date of the Plan.  Subject

5   to the terms and conditions of the Plan, the Post-Confirmation Debtor shall be the sole and

6   exclusive representative of the Estate, shall have all of the powers and rights of a corporation

7   under the laws of the State of California, and, except as set forth in the Plan expressly to the

8   contrary, shall continue to have all corporate powers and rights accorded to it under its operating

9   agreement, by-laws, and other corporate governance agreements, as such corporate governance

10  agreements may be amended by or pursuant to the Plan.

11         The Post-Confirmation Debtor, and/or the Disbursing Agent, as applicable, shall take such

12  action as is necessary under the laws of the State of California, federal law, and other applicable law

13  to effect the terms and provisions of the Plan and any related documents.

14         The current equity interest holders will own all of the equity interests in the Post-

15  Confirmation Debtor in the same proportion as existed prior to the Effective Date, only through

16  conclusion of liquidation of the Debtor under this Plan.

17         On the Effective Date, all actions contemplated by the Plan will be deemed authorized and

18  approved in all respects, and the Post-Confirmation Debtor will be authorized and directed to

19  implement the provisions of the Plan, and any other agreements, documents, and instruments

20  contemplated by the Plan (including, without limitation, any appropriate amendments to the Debtor's

21  corporate governance documents), in the name of and on behalf of the Post-Confirmation Debtor.

22         All corporate governance documents for the Post-Confirmation Debtor, including any

23  charters, bylaws, operating agreements, or other organization or formation documents, as applicable,

24  shall be consistent with section 1123(a)(6) of the Bankruptcy Code.

25         3.    Unclaimed/Undeliverable Distributions; Other Provisions Governing

26  Distributions.

27     (a)    General Distribution Provisions; No Interest

28         Initial Distributions to holders of Allowed Claims will be made on the anticipated

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1   distribution dates set forth in <u>Exhibit E</u>, or as soon thereafter as is reasonably practicable.  Any

2   Distribution required to be made upon a Disputed Claim becoming an Allowed Claim and no

3   longer being a disputed claim will be deemed timely if made as soon as practicable thereafter and,

4   in any event, within fourteen (14) calendar days thereafter.

5        Unless otherwise specifically provided for in the Plan or in the Confirmation Order,

6   interest shall not accrue on Claims, and no holder of a Claim shall be entitled to interest accruing

7   on or after the Petition Date or the Confirmation Date.  Interest shall not accrue or be paid upon

8   any Disputed Claim in respect of the period from the Petition Date to the date a Final Distribution

9   is made thereon if and after such Disputed Claim becomes an Allowed Claim.

10       If a Claim is deemed to be oversecured, then interest, attorneys' fees, and costs may be

11  collected on the Claim from the Petition Date to the date on which a Distribution is made, subject

12  to an order of the Bankruptcy Court.  Cash payments made pursuant to this Plan shall be in Cash,

13  in United States dollars, by the means agreed to by the payor and the payee, including by check

14  drawn on a domestic bank or by wire transfer from a domestic bank, or, in the absence of an

15  agreement, such commercially reasonable manner as the Post-Confirmation Debtor shall

16  determine in its sole discretion.  Any Distribution due on a day other than a Business Day shall be

17  made, without interest, on the next Business Day.

18       Under the Plan, no payments of fractions of cents will be made.  When any payment of a

19  fraction of a cent is contemplated, the actual payments shall reflect a rounding of such fraction to

20  the nearest whole cent (.5 cent distributions shall be rounded down).  Any federal, state or local

21  withholding taxes or other amounts required to be withheld under applicable law shall be deducted

22  from Distributions under the Plan.  All Entities holding claims shall be required to provide any

23  information necessary to effect the withholding of such taxes.

24       If a Cash payment otherwise provided for under the Plan on account of an Allowed Claim

25  would be $1.00 or less (whether in the aggregate or on any Distribution Date), the Post-

26  Confirmation Debtor shall not be obligated to make such Distribution on account of such Allowed

27  Claim.  In the event the Post-Confirmation Debtor elects not to make such a Distribution, the

28  holder of such Claim shall have no recourse against the Debtor, the Estate, or the Post-

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    Confirmation Debtor, and its right to receive such Distributions shall be extinguished.

2        (b)    Unclaimed Property

3        Payments or other Distributions made under the Plan that are unclaimed or undeliverable

4    for six (6) months after the attempted Distribution will revest in the Post-Confirmation Debtor free

5    of restrictions.  Any entitlement to distribution will be barred. If a check issued by the Post-

6    Confirmation Debtor in respect of an Allowed Claim is not negotiated within sixty (60) calendar

7    days after the date of issuance, it shall be null and void.  A payee may request the Post-

8    Confirmation Debtor to reissue a check prior to the expiration of the 6-month period set forth

9    above.

10        The Post-Confirmation Debtor shall have no obligation to locate or attempt to locate any

11    holder of a Claim (a) whose Distribution has been returned as undeliverable without a proper

12    forwarding address, and (b) whose distribution was not mailed or delivered because of the absence

13    of a proper address to which to mail or deliver the same.

14        (c)    Disputed Claims and Disputed Claims Reserve

15        If a dispute arises as to the identity of a holder of an Allowed Claim or who is to receive

16    any Distribution, the Post-Confirmation Debtor may, in lieu of making such Distribution to such

17    Entity, make such distribution into a disputed claims reserve until the disposition thereof shall be

18    determined by Court order that is a Final Order or by written agreement among the interested

19    parties to such dispute.  The amounts reserved with respect to such disputed items shall be

20    distributed as provided in the Plan after the Allowed amounts thereof are determined by Final

21    Order or otherwise resolved.  To the extent a Disputed Claim is disallowed, the funds that had

22    been reserved for such claims will be distributed to the Post-Confirmation Debtor.

23        Any Distributions on a Disputed Administrative Expense Claim or Disputed Claim that has

24    become Allowed by Final Order as otherwise provided in the Plan will be distributable as such

25    amounts would have been distributable had the same been Allowed as of the Effective Date.

26    Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the

27    Petition Date to the date a Final Distribution is made thereon if and after such Disputed Claim

28    becomes an Allowed Claim.

1        (d)    <u>Grace Period</u>

2        Notwithstanding any provisions to the contrary contained in the Plan, in accordance with

3 the provisions herein, in the event that the Post-Confirmation Debtor should fail to timely pay any

4 of the payments required by the Plan, the Post-Confirmation Debtor will have a grace period of:

5 (a) fifteen (15) calendar days after the receipt by the Post-Confirmation Debtor of notice of such

6 default (the "<u>Default Notice</u>"), or (b) such other period of time fixed by the Bankruptcy Court for

7 curing such default.  Notwithstanding any provision to the contrary contained in the Plan, in the

8 event that the Post-Confirmation Debtor should fail to comply timely with any obligations

9 required by the Plan, other than payment obligations, the Post-Confirmation Debtor will have a

10 grace period of: (a) thirty (30) calendar days after the receipt by the Post-Confirmation Debtor of

11 the Default Notice associated therewith; or (b) such other period of time fixed by the Bankruptcy

12 Court for curing such default.  In the event that the Post-Confirmation Debtor  should cure any

13 default within the grace period provided herein, the creditor that had asserted such default must

14 immediately provide to the Post-Confirmation Debtor a written rescission of its Default Notice.

15        In the event that the Post-Confirmation Debtor should fail to cure any such default within

16 the grace period provided herein, in order to pursue any remedy against the Post-Confirmation

17 Debtor or the Estate, the creditor asserting such default must file with the Bankruptcy Court a

18 declaration under penalty of perjury, setting forth with specificity the nature of such default and

19 must proceed according to law to exercise its remedies against the Post-Confirmation Debtor or

20 the Estate, including the remedies specified herein.  The Post-Confirmation Debtor will have the

21 right to dispute the existence of such default and, in connection therewith, may object to the entry

22 of such order by the Bankruptcy Court.  The Bankruptcy Court will resolve any dispute regarding

23 the existence of such default.

24        4.    <u>Additional Plan and DS Provisions</u>.  *See* <u>Exhibit D</u>.

25 **XVII.  BANKRUPTCY PROCEEDINGS**

26        **J.**    **Filing of Petition, Schedules, And Statement of Financial Affairs**

27        On December 17, 2018, the Debtor filed its voluntary petition for relief under title 11 of the

28 United States Code.

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  On December 28, 2018, the Debtor filed its original set of bankruptcy schedules and

2  statement of financial affairs [Dkt. No. 46].  On March 6, 2019, the Debtor filed its first amended set

3  of bankruptcy schedules, particularly amended Schedule E/F [Dkt. No. 102].

4  **K.  "First Day" Motions And Related Orders**

5  On December 17, 2018, concurrently with the filing of its bankruptcy petition, the Debtor

6  filed four (4) "first day" motions.  Those motions included: (1) Motion for Interim and Final Orders

7  Authorizing Use of Cash Collateral (the "Cash Collateral Motion"); (2) Motion for Order

8  Authorizing Payment and/or Honoring of Prepetition Employee Compensation Benefits,

9  Reimbursements, Withholding Taxes, Accrued Vacation, and Related Employee Claims (the

10  "Employee Claims Motion"); (3) Motion for Order Deeming Utility Companies Adequately Assured

11  of Future Performance, Establishing Procedures for Requests for Additional Assurance, Restraining

12  Utility Companies from Discontinuing, Altering, or Refusing Service, and Providing for Related

13  Relief (the "Utilities Motion"); and (4) Motion for Order Authorizing Debtor to Maintain Bank

14  Accounts, Cash Management System, and Use of Existing Business Forms (the "Cash Management

15  Motion") (collectively, the "First Day Motions").

16  The Court granted each of the First Day Motions.  Orders on those motions were entered as

17  follows: (1) on December 27, 2018, the Court entered its interim order granting the Cash Collateral

18  Motion; (2) on December 26, 2018, the Court entered its final order granting the Employee Claims

19  Motion; (3) on December 26, 2018, the Court entered its interim order granting the Utilities Motion;

20  and (4) on December 26, 2018, the Court entered its interim order granting the Cash Management

21  Motion.

22  On January 17, 2019, following further hearings on the Utilities Motion and Cash

23  Management Motion, the Court entered final orders on those motions.  In addition, on January 17,

24  2019, the Court entered a second interim order on the Cash Collateral Motion.  On January 29, 2019

25  and on March 1, 2019, the Court entered its third interim order on the Cash Collateral Motion and

26  fourth interim order on the Cash Collateral Motion, respectively.

27  **L.  Employment of Professionals**

28  On December 26, 2018, the Debtor filed its application to employ ASI Advisors as the

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1   Debtor's financial advisor and consultant [Dkt. No. 37] (the "ASI Application").  On February 7,

2   2019, the Court entered its order approving the ASI Application [Dkt. No. 90].

3        On January 2, 2019, the Debtor filed its application to employ SulmeyerKupetz as its

4   bankruptcy counsel in this case [Dkt. No. 52] (the "Sulmeyer Application").  On February 7,

5   the Court entered its order approving the Sulmeyer Application [Dkt. No. 91].

6        **M.    DIP Financing Facility**

7        On March 14, 2019, after extensive, arms' length negotiations, the Debtor finalized the terms

8   and conditions for the DIP Facility and filed the DIP Financing Motion [Dkt. No. 104].  As set forth

9   in more detail in the DIP Loan Agreement, under the DIP Facility, the Debtor and P&G borrowed

10  the principal amount of $6,575,000, plus interest, in exchange for which the DIP Lender received a

11  first priority lien on the Watermark Property and the Debtor assets (with certain exceptions).

12       On March 18, 2019, the Court entered the Interim DIP Financing Order [Dkt. No. 115],

13  setting a final hearing on the DIP Financing Motion for April 3, 2019.

14       On March 26, 2019, the DIP Facility closed.

15       On March 29, 2019, with no party opposing entry of a final order on the motion and, in turn,

16  the Court waiving appearances at the April 3, 2019, hearing, the Court entered its final order

17  granting the DIP Financing Motion [Dkt. No. 123].

18       **N.    First Motion to Extend Plan Exclusivity Periods**

19       On April 12, 2019, the Debtor filed its motion for an order extending (1) the plan filing

20  exclusivity period from April 16, 2019, to and including June 17, 2019, and the plan acceptance

21  exclusivity period from June 17, 2019, to and including August 16, 2019 [Dkt. No. 126] (the "Plan

22  Exclusivity Motion").  On May 2, 2019, the Court entered its order granting the Plan Exclusivity

23  Motion [Dkt. No. 131].

24       **O.    Claim Objections**

25       Pursuant to the Court's Order Following Chapter 11 Status Conference [Dkt. No. 89], the

26  Court fixed May 15, 2019 as the deadline for the Debtor to file any objection to claims.

27       Pursuant to the Court's Order Following Chapter 11 Status Conference [Dkt. No. 141], with

28  respect to a claim arising from the rejection of an executory contract or unexpired lease ("Rejection

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  Claim"), the Court fixed a deadline of 30 days from the filing of any such Rejection Claim for the

2  Debtor to file an objection to the Rejection Claim.

3       **P.**      **Motion to Approve Sublease**

4       On May 9, 2019, the Debtor filed its motion for an order approving a new sublease of real

5  property for the Debtor's business operations [Dkt. No. 134] (the "Sublease Motion").  On May 29,

6  2019, the Court entered its order granting the Sublease Motion [Dkt. No. 145].

7       **H.**      **Second Motion to Extend Plan Exclusivity Periods**

8       On June 14, 2019, the Debtor filed its motion for an order further extending (1) the plan

9  filing exclusivity period from June 17, 2019, to and including July 31, 2019, and the plan

10  acceptance exclusivity period from August 16, 2019, to and including September 30, 2019 [Dkt.

11  No. 148] (the "Second Plan Exclusivity Motion").  On July 3, 2019, the Court entered its order

12  granting the Second Plan Exclusivity Motion [Dkt. No. 157].

13       **I.**      **Motion to Reject Loan Servicing Agreement with First Associates**

14       On June 28, 2019, the Debtor filed its motion for an order authorizing the Debtor's rejection

15  of its "Loan Servicing Agreement" with First Associates Loan Servicing, LLC [Dkt. No. 151] (the

16  "First Associates Motion").  On July 18, 2019, the Court entered its order granting the First

17  Associates Motion [Dkt. No. 171].

18       **J.**      **Motion for Relief from the Automatic Stay**

19       On July 3, 2019, Preferred Bank filed its motion for relief from the automatic stay, seeking to

20  apply the Debtor's pledged time certificate of deposit toward the Debtor's reimbursement obligations

21  arising from a loan asserted to be secured by that certificate of deposit [Dkt. No. 158] (the "RFS

22  Motion").  On July 29, 2019, the Court entered its order granting the RFS Motion [Dkt. No. 175].

23  **XVIII. TAX CONSEQUENCES OF PLAN**

24       The Implementation of the Plan may have federal, state, and local tax consequences to the

25  Debtor and the Debtor's creditors.  No tax opinion has been sought or will be obtained with respect

26  to any tax consequences of the Plan.

27       The discussion below summarizes only certain of the federal income tax consequences

28  associated with the Plan's implementation.  This discussion does not attempt to comment on all

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

aspects of the federal income tax consequences associated with the Plan, nor does it attempt to consider various facts or limitations applicable to any particular creditor which may modify or alter the consequences described herein.  A creditor may find that the tax consequences of the Plan to such creditor differ materially from the tax consequences discussed below because of such creditor's particular facts and circumstances.  This discussion does not address state, local, or foreign tax consequences or the consequences of any federal tax other than the federal income tax.

The following discussion is based upon the provisions of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), the regulations promulgated thereunder, existing judicial decisions, and administrative rulings.  In light of the rapidly-changing nature of tax law, no assurance can be given that legislative, judicial, or administrative changes will not be forthcoming that would affect the accuracy of the discussion below.  Any such changes could be material and could be retroactive with respect to the transactions entered into or completed prior to the enactment or promulgation thereof.  The tax consequences of certain aspects of the Plan are uncertain due to the lack of applicable legal authority and may be subject to judicial or administrative interpretations that differ from the discussion below.

To this point, on December 22, 2017, President Donald J. Trump signed into law H.R. 1, as passed by the U.S. Congress on December 20, 2017 (the "Tax Legislation").  The Tax Legislation may have a significant impact on the taxation of the Debtor, the Post-Confirmation Debtor, and holders of Claims.  The Tax Legislation includes changes in tax rates, limits on the deductibility of interest, the elimination of the alternative minimum tax, limits on the deductibility and carryback of net operating losses, other increases in the income base and broad-based corporate tax reform.  Due to the lack of definitive judicial and administrative authority with respect to the Tax Legislation, substantial uncertainty may exist with respect to the application of certain aspects of the Tax Legislation.

**CREDITORS AND EQUITY INTEREST OR EQUITY SECURITY HOLDERS ARE ADVISED TO CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM AND TO THE DEBTOR OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING**

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**FEDERAL, STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES.  NOTHING CONTAINED IN THIS DS WAS INTENDED OR WRITTEN TO BE USED, CAN BE USED BY ANY TAXPAYER OR MAY BE RELIED UPON OR USED BY ANY TAXPAYER, FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THE TAXPAYER UNDER THE INTERNAL REVENUE CODE OR THE TAX LEGISLATION. ANY WRITTEN STATEMENT CONTAINED IN THIS DS RELATING TO ANY FEDERAL TAX TRANSACTION OR MATTER MAY NOT BE USED BY ANY PERSON TO SUPPORT THE PROMOTION OR MARKETING OF OR TO RECOMMEND ANY FEDERAL TAX TRANSACTION(S) OR MATTER(S).**

**A.    To the Debtor:**  Tax consequences to the Debtor are the following - the Debtor is a limited liability company and considered a pass-through entity that does not pay taxes.  Therefore, the Debtor anticipates that any tax consequences relating to the Plan, including any tax gains or losses, will pass through to the Debtor's members.

**B.    To Claimants:**  Claimants should consult their advisors regarding potential tax effects of the Plan; nevertheless, the Debtor believes tax consequences to claimants are the following:  The tax consequences of the Plan's implementation to a creditor may depend on many factors, including the type of consideration received by the creditor in exchange for its Claim, whether the creditor reports income on the cash or accrual method, whether the creditor receives consideration in more than one tax year of the creditor, and whether all the consideration received by the creditor is deemed to be received by that creditor in an integrated transaction.  Creditors are advised to seek their own tax counsel to properly assess the tax consequences in their particular situation.

1.    Claims Satisfied with Payments

(a)    Gain/Loss or Exchange

As a general rule, a creditor whose existing Claims are satisfied with payments under the Plan will recognize gain or loss on the actual or constructive exchange of such creditor's existing creditor Claims (other than Claims for accrued interest) for the consideration received equal to the difference between (i) the "amount realized" in respect of such Claims, and (ii) the creditor's tax

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    basis in such Claims.  The "amount realized" will be equal to the sum of the Cash and (i) as to a

2    cash-basis taxpayer, the fair market value of all other consideration received, and (ii) as to an

3    accrual-basis taxpayer, the fair market value of the other consideration received, less any amounts

4    allocable to interest, unstated interest or original issue discount.

5         The general rule governing gain/loss and exchanges is qualified, with the actual gain/loss

6    realized affected by, among other things, the application of tax free treatment in certain situations,

7    including, without limitation, whether the exchange would otherwise qualify as a reorganization, or

8    as the exchange of a "security" under Internal Revenue Code Section 354.  Again, creditors are

9    advised to seek their own tax counsel to properly assess the tax consequences in their particular

10   situation.

11        Pursuant to Internal Revenue Code Section 1223, the aggregate tax basis in the items

12   received by a creditor will equal the amount realized in respect of such items (other than amounts

13   allocable to any accrued interest).  The holding period for items received in the exchange will begin

14   on the day following the exchange.

15        (b)    Determination of Character of Gain

16        Under the general rule governing exchanges under the Internal Revenue Code, in the case of

17   a creditor whose existing Claims constitute capital assets in such creditor's hands, the gain required

18   to be recognized will be classified as a capital gain, except to the extent of interest (including

19   accrued market discount, if any), with any gain recognized thereon generally treated as ordinary

20   income to the extent of accrued market discount.  In this regard, it should be noted that Internal

21   Revenue Code section 582(c) provides that the sale or exchange of a bond, debenture, note or

22   certificate, or other evidence of indebtedness by a bank or certain other financial institutions shall

23   not be considered the sale or exchange of a capital asset.  Accordingly, in this context, any gain

24   recognized by such creditors as a result of the Plan's implementation would presumably be ordinary

25   income, notwithstanding the nature of their Claims.  As a general rule, any capital gain recognized

26   by a creditor will be long-term capital gain with respect to those Claims for which the creditor's

27   holding period is more than one year, and short-term capital gain with respect to such Claims for

28   which the creditor's holding period is one year or less.  Again, the actual characterization of

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

gain/loss in this particular instance pursuant to the general rules governing exchanges is qualified by, among other things, the qualifications noted above with respect to realization of gain/loss and exchanges.  Creditors are advised to seek their own tax counsel to properly assess the tax consequences in their particular situation.

### 2.    Receipt of Interest

Income attributable to accrued but unpaid interest will be treated as ordinary income, regardless of whether the creditor's existing Claims are capital assets in its hands.  A creditor who, under its accounting method, was not previously required to include in income accrued but unpaid interest attributable to existing claims, and who exchanges its interest Claim for Cash or other property pursuant to the Plan, will be treated as receiving ordinary interest income to the extent of any consideration so received allocable to such interest, regardless of whether that creditor realizes an overall gain or loss as a result of the exchange of its existing Claims.  A creditor who had previously included in income accrued but unpaid interest attributable to its existing claims will recognize a loss to the extent such accrued but unpaid interest is not satisfied in full.  For purposes of the above discussion, "accrued" interest means interest which was accrued while the underlying Claim was held by the creditor.  The extent to which consideration distributable under the Plan is allocable to such interest is uncertain.

### 3.    Other Tax Considerations

If a creditor has a lower tax basis in one of the Debtor's obligations than its face amount, the difference may constitute market discount under Internal Revenue Code section 1276.  (Certain obligations are excluded from the operation of this rule, such as obligations with a fixed maturity date not exceeding one year from the date of issue, installment obligations to which Internal Revenue Code section 453B applies and, in all likelihood, demand instruments.)

Holders in whose hands the Debtor's obligations are market discount bonds will be required to treat as ordinary income any gain recognized upon the exchange of such obligations to the extent of the market discount accrued during the holder's period of ownership, unless the holder has elected to include such market discount in income as it accrued.

**The above text is only the most basic statement of the anticipated tax consequences of**

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  **the Plan and does not constitute legal or tax advice.  Neither the Debtor nor its counsel are**

2  **experts in tax matters.  Neither the Debtor nor the Debtor's professionals have in any way**

3  **attempted to provide tax advice to any of the Debtor's creditors or equity security holders.**

4  **Interested parties concerned with how the Plan may affect their tax liability should consult**

5  **their own professional(s).**

6  **XIX.   EFFECT OF CONFIRMATION OF PLAN**

7       **A.   <u>General Comments</u>**

8       The provisions of a confirmed Plan bind the Debtor, any entity acquiring property under the

9  Plan, and any creditor, interest holder, or general partner of the Debtor, even those who do not vote

10  to accept the Plan.

11       The confirmation of the Plan vests all property of the estate in the Debtor.  Except as

12  otherwise provided in the Plan, on the Effective Date, all property and rights of the Estate of the

13  Debtor will revest in, or be transferred to, the Post-Confirmation Debtor, free and clear of all claims,

14  liens, and rights of creditors and interests or interest holders.  Subject to the Plan, such property and

15  rights to be revested in, or transferred to, the Post-Confirmation Debtor include, without limitation,

16  all alter ego and derivative claims existing as of the Effective Date, and the Reserved Claims.

17       As of the Confirmation Date, the Post-Confirmation Debtor may operate its business without

18  the need for supervision of, or any authorization from, the Bankruptcy Court or the United States

19  Trustee, and free of any restriction or requirements of the Bankruptcy Code or Bankruptcy Rules.

20  As of the Effective Date, all property of the Post-Confirmation Debtor's estate will be free and clear

21  of all claims, liens, and other rights of creditors and interests of interest holders, except as otherwise

22  expressly provided in the Plan.

23       The automatic stay is lifted upon confirmation as to property of the estate.  However, the stay

24  continues to prohibit collection or enforcement of pre-petition claims against the Debtor or the

25  Debtor's property until the date the Debtor receives a discharge, if any.  If the Debtor does not seek a

26  discharge, the discharge is deemed denied, and the stay as to the Debtor and the Debtor's property

27  terminates upon entry of the order confirming the Plan.

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

CKW 2686315v2

**B.**     **Discharge of Liability for Payment of Debts; Status of Liens; Equity Security Holders**

The Debtor will not receive a discharge.  11 U.S.C. 1141(d) (West 2004 & Supp. 2006).

The confirmation of the Plan does not discharge the Debtor from any debt of a kind specified in 11 U.S.C. § 523(a)(2)(A)-(B) (West 2004 & Supp. 2006) that is owed to a domestic governmental unit, or owed to a person as the result of an action filed under subchapter III of chapter 37 of title 31 or any similar State statute, or for tax or customs duty with respect to which the debtor made a fraudulent tax return or willfully attempted in any manner to evade or to defeat such tax or such customs duty.

**C.**     **Modification of the Plan**

The Proponent may modify the Plan pursuant to 11 U.S.C. § 1127 (West 2004 & Supp. 2006).  In addition, the Post-Confirmation Debtor may apply to the Bankruptcy Court to remedy defects or omissions in the Plan or to reconcile inconsistencies in the Plan.

**D.**     **Post-Confirmation Causes of Action**

To the best knowledge of the Proponent, the estate has the following causes of action:

The Debtor intends to pursue litigation to recovery approximately $78,000 in pre-petition fees paid to First Associates post-petition.  The Debtor anticipates employing special counsel on a contingency basis to pursue such litigation.

The Post-Confirmation Debtor is designated as representative of the estate under 11 U.S.C. § 1123(b)(3) (West 2004) and shall have the right to assert any or all of the above causes of action post-confirmation in accordance with applicable law.

**E.**     **Final Decree**

Once the Plan has been substantially consummated, a final decree may be entered upon motion of the Proponent.  The Debtor expects to substantially consummate the Plan in January 2020, with the Initial Distribution as set forth herein.  The effect of the final decree is to close the bankruptcy case.  After such closure, a party seeking any type of relief relating to a Plan provision can seek such relief in a state court of general jurisdiction.

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

F.    **Other Administrative Provisions**

1.    Retention of Bankruptcy Court Jurisdiction.  Under Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court, or other court of competent jurisdiction, will retain exclusive jurisdiction over all matters arising out of, and related to, the Bankruptcy Case and the Plan to the fullest extent permitted by law.  Such retention includes, among other things, jurisdiction to (a) resolve any and all disputes regarding the operation and interpretation of the Plan and the Confirmation Order, (b) determine the allowability, classification, or priority of claims and interests upon objection by the Debtor, the Post-Confirmation Debtor, and/or the Disbursing Agent, or by other parties in interest with standing to bring such objection or proceeding, and to consider any objection to claim or interest whether such objection is filed prior or subsequent to the Effective Date, (c) determine the extent, validity, and priority of any lien asserted against property of the Debtor or property of the Estate, (d) construe and take any action to enforce the Plan, the Confirmation Order, and any other order of the Bankruptcy Court, (e) issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan and the Confirmation Order, and all matters referred to in the Plan and the Confirmation Order, (f) determine matters that may be pending before the Bankruptcy Court in the Chapter 11 case on or before the Effective Date with respect to any person or entity, (g) determine, to the extent necessary, any and all applications for allowance of compensation of fees and reimbursement of expenses of professionals for the period on or before the Effective Date, (h) determine any request for payment of an Administrative Expense Claim (including, but not limited to, any Professional Claims and Cure Claims), (i) determine motions for the rejection, assumption, or assumption and assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom, (j) determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of the Chapter 11 case whether commenced before, on, or after the Effective Date, including, but not limited to, avoidance power actions, (k) modify the Plan under Section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1   reconcile any inconsistency in the Plan so as to carry out its intent and purpose, (l) issue

2   injunctions, or to take such other actions or make such other orders as may be necessary or

3   appropriate to restrain interference with the Plan and the Confirmation Order, or the execution or

4   implementation by any person or entity of the Plan or the Confirmation Order, (m) issue such

5   orders in aid of consummation of the Plan or the Confirmation Order, notwithstanding any

6   otherwise applicable non-bankruptcy law, with respect to any person or entity, to the fullest extent

7   authorized by the Bankruptcy Code or Bankruptcy Rules, and (n) enter a final decree closing the

8   Chapter 11 case.

9           2.      Implementation of the Plan.  The Debtor intends to request that the

10  Confirmation Order include (a) a finding by the Bankruptcy Court that Bankruptcy Rule 3020(e)

11  shall not apply to the Confirmation Order, (b) the Bankruptcy Court's authorization for the Post-

12  Confirmation Debtor to implement the Plan immediately after entry of the Confirmation Order,

13  and (c) the Bankruptcy Court's authorization for the Post-Confirmation Debtor to enter into the

14  Cloverdale Sublease as of October 2019.

15          3.      Other Courts of Competent Jurisdiction.  If the Bankruptcy Court abstains

16  from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any

17  matter arising out of the Plan, such abstention, refusal or failure of exercise shall have not effect

18  upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having

19  competent jurisdiction with respect to such matter.

20          4.      Setoffs, Recoupment, and Defenses.  Nothing contained herein shall

21  constitute a waiver or release by the Debtor, the Post-Confirmation Debtor or the Estate of any

22  rights of setoff or recoupment, or of any defense, any of them may have with respect to any Claim

23  or Interest (including, without limitation, rights under Section 502(d) of the Bankruptcy Code).

24  Pursuant to Section 553 of the Bankruptcy Code or applicable non-bankruptcy law, the Post-

25  Confirmation Debtor, on behalf of the Estate, may setoff against any Allowed Claim and

26  distribution to be made pursuant to the Plan on account of such Allowed Claim before any

27  distribution is made on account of such Allowed Claim, any pre-Petition Date or post-Petition

28  Date account stated, claim, right or cause of action which the Post-Confirmation Debtor or the

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1   Estate may possess against the holder of such Allowed Claim.  Neither the failure to effect such

2   setoff nor the allowance of any claim will constitute a waiver or release by the Post-Confirmation

3   Debtor or the Estate of any such account, claim, right, and cause of action that the Post-

4   Confirmation Debtor or the Estate may possess against the holder of such Allowed Claim.  To the

5   extent that the Post-Confirmation Debtor fails to effect a valid setoff with a creditor and seeks to

6   collect a claim from such creditor after a distribution to such creditor pursuant to the Plan, the

7   Post-Confirmation Debtor will be entitled to full recovery on its claim against such creditor,

8   notwithstanding any payment on the creditor's Allowed Claim pursuant to the Plan.

9          5.    Withdrawal or Revocation of the Plan.  The Debtor reserves the right to

10  revoke or withdraw the Plan prior to the Confirmation Date.  If the Plan is revoked or withdrawn,

11  or if the Confirmation Date does not occur, the Plan shall have no force and effect and in such

12  event nothing contained herein shall be deemed to constitute a waiver or release of any claims by

13  or against the Debtor, the Estate or any other entity, or to prejudice in any other manner the rights

14  of the Debtor, the Estate, or any other entity, in further proceedings involving the Debtor and the

15  Estate, and specifically shall not modify or affect the rights of any party under any prior orders of

16  the Bankruptcy Court.

17         6.    Failure of Effective Date.  In the event the Effective Date does not occur,

18  nothing in this Plan shall be binding on the Debtor, the Estate, or any other entity, or otherwise be

19  of any force and effect.

20         7.    Successors and Assigns.  The rights, benefits and obligations of any entity

21  named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs,

22  executors, administrators, successors and/or assigns of such entity.

23         8.    Governing Law.  Except to the extent that federal law (including the

24  Bankruptcy Code or Bankruptcy Rules) is applicable, the rights and obligations arising under the

25  Plan shall be governed by and construed and enforced in accordance with the laws of the state of

26  California without giving effect to the principles of conflicts of laws thereof.

27         9.    Notices.  All notices, requests or demands for payments by parties in

28  interest to the Post-Confirmation Debtor and/or the Disbursing Agent, as applicable, under or in

connection with this Plan shall be in writing and served either by (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

The Post-Confirmation Debtor/ Disbursing Agent:

David Redlener
1134 S. Crest Dr.
Los Angeles, CA 90035
Tel: 310-531-3400
Fax: 614-462-8237
E-mail: david@powerlend.com

Attorneys for Post-Confirmation Debtor/ Disbursing Agent:

David S. Kupetz, Esq.
Asa S. Hami, Esq.
Claire K. Wu, Esq.
**Sulmeyer**Kupetz, A Professional Corporation
333 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Tel: (213) 626-2311
Fax: (213) 629-4520
E-mail: ahami@sulmeyerlaw.com; ckwu@sulmeyerlaw.com

Any of the above may, from time to time, change its address for future notices and other communications hereunder by filing a notice of the change of address with the Bankruptcy Court or by giving notice of the change of address in writing to creditors and interest holders.

10.    Severability.  Except as to terms that would frustrate the overall purposes of the Plan, should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

11.    Interpretation, Rules of Construction and Computation of Time.

(a)    The provisions of the Plan shall control over any descriptions thereof contained in the DS.

(b)    Any term used in the Plan that is not defined in the Plan or the Appendix of Defined Terms, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules, as applicable.  Without limiting

the foregoing, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply

to the Plan, unless superseded herein.  In the event of any inconsistency between the definition of a

capitalized term as defined in the Appendix of Definitions (<u>Exhibit A</u>) and as may be defined in the

Plan or DS, the definition in the Appendix of Definitions shall control.

(c)      Unless specified otherwise in a particular reference, all references in

the Plan and DS to Sections and Exhibits are references to Sections and Exhibits of or to the Plan

and DS.

(d)      Any reference in the Plan to a contract, document, instrument, release,

certificate, indenture or other agreement being in a particular form or on particular terms and

conditions means that such document shall be substantially in such form or substantially on such

terms and conditions.

(e)      Any reference in the Plan or DS to an existing document or Exhibit

means such document or Exhibit as it may have been amended, restated, modified or supplemented

as of the Effective Date without limitation to the provisions set forth in the Plan or DS.

(f)      Captions and headings to Sections and Exhibits in the Plan and DS are

inserted for convenience of reference only and shall neither constitute a part of the Plan or DS nor in

any way affect the interpretation of any provisions thereof.

(g)      In computing any period of time prescribed or allowed by the Plan or

DS, the provisions of Bankruptcy Rule 9006(a) shall apply.

(h)      All Exhibits and schedules to the Plan or DS are incorporated into the

Plan or DS, and shall be deemed to be included in the Plan or DS, regardless of when filed.

(i)      Where applicable, references to the singular shall include the plural,

and vice-versa, and pronouns stated in the masculine, feminine or neuter gender shall include the

masculine, the feminine and the neuter gender.

(j)      The words "herein" and "hereto" refer to the Plan or DS in its entirety

rather than to a particular portion of the Plan or DS.

12.      <u>No Admissions</u>.  Notwithstanding anything to the contrary, nothing

contained in the Plan or DS will be deemed to be an admission by the Debtor or Post-

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    Confirmation Debtor with respect to any matter set forth herein, including without limitation,

2    liability on any claim or the validity, priority, or the classification of a claim.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

## XX.    DECLARATION IN SUPPORT OF DISCLOSURE STATEMENT AND PLAN

I, David Redlener, declare under penalty of perjury under the laws of the United States of America that the following statements are true and correct based upon my personal knowledge.

1.    The name of the individuals who prepared this Disclosure Statement, Plan, and/or accompanying exhibits are the Debtor's bankruptcy counsel (David S. Kupetz, Asa S. Hami, and Claire K. Wu of SulmeyerKupetz) and the Debtor's financial advisors (Donald A. Stukes of ASI Advisors, LLC).  These professionals prepared the Disclosure Statement, Plan, and accompanying exhibits with my assistance and the assistance of the Debtor's other employees, who provided information, financial projection assumptions, and other data necessary, and which was used, for preparation and completion of the Disclosure Statement, Plan, and accompanying exhibits.

2.    The source of all financial data is the Debtor.

3.    All facts and representations in the Plan and Disclosure Statement are true to the best of my knowledge.

4.    No fact material to a claimant or equity security holder in voting to accept or reject the proposed Plan has been omitted.

5.    The name of the person who assisted preparing the cash flow projections and the other financial documents is Donald A. Stukes of ASI Advisors, LLC ("ASI"), together with me and other employees of the Debtor.  More particularly, Mr. Stukes was the professional at ASI who was primarily responsible for assisting me in the compilation of the financial projections, hypothetical liquidation analysis, and related assumptions, which was collectively compiled in coordination and consultation with the Debtor and its bankruptcy counsel.  Such projections were compiled based upon assumptions, data, information, and financial records prepared by the Debtor.  ASI is not auditing or verifying the source information provided by the Debtor.  The procedures ASI performed were substantially less in scope than an examination or audit, the objective of which is the expression of an opinion on financial information.  ASI's primary role in assisting in the compilation of the projections was to analyze the assumptions, data, and information provided by the Debtor and assist in compiling this information into a consolidated financial projection model.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

6.    The accounting method used to prepare the cash flow projections and the other financial documents are based upon generally accepted accounting principles and are consistent with the Debtor's historical financial information.

Signature: _____    Print Name: David Redlener_____

Title: CEO_____    Date: September 26, 2019_____

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**BALLOT FOR ACCEPTING OR REJECTING PLAN**

One Way Loans, LLC, d/b/a PowerLend (the "Debtor") filed a First Amended Plan of Liquidation (the "Plan") on September 27, 2019. By this ballot you will decide whether to accept or reject this Plan.

The Plan referred to in this ballot can be confirmed by the Court and thereby bind you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class and the holders of two-thirds in amount of equity security interests in each class voting on the Plan.

If the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if the Court finds that the Plan accords fair and equitable treatment to the class or classes rejecting it and otherwise satisfies the requirements of 11 U.S.C. § 1129(b) (West 2004 & Supp. 2006).

The undersigned, a creditor with an asserted allowed claim in the amount of $_____.

    [ ] **Accepts the Plan**            [ ] **Rejects the Plan**

Print or type name: _____

State which class you are a member of: _____

Signed:_____

If appropriate, by: _____ as _____

Address:_____

_____

Return this ballot on or before October ___, 2019 to Claire K. Wu, SulmeyerKupetz, A Professional Corporation, 333 S. Grand Avenue, Suite 3400, Los Angeles, California 90071; Facsimile: 213-629-4520; e-mail: ckwu@sulmeyerlaw.com.

# EXHIBIT A

## EXHIBIT A

## APPENDIX OF DEFINITIONS

As used in the "Disclosure Statement and Chapter 11 Plan of Liquidation for One Way Loans, LLC" to which this Appendix of Definitions is attached ("DS and Plan") or any exhibits to the DS and Plan, the following capitalized terms shall have the meanings specified below:

**1.      Administrative Expense Claim.**  Any right to payment constituting a cost or expense of administration of the Bankruptcy Case that is entitled to priority under Sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Estate, (b) any actual and necessary costs and expenses of operating the business of the Debtor during the pendency of the Bankruptcy Case, (c) any expenses or obligations incurred or assumed by the Debtor as a debtor in possession during the pendency of the Bankruptcy Case in connection with the conduct of its business or for the acquisition or lease of property or the rendition of services to the Debtor as a debtor in possession, (d) any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under Sections 330 or 503 of the Bankruptcy Code, to the extent incurred prior to the Effective Date, and (e) any fees or charges assessed against the Estate under Section 1930, chapter 123, title 28, United States Code.

**2.      Allowed.**  (a) With respect to a Claim, any Claim or portion thereof (i) proof of which has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules, a Final Order, or other applicable bankruptcy law as to which either (x) no objection to the allowance thereof has been filed within the period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, or (y) any objection to its allowance has been settled, withdrawn, waived through payment, or denied by a Final Order; or (ii) as to which no proof of claim has been filed but which has not been listed in the schedules as unliquidated, disputed, or contingent; or (iii) that is expressly allowed pursuant to the terms of this Plan or otherwise allowed by a Final Order; or (b) with respect to any claim arising from the recovery of property so recovered, denied or avoided, as the case may be, if, within thirty (30) calendar days after the judgment for the recovery of money or property, or after the judgment that denied or avoids any such interest, becomes a Final Order, the holder thereof has filed a proof of claim with the Court respecting such claim and has fully satisfied such judgment; or (c) with respect to an Administrative Expense Claim, any Administrative Expense Claim (i) that requires Bankruptcy Court approval as a precondition to payment, such amount as shall be allowed by a Final Order; or (ii) as to which a timely written request for payment has been made in accordance with any bar date on such requests set by the Bankruptcy Court (if such written request is required), and in each case as to which the Debtor, the Post-Confirmation Debtor, the Disbursing Agent, or any other party in interest (x) has not filed a timely objection or (y) has filed a timely objection and such objection has been settled, withdrawn, waived through payment, or has been denied by a Final Order.  Unless otherwise specified in the Plan, "Allowed Claim" shall not include interest, penalties, or other charges accruing on a claim from and after the Petition Date; provided, however, that an "Allowed Secured Claim" shall, to the extent allowable under Section 506(b) of the Bankruptcy Code through a Final Order and not otherwise precluded under the Plan, include interest and, if provided for by the agreement under which such Claim arose, reasonable fees, costs, or charges provided for under the agreement under

which such Claim arose.

**3.      Avoidance Actions.**  Individually and collectively, all avoidance or recovery actions of the Debtor, the debtor in possession, and the Estate under Sections 542, 544, 545, 546, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including, without limitation, fraudulent transfer or conveyance laws, whether or not such actions are pending on the Effective Date or are thereafter asserted or commenced by the Trustee, the Debtor, the Post-Confirmation Debtor, or the Disbursing Agent, as applicable, against any entity, and whether asserted or unasserted as of the Effective Date.

**4.      Ballot.**  Each of the ballot form or forms distributed to each holder of an impaired claim (entitled to vote) on which such holder is to indicate acceptance or rejection of the Plan.

**5.      Bankruptcy Case.**  The case pending in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code in which One Way Loans, LLC, a California limited liability company, is the debtor and debtor in possession.

**6.      Bankruptcy Code.**  The Bankruptcy Reform Act of 1978, as amended, and as codified in title 11 of the United States Code.

**7.      Bankruptcy Court.**  The United States Bankruptcy Court for the Central District of California, Los Angeles Division.

**8.      Bankruptcy Rules.**  The Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the  Bankruptcy Case or proceedings therein, and all local rules adopted by the Bankruptcy Court, as applicable to the Bankruptcy Case or proceedings therein, as the case may be.

**9.      Business Day.**  Any day other than a Saturday, Sunday or legal holiday set forth in Rule 9006(a) of the Bankruptcy Rules.

**10.      Cash.**  Legal tender of the United States of America.

**11.      Causes of Action.**  Any and all actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, cross-claims, avoidance actions, rights to recovery, rights to legal remedies, rights to equitable remedies, rights to payment, and demands whatsoever, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or indirectly or derivatively, in law, admiralty or equity or otherwise.

**12.      Claim.**  (a) Any right to payment from the Debtor or against any property of the Estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, known or unknown; or (b) any right to an equitable remedy for breach of performance if such

0069

breach gives rise to a right of payment from the Debtor or against any property of the Estate, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, known or unknown; or (c) any claim against the Estate of a kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

13.    **Claimant.**  The holder of a Claim.

14.    **Claims Bar Date.**  The March 15, 2019, deadline for filing proofs of claim, including, but not limited to, claims under 11 U.S.C. § 503(b)(9), with exceptions set forth in mandatory Court form F 3003-1.NOTICE.BARDATE.

15.    **Collateral.**  Any property or interest in property of the Estate that is subject to a valid and enforceable lien to secure the payment or performance of a claim, which lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

16.    **Confirmation Date.**  The date on which the Confirmation Order is entered on the docket maintained by the clerk of the Bankruptcy Court with respect to the Bankruptcy Case.

17.    **Confirmation Hearing.**  The hearing on confirmation of the Plan pursuant to Section 1128 of the Bankruptcy Code, as the same may be continued from time to time.

18.    **Confirmation Order.**  The order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

19.    **Court.**  The Bankruptcy Court.

20.    **Creditor.**  Any entity that holds a Claim against the Debtor that arose or is deemed to have arisen on or before the Petition Date.

21.    **Cure Claim.**  The claim to be paid to cure any defaults or other outstanding amounts under any unexpired lease or executory contract as required under 11 U.S.C. § 365(b) for the assumption of such unexpired lease or executory contract.

22.    **Debtor.**  One Way Loans, LLC, a California limited liability company, whether in its corporate capacity or its capacity as a debtor and debtor in possession under Chapter 11 of the Bankruptcy Code.

23.    **Debtor Equity Interests (or Equity Interests).**  The interests arising from the ownership of any Interest, membership interests, or shares of capital stock, whether preferred or common, of One Way Loans, LLC, a California limited liability company, authorized or issued prior to the Effective Date, or from rights or claims to acquire or sell any such One Way Loans, LLC, a California limited liability company, Interest, membership interests or capital stock, and any and all rights or claims arising with respect to the purchase, sale, or issuance of any such One Way Loans, LLC, a California limited liability company, Interest, membership interests or capital stock, or with respect to any non-dilution rights, options, warrants, stock appreciation rights, or similar rights or instruments, contractual or otherwise, granted with respect thereto.

24. **DIP Financing Orders.** Collectively: (a) the "Interim Order (1) Authorizing Debtor to Obtain Post-Petition Financing Pursuant to 11 U.S.C. § 364; (2) Granting Liens and Superpriority Administrative Expense Claim; (3) Modifying the Automatic Stay; (4) Scheduling a Final hearing; and (5) Granting Related Relief" [Dkt. No. 115], entered by the Court in the Bankruptcy Case on March 18 2019; and (b) the "Final Order on 'Emergency Motion of Debtor and Debtor in Possession for Entry of Interim and Final Orders: (1) Authorizing Debtor to Obtain Post-Petition Financing Pursuant to 11 U.S.C. § 364; (2) Granting Liens and Superpriority Administrative Expense Claim; (3) Modifying the Automatic Stay; (4) Scheduling a Final Hearing; and (5) Granting Related Relief" [Dkt. No. 123].

25. **Disallowed.** (a) When used with respect to a Claim, (i) a Claim, or any portion thereof, that is disallowed by a Final Order or which is withdrawn, in whole or in part, by the holder thereof, (ii) a Claim listed by the Debtor in its schedules at zero or as contingent, disputed, or unliquidated and as to which no proof of claim is timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules, a Final Order, other applicable bankruptcy law, or the Plan, or (iii) a Claim not listed on the schedules and as to which no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code, the Bankruptcy Rules, a Final Order, other applicable bankruptcy law, or the Plan; or (b) with respect to an Administrative Expense Claim that requires Bankruptcy Court approval as a precondition to payment, such amount as shall be disallowed by Final Order.

26. **Disbursing Agent.** The Post-Confirmation Debtor, or any other Person designated to serve as disbursing agent under the Plan.

27. **Disclosure Statement (or DS).** The written Disclosure Statement (including, without limitation, all exhibits and schedules thereto or reference therein) that relates to the Plan as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as it may be amended, modified, supplemented and restated from time to time.

28. **Disputed.** With respect to a Claim, any such claim proof of which has been filed with the Bankruptcy Court and (a) which is listed on the schedules at zero or as unliquidated, disputed or contingent, and which has not been resolved by written agreement of the parties or a Final Order, or (b) as to which the Debtor or any other party in interest has filed an objection in accordance with the Bankruptcy Code, the Bankruptcy Rules, and this Plan, which objection has not yet been settled, withdrawn, waived through payment, or denied by a Final Order. Prior to (a) the time an objection is filed and (b) expiration of the time within which an objection to such claim must be filed as established by this Plan or a Final Order, a Claim shall be considered a Disputed Claim to the extent that the amount of such Claim specified in a proof of claim exceeds the amount of such Claim scheduled by the Debtor as undisputed, non-contingent and liquidated.

29. **Disputed Claims Reserve.** The reserve, if any, established for Disputed Claims in accordance with the Plan.

30. **Distribution.** The cash or property to be paid or distributed under the Plan to holders of Allowed Claims or Allowed Interests on account of Allowed Claims or Allowed

Interests.

**31.    Distribution Date.**  The date on which Distributions are to be made by the Disbursing Agent pursuant to the Plan.

**32.    Effective Date.**  The first Business Day that the Confirmation Order becomes a Final Order, subject to any conditions precedent set forth in the Plan, or such other earlier date after entry of the Confirmation Order selected by the Debtor in its sole and absolute discretion.

**33.    Entity.**  An individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government or any subdivision thereon or any other entity.

**34.    Estate.**  The estate of the Debtor created by Section 541 of the Bankruptcy Code upon the commencement of the Bankruptcy Case.

**35.    Final Distribution.**  With respect to an Allowed Claim, a final Distribution that is made on account of such Allowed Claim.

**36.    Final Confirmation Order.**  A Confirmation Order that is a Final Order.

**37.    Final Order.**  An order or judgment of the Bankruptcy Court, or of any court of competent jurisdiction, which has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, petition for certiorari, or move for re-argument or rehearing has expired, and as to which no appeal, petition for certiorari, or other proceeding for re-argument or rehearing shall then be pending; (b) any right to appeal, petition for certiorari, re-argument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtor or Post-Confirmation Debtor (as the case may be); or (c) any appeal, petition for certiorari, re-argument or rehearing has been resolved by the highest court to which the order or judgment was appealed timely or from which certiorari, re-argument, or rehearing was sought.

**38.    General Unsecured Claim.**  A non-priority, unsecured Claim against the Debtor that is not a Secured Claim, an Administrative Expense Claim, a Priority Wage Claim, a Priority Tax Claim, a post-Confirmation Date Claim, or an Interest.

**39.    Governmental Unit.**  A governmental unit as such term is defined in Section 101(27) of the Bankruptcy Code.

**40.    Impaired.**  With respect to any Claim or Interest, shall have the meaning set forth in Section 1124 of the Bankruptcy Code.

**41.    Interest.**  Any legal, equitable, or contractual interest in the Debtor represented by, related to, or arising from membership interests or preferred or common stock in or of the Debtor (including any non-dilution right or any option, warrant or right to acquire, purchase, sell or subscribe any such interest) authorized and issued prior to the Confirmation Date and outstanding on the Confirmation Date.

**42.    Lien.**  Any security interest, charge against, encumbrance upon or other interest in

0072

property, the purpose of which is to secure repayment of a debt or performance of an obligation.

43.     **Penalty Claim.**  A Claim for any fine, penalty, forfeiture or damages which is not in compensation for actual pecuniary loss suffered by the holder of such Claim.

44.     **Person.**  A person as such term is defined in Section 101(41) of the Bankruptcy Code.

45.     **Petition Date.**  December 17, 2018, the date on which the Debtor filed its voluntary petition for relief commencing the Bankruptcy Case under Chapter 11 of the Bankruptcy Code.

46.     **Plan.**  The Debtor's Chapter 11 plan of liquidation (including the Plan Documents and exhibits hereto), as it may be amended, supplemented or otherwise modified from time to time thereafter, and all exhibits and schedules to the foregoing, as the same may be in effect at the time such reference becomes operative.

47.     **Plan Documents.**  Any agreements, documents, and/or instruments to be executed, delivered, filed, recorded, or issued on or as of the Effective Date as contemplated by, and in furtherance of, this Plan.

48.     **Plan Proponent (or Proponent).**  The Debtor, as the proponent of the Plan.

49.     **Post-Confirmation Debtor.**  The Debtor, in accordance with the terms and provisions of the Plan, on and after the Effective Date.  Wherever in the Plan "Post-Confirmation" precedes the name of the Debtor, it shall mean the Debtor on and after the Effective Date.

50.     **Preference Claims.**  Reserved Claims arising under section 547 of the Bankruptcy Code and other similar statutes and provisions under state law.

51.     **Priority Tax Claim.**  A Claim to the extent the Claim is entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

52.     **Priority Wage Claim.**  A Claim to the extent the Claim is entitled to priority in payment under Sections 507(a)(4) and (a)(5) of the Bankruptcy Code.

53.     **Professionals.**  Those entities employed pursuant to an order of the Bankruptcy Court under Section 327, 328, 330, or 1103 of the Bankruptcy Code.

54.     **Pro Rata.**  At any particular time, the proportion that the face amount of a Claim in a particular Class bears to the aggregate face amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class, unless the Plan provides otherwise.

55.     **Projection Period.**  The period of time over which the financial projections supporting the DS and Plan extend, as the same may be amended, supplemented, or modified.

56.     **Real Property Lease.**  The Debtor's lease of non-residential real property that

was unexpired (within the meaning under 11 U.S.C. § 365) as of the Petition Date.

57. **Regulatory Approvals.** Notifications, consents, and other authorizations made with or to be obtained from any regulatory authority that are necessary or required to operate the Debtor's business, as currently operated, after the Effective Date.

58. **Regulatory Authority.** Any governmental unit with jurisdiction over the Debtor's business (including the Bankruptcy Court).

59. **Rejected Lease.** Any Real Property Lease that has been rejected during the Bankruptcy Case.

60. **Reserved Claims.** All claims and causes of action (whether currently pursued or prosecuted, to be pursued or prosecuted in the future, or otherwise) not released pursuant to the Plan for prosecution or resolution, including all claims, torts, demands, actions or causes of action of any kind or nature whatsoever, whether known or unknown, that the Debtor, debtor in possession, or the Estate may have, except to the extent that such rights, claims, and causes of action are expressly released in the Plan or other orders of the Bankruptcy Court, including without limitation, (a) all rights pursuant to Sections 542, 544, 545, 551, 546, and 553 of the Bankruptcy Code, (b) all preference claims pursuant to Section 547 of the Bankruptcy Code, (c) all fraudulent transfer claims pursuant to Section 548 of the Bankruptcy Code, (d) all claims relating to post-petition transactions under Section 549 of the Bankruptcy Code, (e) all claims recoverable under Section 550 of the Bankruptcy Code, (f) all claims against any third party on account of an indebtedness or any other claim owed to or in favor of the Debtor or the Estate, (g) all defenses, counterclaims, third party claims, offset claims, rights of recoupment, causes of action for equitable or contractual subordination, indemnity claims and coverage claims arising out of or related to any claim against the Debtor, whether based on the Bankruptcy Code or any applicable law, (h) all claims related to taxes, and rights to file tax returns and amended returns and to seek tax determinations, including, without limitation, tax loss carryback claims, net operating loss claims, determinations of basis or depreciation, overpayment claims, offset and counterclaims, (i) all claims, causes of action and defenses against or with respect to financial institutions and any other person for the turnover of funds of, or due to, the Estate, (j) all rights, causes of action, defenses, claims, powers, privileges and licenses of the Estate and the Debtor, and (k) all causes of action, claims and defenses arising under the Plan and the Bankruptcy Code.

61. **Schedules.** The schedules of assets and liabilities and the statement of financial affairs filed by the Debtor with the Bankruptcy Court pursuant to Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as they may be, or have been, amended, supplemented or otherwise modified from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

62. **Secured Claim.** A Claim (other than an Administrative Expense Claim) that is secured by a lien on collateral to the extent of the value, as of the Effective Date or such later date as the Bankruptcy Court determines is appropriate, of such collateral (a) as set forth in the Plan, (b) as agreed to by the holder of such Claim and the Debtor, the Post-Confirmation Debtor, or the Disbursing Agent, as the case may be, or (c) as determined pursuant to a Final Order in accordance with Section 506 of the Bankruptcy Code or, in the event, that such Claim is subject

to setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff.

63. **Unimpaired.** When used with reference to a claim or class, means such a claim or class that is not an impaired claim or class.

64. **United States Trustee.** The Office of the United States Trustee.

65. **Unsecured Claim.** Any Claim that is not an Administrative Expense Claim, a Priority Tax Claim, a Priority Wage Claim, or a Secured Claim.

# EXHIBIT B

**Exhibit B - All GUCs**

| Claimant | Priority WC | Insider | Claim | PWC (Non-Insider) | PWC (Insider) | Priority Tax | Non-Insider GUC | Insider GUC | Filed Amount | Proof of Claim # | Disputed |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Michael Silberman | Y | Y | $127,945 | | $12,850 | | $0 | $115,095 | | | No |
| Branch Management Group | | | $112,500 | | | | $112,500 | | $112,500 | 2 | No |
| Jorge Aroche | | | $100,000 | | | | $100,000 | | | | No |
| Lead Economy LLC | | | $70,620 | | | | $70,620 | | $70,620 | 10 | No |
| Harinder Rana | Y | Y | $56,050 | | $12,850 | | | $43,200 | | | No |
| David Redlener | Y | Y | $42,750 | | $12,850 | | $0 | $29,900 | | | No |
| First Associates | | | $39,250 | | | | $39,250 | | | | No |
| Zero Parallel LLC | | | $29,688 | | | | $29,688 | | $29,688 | 9 | No |
| Erika Harvel | Y | Y | $28,545 | | $12,850 | | | $15,695 | | | No |
| Visa | | | $25,814 | | | | $25,814 | | | | No |
| Sebastian | | | $22,800 | | | | $22,800 | | | | No |
| defi Solutions | | | $20,238 | | | | $20,238 | | | | No |
| Nemo Withana | Y | | $19,477 | $12,850 | | | $6,627 | | | | No |
| Ernesto Conder | Y | | $17,150 | $12,850 | | | $4,300 | | | | No |
| Effortless Office | | | $14,555 | | | | $0 | | | | No (Paid as Part of Cure) |
| Dylan Cohen | Y | | $14,450 | $12,850 | | | $1,600 | | | | No |
| CF Culver City Tax | | | $12,865 | | | $12,865 | $0 | | | | No |
| Keesal Young Logan | | | $9,221 | | | | $9,221 | | $9,221 | 5 | No |
| American Express | | | $7,504 | | | | $7,504 | | $7,504 | 1 | No |
| Nora Dozier | Y | | $5,827 | $5,827 | | | $0 | | | | No |
| Adv. Direct IT Media | | | $5,070 | | | | $5,070 | | | | No |
| Trans Union LLC | | | $4,905 | | | | $0 | | | | No (Paid in Full) |
| Yovani Alas | Y | | $4,527 | $4,527 | | | $0 | | | | No |
| Brandie Johnson | Y | | $4,107 | $4,107 | | | $0 | | | | No |
| Cheston Vincent | Y | | $4,107 | $4,107 | | | $0 | | | | No |
| Anthem Blue Cross | | | $3,877 | | | | $3,877 | | | | No |
| Broadvoice | | | $3,405 | | | | $3,405 | | | | No |
| Parking Networks | | | $3,330 | | | | $3,330 | | | | No |
| Infinity Enterprise Lending | | | $3,313 | | | | $0 | | | | No (Paid as Part of Cure) |
| Hudson Cook LLP | | | $2,970 | | | | $2,970 | | | | No |
| Kaiser Permanente | | | $2,303 | | | | $2,303 | | $2,303 | 8 | No |
| Online Lenders Alliance | | | $2,159 | | | | $2,159 | | | | No |
| Allied Admin/Delta Dental | | | $1,381 | | | | $1,381 | | | | No |
| Direct Legal Support | | | $1,223 | | | | $1,223 | | | | No |
| CCS - OZ | | | $855 | | | | $855 | | | | No |
| Actum Processing | | | $469 | | | | $469 | | | | No |
| Market Response Solutions | | | $450 | | | | $450 | | | | No |
| CF Culver City Office, L.P. | | | $0 | | | | $0 | | $20,816 | 7 | No (Paid in Full) |
| Employment Dev Dept. | | | $0 | | | | $0 | | | | No |
| Franchise Tax Board | | | $0 | | | | $0 | | | | No |
| Hartford Insurance | | | $0 | | | | $0 | | $0 | 3 | No |
| IRS | | | $0 | | | | $0 | | $0 | 4 | No |
| | | | $825,701 | $57,118 | $51,400 | $12,865 | $477,655 | $203,890 | | | $ 802,928 |
| | | | | 100% | 100% | 100% | 45% | 40% | | | |
| | | | | $57,118 | $51,400 | $12,865 | $214,945 | $81,556 | | | $ 417,884 |

0076

# EXHIBIT C

**Exhibit C - ALL Unsecured Priority Wage Claims**

| Claimant | Priority WC | Insider | Pre-Petition | Interest % | Interest $ | Total Claim | Filed Amount | Proof of Claim # | Disputed |
|---|---|---|---|---|---|---|---|---|---|
| Dylan Cohen | Y | N | $12,850 | 2.50% | $643 | $13,493 | | | |
| Ernesto Conder | Y | N | $12,850 | 2.50% | $643 | $13,493 | | | |
| Nemo Withana | Y | N | $12,850 | 2.50% | $643 | $13,493 | | | |
| David Redlener | Y | Y | $12,850 | 0.00% | $0 | $12,850 | | | |
| Erika Harvel | Y | Y | $12,850 | 0.00% | $0 | $12,850 | | | |
| Harinder Rana | Y | Y | $12,850 | 0.00% | $0 | $12,850 | | | |
| Michael Silberman | Y | Y | $12,850 | 0.00% | $0 | $12,850 | | | |
| Nora Dozier | Y | N | $5,827 | 2.50% | $291 | $6,118 | | | |
| Yovani Alas | Y | N | $4,527 | 2.50% | $226 | $4,753 | | | |
| Brandie Johnson | Y | N | $4,107 | 2.50% | $205 | $4,312 | | | |
| Cheston Vincent | Y | N | $4,107 | 2.50% | $205 | $4,312 | | | |
| | | | $108,518 | | $2,856 | $111,374 | $0 | $0 | $0 |

# EXHIBIT D

<u>**EXHIBIT D**</u>

<u>**ADDITIONAL PLAN AND DS PROVISIONS**</u>

## I.    <u>EFFECTIVENESS OF DOCUMENTS</u>

**A.    <u>Effectiveness of Securities, Instruments, and Agreements</u>**.  On the Effective Date, all Plan Documents issued, executed, delivered, filed, or recorded pursuant to the Plan, including, without limitation, (a) amended corporate governance documents, if any, and (b) any other document issued, executed, delivered, filed, or recorded in connection with any of the foregoing or any other Plan Document, shall be deemed approved and authorized by the Bankruptcy Court, and, to the extent not already effective by their respective terms, shall become effective and binding in accordance with their respective terms and conditions upon the Entities that are parties thereto and shall be deemed to become effective simultaneously.

**B.    <u>Effectuating Documents; Further Transactions</u>**.  On the Effective Date, the Post-Confirmation Debtor (in such capacity or as the Disbursing Agent) shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such other actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, and shall be authorized to certify or attest to any of the foregoing actions, if necessary.

**C.    <u>Approval of Agreements</u>**.  Entry of the Confirmation Order shall constitute approval of the Plan Documents and all transactions contemplated thereunder.

## II.    <u>POST-CONFIRMATION CLAIMS AND OTHER ASSETS</u>

**A.    <u>Estate Claims</u>**.  Except as otherwise provided in the Plan, the right to enforce, file, litigate, prosecute, settle, and collect on behalf of the Estate and the Debtor any and all claims and causes of action that constitute property of the Estate including, without limitation, Reserved Claims and any causes of action or claims for recovery of any amounts due and owing to the Debtor or the Estate is deemed automatically transferred on the Effective Date to the Post-Confirmation Debtor on behalf of the Estate.  From and after the Effective Date, except as otherwise provided in the Plan or expressly waived, released, or barred by or under the Plan, only the Post-Confirmation Debtor will have the right to enforce, file, litigate, prosecute, settle, and collect any Reserved Clams.  The Post-Confirmation Debtor may retain and pay counsel or any other professionals to assist it in the settlement or litigation of the Reserved Claims.  Any net proceeds that may be recovered from the settlement or litigation of any such Reserved Claims will be used to fund distributions under the Plan.

**B.    <u>Retention and Enforcement of Reserved Claims</u>**.  Except as otherwise provided in the Plan or in the Confirmation Order, or in any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with Section 1123(b)(3) of the Bankruptcy Code, any rights or Causes of Action under any theory of law, including without limitation under the Bankruptcy Code, accruing to the Debtor shall remain assets of the Debtor's Estate.  On the Effective Date, the Reserved Claims, including, but not limited to, Avoidance Actions and all claims and other Causes of Action (other than Causes of Action, if any, released under this Plan) shall revest in the Post-Confirmation Debtor.  From and after the Effective Date, the Post-Confirmation Debtor shall retain and have the exclusive right and full authority to enforce, sue on, settle, or compromise (or decline to do any of the foregoing) any and all Causes of Action revested in the Post-Confirmation Debtor, including, but not limited to, all Avoidance Actions and all other Causes of Action of a trustee and debtor in possession under the Bankruptcy Code or under applicable law, and rights to payment of claims that belong to the

Debtor and the Estate that arose before the Effective Date.  No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to the Reserved Claims, including, but not limited to, Avoidance Actions and all claims and other Causes of Action (other than Causes of Action released under this Plan) which shall revest in the Post-Confirmation Debtor and the Estate.

C.     **Post-Confirmation Professionals**.  The Post-Confirmation Debtor may employ (or continue to employ) any professional after the Confirmation Date without the need for any notice or Bankruptcy Court approval.  Any professional employed by the Post-Confirmation Debtor after the Confirmation Date will be entitled to obtain payment of its fees and costs as a post-confirmation operating expense from funds of the Estate, without notice or the need for obtaining any approval of the Bankruptcy Court.  Notwithstanding the foregoing, if the Post-Confirmation Debtor should fail to pay any post-confirmation fees and costs of a professional entitled to such payment within thirty (30) calendar days after the professional's rendering of its billing statement, the professional will be entitled to seek, by application filed in accordance with the Bankruptcy Rules, an order of the Bankruptcy Court requiring the Post-Confirmation Debtor and/or the Disbursing Agent to forthwith pay to the professional its fees and costs.

D.     **Disposition of Assets**.  From and after the Effective Date, and consistent with the terms of the Plan and any Plan Documents, the Post-Confirmation Debtor will be entitled to sell, transfer, encumber, or otherwise dispose of any interest in any of the Estate's assets, without the need for obtaining approval of the Bankruptcy Court.

E.     **Compromise of Controversies**.  The Post-Confirmation Debtor expressly reserves the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle other claims and causes of action and claims that they may have against other Entities up to the Effective Date.  From and after the Effective Date, the Post-Confirmation Debtor, without any need for any notice to creditors or any approval of the Bankruptcy Court, may: (1) pursue and prosecute any objections to Claims pursuant to Bankruptcy Rule 3007 or any other order entered by the Bankruptcy Court, (2) settle or compromise any controversies relating to any Claims, objections to claims or interests, or other litigation; (3) prosecute, pursue, and/or compromise any objections and other proceedings relating to Claims that were pending prior to the Effective Date; and (4) prosecute, pursue, and/or compromise any controversies relating to Reserved Claims, new post-Effective Date objections to Claims or Interests, or other litigation.  Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the compromises, releases, and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Post-Confirmation Debtor, the Estate, and any holders of Claims against the Debtor.

F.     **Bankruptcy Court Approval Relative to Post-Confirmation Matters**.  Nothing contained in the Plan will be deemed to impair in any manner the right of the Post-Confirmation Debtor, and/or the Disbursing Agent, or any party in interest, to seek at any time after the Effective Date orders of the Bankruptcy Court approving actions to be taken consistent with the Plan as may be necessary or desirable to effectuate the provisions of the Plan.

## III. SETTLEMENT, LIMITATION OF LIABILITY, WAIVERS, RELEASES, AND RELATED PROVISIONS

### A. Compromise And Settlement of Claims, Interests, Controversies

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Post-Confirmation Debtor may compromise and settle Claims against, and Interests in, the Debtor and its Estate and Causes of Action against other Entities.

### B. Discharge of All Claims And Interests And General Releases

1. Except as otherwise specifically provided by the Plan or in the Confirmation Order, entry of the Confirmation Order (subject to the occurrence of the Effective Date) acts as a discharge of all claims against, liens on, and interests in, the Debtor, the Debtor's assets, and its respective properties, arising at any time before the entry of the Confirmation Order, regardless of whether a proof of claim or interest thereof was filed or was deemed filed, whether the claim or interest is an Allowed Claim or an Allowed Interest, or whether the holder thereof votes to accept the Plan or is entitled to receive a distribution thereunder. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor, subject to the occurrence of the Effective Date.

2. Except as otherwise specifically provided in the Plan or in the Confirmation Order, the distributions and rights that are provided in the Plan shall be in complete satisfaction, settlement, release, and discharge of, and in exchange for, effective as of the Confirmation Date (but subject to the occurrence of the Effective Date), (a) all claims and Causes of Action against, liabilities of, liens on, obligations of and interests in the Debtor or the Post-Confirmation Debtor, and the assets and properties of the Debtor or the Post-Confirmation Debtor, whether known or unknown, and (b) all Causes of Action (whether known or unknown, either directly or derivatively through the Debtor or the Post-Confirmation Debtor) against, claims (as defined in Section 101 of the Bankruptcy Code and in the Plan) against, liabilities (as guarantor of a claim or otherwise) of, liens on the direct or indirect assets and proprieties of, and obligations of successors and assigns of, the Debtor, the Post-Confirmation Debtor and its successors and assigns based on the same subject matter as any claim or interest or based on any act or omission, transaction or other activity or security, instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date that was or could have been the subject of any claim or interest, in each case regardless of whether a proof of claim or interest was filed, whether or not Allowed and whether or not the holder of the claim or interest has voted on the Plan.

## C.    <u>Injunctions</u>

The Confirmation Order shall enjoin the prosecution, whether directly indirectly, derivatively, or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability, or interest released, discharged, or terminated pursuant to the Plan. Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold, or may hold, a claim or other debt or liability that is extinguished, or an interest or other right of an equity security holder that is extinguished, pursuant to the terms of the Plan, are permanently enjoined from taking any of the following actions against the Debtor, the Debtor's Estate, or the Post-Confirmation Debtor, or their property on account of any such extinguished claims, debt, or liabilities, or extinguished interests or rights:  (a) commencing or continuing, in any manner, or in any place, any action or other proceeding, (b) enforcing, attaching, collecting, or recovering, in any manner, any judgment, award, decree, or order, (c) creating, perfecting, or enforcing any lien or encumbrance, (d) asserting as setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor or the Estate, except when asserted as a defense, if any and as appropriate, in connection with a non-residential real property lease, and (e) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan. By accepting distributions under the Plan, each holder of an allowed claim or interest receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth herein and in the Plan.  Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays provided for in the Bankruptcy Case under Section 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the Effective Date and with respect to all property constituting, or designated to be, assets of the Estate.  To the extent any injunction or stay is provided under the Plan or Confirmation Order, it shall remain in effect following the Effective Date.

## D.    **Exculpation of Debtor, Agents, and Estate Professionals**

Neither the Debtor, the Plan Proponent, nor any of its past or present members, nor any of their respective attorneys, accountants, advisors, consultants, employees, professionals, brokers, or agents during the Bankruptcy Case, shall have or incur any liability to any Holder of a Claim or Interest or to any other entity for any act or omission in connection with, or arising out of, the Bankruptcy Case, negotiation and pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, or the property or distributions to be distributed under this Plan, including, without limitation, failure to obtain confirmation of the Plan, and, in all respects, the Debtor and Plan Proponent, and each of their respective members, officers, directors, employees, and agents shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; *provided, however*, that the foregoing shall not supersede the "safe harbor" from liability provided by Section 1125(e) of the Bankruptcy Code.  The terms of this release shall operate as a release and waiver, as of the Effective Date of the Plan, of all claims and causes of action against any professional retained in the Bankruptcy Case at the expense of the Estate.

## IV.    PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

### A.    Prosecution of Objections

Except as otherwise provided in the Plan, after the Confirmation Date, only the Post-Confirmation Debtor shall have the authority to file or pursue objections, settle, compromise, withdraw or litigate to judgment objections to Claims and, from and after the Effective Date, may settle or compromise, withdraw or litigate to judgment objections to any Disputed Claim. On the Effective Date, the Post-Confirmation Debtor shall be deemed to be substituted for the Debtor as the objecting party in all contested matters or adversary proceedings then pending as to which the Debtor is a party. Objections to Claims filed after the entry of the Confirmation Order, shall be filed by the Post-Confirmation Debtor, if necessary, not later than 45 calendar days after proof of such Claim is filed, unless such period is extended by Bankruptcy Court order. *See also*, Section II above.

### B.    Amendments to Claims; Claims Filed After the Confirmation Date

Except as otherwise provided in the Plan or the "Notice of Bar Date For Filing Proofs of Claim in a Chapter 11 Case [LBR 3003-1]" [Dkt. No. 87], after the Confirmation Date, a proof of claim may not be filed or amended without the authorization of the Bankruptcy Court and, even with such Bankruptcy Court authorization, may be amended by the holder of such Claim solely to decrease, but not to increase, the amount set forth therein. Except as otherwise provided in the Plan and in the immediately preceding sentence, any proof of claim (whether filed to assert a new claim or to amend a previously filed claim) filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Debtor, the Post-Confirmation Debtor, or the Disbursing Agent.

### C.    No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim, or Disputed Administrative Expense Claims unless and until all objections to such Disputed Claim or Disputed Administrative Expense Claims have been settled or withdrawn or have been determined by Final Order. No holder of a Disputed Claim or Disputed Administrative Expense Claim shall have any claim against any property of the Debtor, the Estate, or the Post-Confirmation Debtor on account of such Disputed Claim or Disputed Administrative Expense Claim, until such Disputed Claim or Disputed Administrative Expense Claim becomes Allowed.

# EXHIBIT E

**Exhibit E1 - Plan Budget**

| | |
|---|---|
| Principal Due (@ 10/1) | $ 1,890,000 |
| Accrued Interest Due (@ 10/1) | $ 835,000 |
| Total Due (@ 9/1) | $ 2,725,000 |

Net Cash Generated from Plan  $ 716,908

| | |
|---|---|
| Proj Recovery % | 55% |
| Proj Recovery $ | $ 1,498,750 |

| Portfolio Collection Rate | 2.25% | 2.25% | 2.50% | 2.50% | 2.75% | 2.75% | 3.75% | 3.75% | 4.00% | 4.00% | 4.50% | 4.50% | 4.50% | 4.75% | 4.75% | 4.75% | 5.00% | 5.00% | 5.25% | 5.25% | 5.50% | 5.50% | 5.50% | 0.00% |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| **Non-Performing Loan Portfolio** | Oct-19 | Nov-19 | Dec-19 | Jan-20 | Feb-20 | Mar-20 | Apr-20 | May-20 | Jun-20 | Jul-20 | Aug-20 | Sep-20 | Oct-20 | Nov-20 | Dec-20 | Jan-21 | Feb-21 | Mar-21 | Apr-21 | May-21 | Jun-21 | Jul-21 | Aug-21 | Sep-21 |
| Recoverable Portfolio | 1,498,750 | 1,465,928 | 1,433,106 | 1,396,538 | 1,359,969 | 1,319,653 | 1,279,338 | 1,224,034 | 1,168,731 | 1,109,681 | 1,050,631 | 984,088 | 917,544 | 851,000 | 780,709 | 710,419 | 640,128 | 566,091 | 492,053 | 414,269 | 336,484 | 254,953 | 173,422 | 91,891 |
| **Beginning Cash Balance** | 27,598 | 28,266 | 40,350 | 52,255 | 2,268 | 10,533 | 69,504 | 5,953 | 28,517 | 51,155 | 9,412 | 36,696 | 64,655 | 7,614 | 39,320 | 71,025 | 7,731 | 43,184 | 78,637 | 8,836 | 48,036 | 90,982 | 8,929 | 6,200 |
| **Cash Receipts** | | | | | | | | | | | | | | | | | | | | | | | | |
| Performing Loans (Old) | 28,900 | 26,141 | 13,790 | 16,158 | 9,989 | 8,024 | 7,615 | 5,031 | 3,858 | 2,792 | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Non-Performing Loans | 32,822 | 32,822 | 36,569 | 36,569 | 40,316 | 40,316 | 55,303 | 55,303 | 59,050 | 59,050 | 66,544 | 66,544 | 66,544 | 70,291 | 70,291 | 70,291 | 74,038 | 74,038 | 77,784 | 77,784 | 81,531 | 81,531 | 81,531 | 91,891 |
| FA Reimbursement | - | - | - | - | - | 50,000 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Cash Receipts | 61,722 | 58,963 | 50,359 | 52,727 | 50,305 | 98,340 | 62,918 | 60,334 | 62,908 | 61,842 | 66,544 | 66,544 | 66,544 | 70,291 | 70,291 | 70,291 | 74,038 | 74,038 | 77,784 | 77,784 | 81,531 | 81,531 | 81,531 | 91,891 |
| **Disbursements** | | | | | | | | | | | | | | | | | | | | | | | | |
| ACH Provider Fee (Payment Data Systems) | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 |
| Credit Reporting (Equifax) | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 |
| Credit Reporting (Experian) | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 |
| Credit Reporting (TransUnion) | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 |
| Insurance - Dental (Delta Dental) | 374 | 374 | 374 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| Insurance - Health (Anthem) | 2,974 | 2,974 | 2,974 | 1,534 | 1,534 | 1,534 | 1,534 | 1,534 | 1,534 | 1,534 | 1,534 | 1,534 | 1,534 | 1,534 | 1,534 | 1,534 | 1,534 | 1,534 | 1,534 | 1,534 | 1,534 | 1,534 | 1,534 | 1,534 |
| Insurance - Health (Kaiser) | 361 | 361 | 361 | 361 | 361 | 361 | 361 | 361 | 361 | 361 | 361 | 361 | 361 | 361 | 361 | 361 | 361 | 361 | 361 | 361 | 361 | 361 | 361 | 361 |
| Insurance - General Liability (Hartford) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Legal - SC Fees (Filing) | 2,750 | 3,300 | 3,850 | 4,400 | 4,400 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Legal - SC Fees (Process Server) | 1,100 | 1,375 | 1,650 | 1,925 | 2,200 | 2,200 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Legal - SC Fees (Writ of Execution / Sheriff Levy) | - | - | 1,200 | 1,200 | 1,500 | 1,800 | 2,100 | 2,400 | 2,400 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Loan Management System (Infinity) | 2,550 | 2,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 |
| Office Lease (NEW) | 7,950 | 7,950 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 |
| Other G&A | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 |
| Payroll | 21,803 | 21,803 | 18,053 | 18,053 | 21,803 | 23,233 | 23,233 | 23,233 | 25,733 | 26,448 | 26,448 | 26,448 | 26,448 | 26,448 | 26,448 | 26,448 | 26,448 | 26,448 | 26,448 | 26,448 | 26,448 | 26,448 | 26,448 | 26,448 |
| Taxes - Return Preparation (2019/2020) | - | - | - | - | - | - | 4,000 | - | - | - | - | - | - | - | - | - | 4,000 | - | - | - | - | - | - | - |
| Taxes - LA County | - | - | - | - | - | - | - | - | 675 | - | - | - | - | - | - | - | - | - | - | - | - | - | 675 | - |
| Utilities - Electric/Gas (SoCalGas) | 174 | 174 | 174 | 174 | 174 | 174 | 174 | 174 | 174 | 174 | 174 | 174 | 174 | 174 | 174 | 174 | 174 | 174 | 174 | 174 | 174 | 174 | 174 | 174 |
| Utilities - Internet (Spectrum) | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| Utilities - Phone (Broadvoice) | 1,594 | 1,594 | 1,594 | 1,594 | 1,594 | 1,594 | 1,594 | 1,594 | 1,594 | 1,594 | 1,594 | 1,594 | 1,594 | 1,594 | 1,594 | 1,594 | 1,594 | 1,594 | 1,594 | 1,594 | 1,594 | 1,594 | 1,594 | 1,594 |
| Utilities - Servers (Effortless) | 2,568 | 2,568 | 1,568 | 1,568 | 1,568 | 1,568 | 1,568 | 1,568 | 1,568 | 1,568 | 1,568 | 1,568 | 1,568 | 1,568 | 1,568 | 1,568 | 1,568 | 1,568 | 1,568 | 1,568 | 1,568 | 1,568 | 1,568 | 1,568 |
| Utilities - Water (LADWP) | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| Total Disbursements | 46,054 | 46,879 | 38,454 | 37,714 | 42,039 | 39,370 | 41,470 | 37,770 | 40,270 | 38,585 | 39,260 | 38,585 | 38,585 | 38,585 | 38,585 | 38,585 | 38,585 | 38,585 | 42,585 | 38,585 | 38,585 | 38,585 | 39,260 | 38,585 |
| Change in Cash | 15,668 | 12,084 | 11,905 | 15,013 | 8,266 | 58,970 | 21,449 | 22,564 | 22,638 | 23,257 | 27,284 | 27,959 | 27,959 | 31,706 | 31,706 | 31,706 | 35,453 | 35,453 | 35,200 | 39,200 | 42,946 | 42,946 | 42,271 | 53,306 |
| **Net Cash Before Liquidation Plan Payments** | 43,266 | 40,350 | 52,255 | 67,268 | 10,533 | 69,504 | 90,953 | 28,517 | 51,155 | 74,412 | 36,696 | 64,655 | 92,614 | 39,320 | 71,025 | 102,731 | 43,184 | 78,637 | 113,836 | 48,036 | 90,982 | 133,929 | 51,200 | 59,506 |
| **Non-Insiders** | | | | | | | | | | | | | | | | | | | | | | | | |
| Plan Payments | 15,000 | - | - | 65,000 | - | - | 85,000 | - | - | 65,000 | - | - | 85,000 | - | - | 95,000 | - | - | 105,000 | - | - | 125,000 | 3,702 | - |
| Total Plan Due (BOM) | 643,702 | 628,702 | 628,702 | 628,702 | 563,702 | 563,702 | 563,702 | 478,702 | 478,702 | 478,702 | 413,702 | 413,702 | 413,702 | 328,702 | 328,702 | 328,702 | 233,702 | 233,702 | 233,702 | 128,702 | 128,702 | 128,702 | 3,702 | (0) |
| Total Plan Due (EOM) | 628,702 | 628,702 | 628,702 | 563,702 | 563,702 | 563,702 | 478,702 | 478,702 | 478,702 | 413,702 | 413,702 | 413,702 | 328,702 | 328,702 | 328,702 | 233,702 | 233,702 | 233,702 | 128,702 | 128,702 | 128,702 | 3,702 | (0) | (0) |
| **Insiders** | | | | | | | | | | | | | | | | | | | | | | | | |
| Plan Payments | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 41,298 | 57,500 |
| Total Plan Due (BOM) | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 91,658 |
| Total Plan Due (EOM) | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 132,956 | 91,658 | 34,158 |
| **Net Cash After Liquidation Plan Payments** | 28,266 | 40,350 | 52,255 | 2,268 | 10,533 | 69,504 | 5,953 | 28,517 | 51,155 | 9,412 | 36,696 | 64,655 | 7,614 | 39,320 | 71,025 | 7,731 | 43,184 | 78,637 | 8,836 | 48,036 | 90,982 | 8,929 | 6,200 | 2,006 |

0083

**Exhibit E2 - Plan Payments**

| Liquidation Plan Categories (Non-Insiders) | | |
|---|---|---|
| Non-Insider Priority Wage | $ 59,974 | 9.54% |
| Priority Tax | $ 13,508 | 2.15% |
| Non-Insider GUC | $214,945 | 34.19% |
| Professional Fees (Paid) | $340,275 | 54.12% |
| UST Fees / Misc | $ 15,000 | 0.00% |
| **Non-Insider Claims** | **$ 643,702** | **100.00%** |

| Liquidation Plan Categories (Insiders) | Total | % of Total |
|---|---|---|
| Insider Priority Wage Claims | $ 51,400 | 38.66% |
| Insider GUC | $ 81,556 | 61.34% |
| **Insider Claims** | **$132,956** | **100.00%** |
| | | |
| **Total Claims** | **$ 776,658** | |

| | 1 Oct-19 | 2 Nov-19 | 3 Dec-19 | 4 Jan-20 | 5 Feb-20 | 6 Mar-20 | 7 Apr-20 | 8 May-20 | 9 Jun-20 | 10 Jul-20 | 11 Aug-20 | 12 Sep-20 | 13 Oct-20 | 14 Nov-20 | 15 Dec-20 | 16 Jan-21 | 17 Feb-21 | 18 Mar-21 | 19 Apr-21 | 20 May-21 | 21 Jun-21 | 22 Jul-21 | 23 Aug-21 | 24 Sep-21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Net Cash BEFORE Liquidation Plan Payments | $ 43,266 | $ 40,350 | $ 52,255 | $ 67,268 | $ 10,533 | $ 69,504 | $ 90,953 | $ 28,517 | $ 51,155 | $ 74,412 | $ 36,696 | $ 64,655 | $ 92,614 | $ 39,320 | $ 71,025 | $102,731 | $ 43,184 | $ 78,637 | $ 113,836 | $ 48,036 | $ 90,982 | $ 133,929 | $ 51,200 | $ 59,506 |

**Non-Insider Claim Payments**

| Total Plan Payments | $ 15,000 | - | $ - | $ 65,000 | $ - | $ - | $ 85,000 | $ - | $ - | $ 65,000 | $ - | $ - | $ 85,000 | $ - | $ - | $ 95,000 | $ - | $ - | $ 105,000 | $ - | $ - | $ 125,000 | $ 45,000 | $ 57,500 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| | 1 Oct-19 | 2 Nov-19 | 3 Dec-19 | 4 Jan-20 | 5 Feb-20 | 6 Mar-20 | 7 Apr-20 | 8 May-20 | 9 Jun-20 | 10 Jul-20 | 11 Aug-20 | 12 Sep-20 | 13 Oct-20 | 14 Nov-20 | 15 Dec-20 | 16 Jan-21 | 17 Feb-21 | 18 Mar-21 | 19 Apr-21 | 20 May-21 | 21 Jun-21 | 22 Jul-21 | 23 Aug-21 | 24 Sep-21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Non-Insider Priority Wage | $ - | $ - | $ - | $ 6,201 | $ - | $ - | $ 8,108 | $ - | $ - | $ 6,201 | $ - | $ - | $ 8,108 | $ - | $ - | $ 9,062 | $ - | $ - | $ 10,016 | $ - | $ - | $ 11,924 | $ 353 | $ - |
| Priority Tax | $ - | $ - | $ - | $ 1,397 | $ - | $ - | $ 1,826 | $ - | $ - | $ 1,397 | $ - | $ - | $ 1,826 | $ - | $ - | $ 2,041 | $ - | $ - | $ 2,256 | $ - | $ - | $ 2,686 | $ 80 | $ - |
| Non-Insider GUC | $ - | $ - | $ - | $ 22,223 | $ - | $ - | $ 29,060 | $ - | $ - | $ 22,223 | $ - | $ - | $ 29,060 | $ - | $ - | $ 32,479 | $ - | $ - | $ 35,898 | $ - | $ - | $ 42,736 | $ 1,266 | $ - |
| Professional Fees (Paid) | $ - | $ - | $ - | $ 35,180 | $ - | $ - | $ 46,005 | $ - | $ - | $ 35,180 | $ - | $ - | $ 46,005 | $ - | $ - | $ 51,417 | $ - | $ - | $ 56,830 | $ - | $ - | $ 67,654 | $ 2,003 | $ - |
| UST Fees / Misc | $ 15,000 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Non-Insider Payments** | **$ 15,000** | $ - | $ - | $ 65,000 | $ - | $ - | $ 85,000 | $ - | $ - | $ 65,000 | $ - | $ - | $ 85,000 | $ - | $ - | $ 95,000 | $ - | $ - | $ 105,000 | $ - | $ - | $ 125,000 | $ 3,702 | $ - |

**Non-Insider Claim Balances**

| | 1 Oct-19 | 2 Nov-19 | 3 Dec-19 | 4 Jan-20 | 5 Feb-20 | 6 Mar-20 | 7 Apr-20 | 8 May-20 | 9 Jun-20 | 10 Jul-20 | 11 Aug-20 | 12 Sep-20 | 13 Oct-20 | 14 Nov-20 | 15 Dec-20 | 16 Jan-21 | 17 Feb-21 | 18 Mar-21 | 19 Apr-21 | 20 May-21 | 21 Jun-21 | 22 Jul-21 | 23 Aug-21 | 24 Sep-21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Claims (BOM) | $643,702 | $628,702 | $628,702 | $ 628,702 | $563,702 | $563,702 | $563,702 | $478,702 | $478,702 | $478,702 | $413,702 | $413,702 | $413,702 | $328,702 | $328,702 | $328,702 | $233,702 | $233,702 | $ 233,702 | $128,702 | $128,702 | $128,702 | $ 3,702 | $ - |
| Total Paid | $ (15,000) | $ - | $ - | $ (65,000) | $ - | $ - | $ (85,000) | $ - | $ - | $ (65,000) | $ - | $ - | $ (85,000) | $ - | $ - | $ (95,000) | $ - | $ - | $(105,000) | $ - | $ - | $(125,000) | $ (3,702) | $ - |
| Total Claims (EOM) | $628,702 | $628,702 | $628,702 | $ 563,702 | $563,702 | $563,702 | $478,702 | $478,702 | $478,702 | $413,702 | $413,702 | $413,702 | $328,702 | $328,702 | $328,702 | $233,702 | $233,702 | $233,702 | $ 128,702 | $128,702 | $128,702 | $ 3,702 | $ - | $ - |

**Insider Claim Payments**

| Plan Payments (available for Insiders) | $ - | - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 41,298 | $ 57,500 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| | 1 Oct-19 | 2 Nov-19 | 3 Dec-19 | 4 Jan-20 | 5 Feb-20 | 6 Mar-20 | 7 Apr-20 | 8 May-20 | 9 Jun-20 | 10 Jul-20 | 11 Aug-20 | 12 Sep-20 | 13 Oct-20 | 14 Nov-20 | 15 Dec-20 | 16 Jan-21 | 17 Feb-21 | 18 Mar-21 | 19 Apr-21 | 20 May-21 | 21 Jun-21 | 22 Jul-21 | 23 Aug-21 | 24 Sep-21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Insider Priority Wage Claims | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 15,966 | $ 22,229 |
| Insider GUC | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 25,333 | $ 35,271 |
| **Total Insider Payments** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 41,298 | $ 57,500 |

**Insider Claim Balances**

| | 1 Oct-19 | 2 Nov-19 | 3 Dec-19 | 4 Jan-20 | 5 Feb-20 | 6 Mar-20 | 7 Apr-20 | 8 May-20 | 9 Jun-20 | 10 Jul-20 | 11 Aug-20 | 12 Sep-20 | 13 Oct-20 | 14 Nov-20 | 15 Dec-20 | 16 Jan-21 | 17 Feb-21 | 18 Mar-21 | 19 Apr-21 | 20 May-21 | 21 Jun-21 | 22 Jul-21 | 23 Aug-21 | 24 Sep-21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Claims (BOM) | $132,956 | $132,956 | $132,956 | $ 132,956 | $132,956 | $132,956 | $132,956 | $132,956 | $132,956 | $132,956 | $132,956 | $132,956 | $132,956 | $132,956 | $132,956 | $132,956 | $132,956 | $132,956 | $ 132,956 | $132,956 | $132,956 | $132,956 | $132,956 | $ 91,658 |
| Total Paid | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ (41,298) | $ (57,500) |
| Total Claims (EOM) | $132,956 | $132,956 | $132,956 | $ 132,956 | $132,956 | $132,956 | $132,956 | $132,956 | $132,956 | $132,956 | $132,956 | $132,956 | $132,956 | $132,956 | $132,956 | $132,956 | $132,956 | $132,956 | $ 132,956 | $132,956 | $132,956 | $132,956 | $ 91,658 | $ 34,158 |

# EXHIBIT F

### Exhibit F - GUC (Non-Insiders)

| Claimant | Insider | GUC | Class # |
|---|---|---|---|
| Branch Management Group | N | $112,500 | 2 |
| Jorge Aroche | N | $100,000 | 2 |
| Lead Economy LLC | N | $70,620 | 2 |
| First Associates | N | $39,250 | 2 |
| Zero Parallel LLC | N | $29,688 | 2 |
| Visa | N | $25,814 | 2 |
| Sebastian | N | $22,800 | 2 |
| defi Solutions | N | $20,238 | 2 |
| Effortless Office | N | $14,555 | 2 |
| Keesal Young Logan | N | $9,221 | 2 |
| American Express | N | $7,504 | 2 |
| Nemo Withana | N | $6,627 | 2 |
| Adv. Direct IT Media | N | $5,070 | 2 |
| Trans Union LLC | N | $4,905 | 2 |
| Ernesto Conder | N | $4,300 | 2 |
| Anthem Blue Cross | N | $3,877 | 2 |
| Broadvoice | N | $3,405 | 2 |
| Parking Networks | N | $3,330 | 2 |
| Infinity Enterprise Lending | N | $3,313 | 2 |
| Hudson Cook LLP | N | $2,970 | 2 |
| Kaiser Permanente | N | $2,303 | 2 |
| Online Lenders Alliance | N | $2,159 | 2 |
| Dylan Cohen | N | $1,600 | 2 |
| Allied Admin/Delta Dental | N | $1,381 | 2 |
| Direct Legal Support | N | $1,223 | 2 |
| CCS - OZ | N | $855 | 2 |
| Actum Processing | N | $469 | 2 |
| Market Response Solutions | N | $450 | 2 |
| CF Culver City Office | N | $0 | 2 |
| Employment Dev Dept. | N | $0 | 2 |
| Franchise Tax Board | N | $0 | 2 |
| Hartford Insurance | N | $0 | 2 |
| IRS | N | $0 | 2 |

**Total**        **$500,428**

# EXHIBIT G

## Exhibit G - GUC (Insiders)

| Claimant | Insider | Insider GUC | Class # |
|---|---|---|---|
| Michael Silberman | Y | $115,095 | 3 |
| Harinder Rana | Y | $43,200 | 3 |
| David Redlener | Y | $29,900 | 3 |
| Erika Harvel | Y | $15,695 | 3 |

$203,890

# EXHIBIT H

## Exhibit H - PWC (Non-Insiders)

| Claimant | Insider | Priority WC | 2.50% Interest | Total WC | Class # |
|---|---|---|---|---|---|
| Dylan Cohen | N | $12,850 | $643 | $13,493 | 4 |
| Ernesto Conder | N | $12,850 | $643 | $13,493 | 4 |
| Nemo Withana | N | $12,850 | $643 | $13,493 | 4 |
| Yovani Alas | N | $4,527 | $226 | $4,753 | 4 |
| Brandie Johnson | N | $4,107 | $205 | $4,312 | 4 |
| Nora Dozier | N | $5,827 | $291 | $6,118 | 4 |
| Cheston Vincent | N | $4,107 | $205 | $4,312 | 4 |

$   57,118   $    2,856   $   59,974

# EXHIBIT I

**Exhibit I - PWC (Insiders)**

| Claimant | Insider | Priority WC | Class # |
|---|---|---|---|
| David Redlener | Y | $12,850 | 5 |
| Erika Harvel | Y | $12,850 | 5 |
| Harinder Rana | Y | $12,850 | 5 |
| Michael Silberman | Y | $12,850 | 5 |

$51,400

EXHIBIT J

UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

**One Way Loans LLC dba PowerLend**

Internal Financial Statements
For the Year Ended December 31, 2018
(Unaudited)



UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

One Way Loans LLC dba Powerlend
Balance Sheet
(Unaudited)
December 31, 2018

## ASSETS

| | | |
|---|---|---:|
| **Current Assets** | | |
| Cash | $ | 9,071 |
| Accounts Receivable | | 3,099,640 |
| Prepaid expense and other current assets | | 394,067 |
| Total current assets | | 3,502,778 |
| | | |
| Intangibles | | 4,646 |
| Property, plant and equipment (net) | | 23,675 |
| Deferred marketing | | 2,341,538 |
| | | |
| Total Assets | | 5,872,638 |

## LIABILITIES AND MEMBERS' DEFICIT

| | | |
|---|---|---:|
| **Current Liabilities** | | |
| Accounts Payable | $ | 259,689 |
| Accrued Expense | | 373,704 |
| Total current liabilities | | 633,393 |
| | | |
| Notes payable, net of current portion | | 5,202,757 |
| Total liabilities | | 5,836,150 |
| | | |
| Members' deficit | | 36,487 |
| | | |
| Total liabilities and members' deficit | $ | 5,872,638 |

One Way Loans LLC dba Powerlend
Statement of Operations
(Unaudited)
For the Year Ended December 31, 2018

| | | |
|---|---|---:|
| Revenue | $ | 2,018,189 |
| Cost of loan | | 1,756,395 |
| | | |
| Gross Profit (Loss) | | 261,794 |
| | | |
| Operating expenses | | |
| General & Administrative | | 875,801 |
| Payroll, benefits and related expenses | | 375,270 |
| Total operating expenses | | 1,251,070 |
| | | |
| Other expense | | |
| Interest expense | | 1,270,758 |
| Other inome | | |
| Other expense | | 32,017 |
| Total other income and expense | | 1,302,775 |
| | | |
| Net Loss | $ | (2,292,051) |

UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

0091

UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

**One Way Loans LLC dba Powerlend**
**Statement of Cash Flows**
**(Unaudited)**
**For the Year Ended December 31, 2018**

**Cash Flows from Operating Activities**

| | |
|---|---:|
| Net Loss | (2,292,051) |
| Adjustments to reconcile net loss to net cash used in operating activities | |
| Depreciation and amortization | 32,017 |
| Bad debts recovery | 299,000 |
| Adjustments to retained earnings | 132,373 |
| Changes in operating assets and liabilities | |
| Accounts receivable | (3,406,309) |
| Accounts payable | 230,332 |
| Accrued expenses | 370,371 |
| Prepaid expenses and other current assets | (197,419) |
| Net cash used in operating activities | (2,539,636) |

**Cash Flows from Investing Activities**

| | |
|---|---:|
| Due from Member | (34,035) |
| Deferred Marketing | (2,341,538) |
| Net cash used in investing activities | (2,375,573) |

**Cash Flows from Financing Activities**

| | |
|---|---:|
| Purchase of PP&E | (47,042) |
| Deposits and others | (95,426) |
| Amortization of debt issuance costs | 291,496 |
| Member Investment | 2,541,618 |
| Net cash used in investing activities | 2,690,646 |
| Net decrease in cash and cash equivalents | (4,516,614) |
| Cash and cash equivalents, beginning of period | $    4,525,685 |
| Cash and cash equivalents, end of period | $    9,071 |

UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

**One Way Loans LLC dba PowerLend**

Internal Financial Statements
January 31, 2019
(Unaudited)



One Way Loans LLC dba Powerlend
Balance Sheet
(Unaudited)
January 31, 2019

## ASSETS

| | | |
|---|---|---:|
| Current Assets | | |
| Cash | $ | 49,797 |
| Accounts Receivable | | 3,040,398 |
| Prepaid expense and other current assets | | 332,036 |
| Total current assets | | 3,422,231 |
| | | |
| | | |
| Intangibles | | 4,646 |
| Property, plant and equipment (net) | | 22,097 |
| Deferred marketing | | 2,341,538 |
| | | |
| Total Assets | | 5,790,512 |

## LIABILITIES AND MEMBERS' DEFICIT

| | | |
|---|---|---:|
| Current Liabilities | | |
| Accounts Payable | $ | 372,480 |
| Accrued Expense | | 714,114 |
| Total current liabilities | | 1,086,593 |
| | | |
| Notes payable, net of current portion | | 5,192,095 |
| Total liabilities | | 6,278,688 |
| | | |
| Members' deficit | | (488,175) |
| | | |
| Total liabilities and members' deficit | $ | 5,790,512 |

UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

One Way Loans LLC dba Powerlend
Statement of Operations
(Unaudited)
For the Month Ended January 31, 2019

| | | |
|---|---|---:|
| Revenue | $ | 95,450 |
| Cost of loan | | 110,205 |
| Gross Profit (Loss) | | (14,755) |
| Operating expenses | | |
| General & Administrative | | 231,031 |
| Payroll, benefits and related expenses | | 260,844 |
| Total operating expenses | | 491,874 |
| Other expense | | |
| Interest expense | | 100,109 |
| Other expense | | 1,578 |
| Total other expense | | 101,688 |
| Net Loss | $ | (608,317) |

UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

0095

One Way Loans LLC dba Powerlend
Statement of Cash Flows
(Unaudited)
For the Month Ended January 31, 2019

**Cash Flows from Operating Activities**

| | |
|---|---:|
| Net Loss | (608,175) |
| Adjustments to reconcile net loss to net cash used in operating activities | |
| Depreciation | 1,578 |
| Bad debts recovery | 50,000 |
| Adjustments to retained earnings | 83,654 |
| Changes in operating assets and liabilities | |
| Accounts receivable | 67,216 |
| Accounts payable | 376,862 |
| Accrued expenses | 76,338 |
| Prepaid expenses and other current assets | 4,402 |
| Net cash used in operating activities | 660,051 |

**Cash Flows from Investing Activities**

| | |
|---|---:|
| Due from Member | (346) |
| Net cash used in investing activities | (346) |

**Cash Flows from Financing Activities**

| | |
|---|---:|
| Purchase of PP&E | |
| Deposits and others | |
| Amortization of debt issuance costs | (10,662) |
| Note Payable | - |
| Net cash used in financing activities | (10,662) |
| Net decrease in cash and cash equivalents | 40,726 |
| Cash and cash equivalents, beginning of period | 9,071 |
| Cash and cash equivalents, end of period | $ 49,797 |

UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

**One Way Loans LLC dba PowerLend**

Internal Financial Statements
February 28, 2019
(Unaudited)



UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

One Way Loans LLC dba Powerlend
Balance Sheet
(Unaudited)
February 28, 2019

## ASSETS

| | | |
|---|---|---:|
| Current Assets | | |
| Cash | $ | 30,022 |
| Accounts Receivable | | 2,979,645 |
| Prepaid expense and other current assets | | 332,036 |
| Total current assets | | 3,341,703 |
| | | |
| Intangibles | | 4,646 |
| Property, plant and equipment (net) | | 20,519 |
| Deferred marketing | | 2,341,538 |
| | | |
| Total Assets | | 5,708,406 |

## LIABILITIES AND MEMBERS' DEFICIT

| | | |
|---|---|---:|
| Current Liabilities | | |
| Accounts Payable | $ | 455,012 |
| Accrued Expense | | 822,125 |
| Total current liabilities | | 1,277,137 |
| | | |
| Notes payable, net of current portion | | 5,201,432 |
| Total liabilities | | 6,478,569 |
| | | |
| Members' deficit | | (770,163) |
| | | |
| Total liabilities and members' deficit | $ | 5,708,406 |

UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

One Way Loans LLC dba Powerlend
Statement of Operations
(Unaudited)
For the Two Months Ended February 28, 2019

| | |
|---|---:|
| Revenue | $ 171,053 |
| Cost of loan | 227,697 |
| Gross Profit (Loss) | (56,644) |
| Operating expenses | |
| General & Administrative | 326,005 |
| Payroll, benefits and related expenses | 291,897 |
| Total operating expenses | 617,902 |
| Other expense | |
| Interest expense | 207,906 |
| Other income | - |
| Other expense | 3,157 |
| Total other expense | 211,063 |
| Net Loss | $ (885,609) |

UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

0099

One Way Loans LLC dba Powerlend
Statement of Cash Flows
(Unaudited)
For the Two Months Ended February 28, 2019

**Cash Flows from Operating Activities**

| | |
|---|---:|
| Net Loss | $ (885,609) |
| Adjustments to reconcile net loss to net cash used in operating activities | - |
| Depreciation | 3,157 |
| Bad debts recovery | 100,000 |
| Adjustments to retained earnings | 78,959 |
| Changes in operating assets and liabilities | - |
| Accounts receivable | 77,969 |
| Accounts payable | 459,394 |
| Accrued expenses | 184,349 |
| Prepaid expenses and other current assets | 4,402 |
| Net cash used in operating activities | 908,230 |
| | - |

**Cash Flows from Investing Activities**

| | |
|---|---:|
| | - |
| Due from Member | (346) |
| | - |
| Net cash used in investing activities | (346) |
| | - |

**Cash Flows from Financing Activities**

| | |
|---|---:|
| | - |
| Purchase of PP&E | - |
| Deposits and others | - |
| Amortization of debt issuance costs | (1,325) |
| Note Payable | - |
| | - |
| Net cash used in investing activities | (1,325) |
| | - |
| Net decrease in cash and cash equivalents | 20,951 |
| | - |
| Cash and cash equivalents, beginning of period | $      9,071 |
| | - |
| Cash and cash equivalents, end of period | $     30,022 |

UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

**One Way Loans LLC dba PowerLend**

Internal Financial Statements
March 31, 2019
(Unaudited)



One Way Loans LLC dba Powerlend
Balance Sheet
(Unaudited)
March 31, 2019

## ASSETS

| | | |
|---|---|---:|
| Current Assets | | |
| Cash | $ | 174,168 |
| Accounts Receivable | | 2,922,075 |
| Prepaid expense and other current assets | | 384,442 |
| Total current assets | | 3,480,685 |
| | | |
| Intangibles | | 4,646 |
| Property, plant and equipment (net) | | 18,940 |
| Deferred marketing | | 2,341,538 |
| | | |
| Total Assets | | 5,845,810 |

## LIABILITIES AND MEMBERS' DEFICIT

| | | |
|---|---|---:|
| Current Liabilities | | |
| Accounts Payable | $ | 518,597 |
| Accrued Expense | | 401,581 |
| Total current liabilities | | 920,178 |
| | | |
| Notes payable, net of current portion | | 6,356,167 |
| Total liabilities | | 7,276,345 |
| | | |
| Members' deficit | | (1,430,535) |
| | | |
| Total liabilities and members' deficit | $ | 5,845,810 |

UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

One Way Loans LLC dba Powerlend
Statement of Operations
(Unaudited)
For the Three Months Ended March 31, 2019

| | |
|---|---:|
| Revenue | $ 240,294 |
| Cost of loan | 341,782 |
| Gross Profit (Loss) | (101,488) |
| Operating expenses | |
| General & Administrative | 537,930 |
| Payroll, benefits and related expenses | 318,110 |
| Total operating expenses | 856,040 |
| Other expense | |
| Interest expense | 583,719 |
| Other income | - |
| Other expense | 4,735 |
| Total other expense | 588,454 |
| Net Loss | $ (1,545,981) |

UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

0103

UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

One Way Loans LLC dba Powerlend
Statement of Cash Flows
(Unaudited)
For the Three Months Ended March 31, 2019

| | |
|---|---:|
| **Cash Flows from Operating Activities** | |
| Net Loss | $ (1,545,981) |
| Adjustments to reconcile net loss to net cash used in operating activities | - |
| Depreciation | 4,735 |
| Bad debts recovery | 150,000 |
| Adjustments to retained earnings | 78,959 |
| Changes in operating assets and liabilities | - |
| Accounts receivable | (36,866) |
| Accounts payable | 522,980 |
| Accrued expenses | (236,195) |
| Prepaid expenses and other current assets | 74,402 |
| Net cash used in operating activities | 558,015 |
| | - |
| **Cash Flows from Investing Activities** | - |
| Due from Member | (346) |
| | - |
| Net cash used in investing activities | (346) |
| | - |
| **Cash Flows from Financing Activities** | - |
| Purchase of PP&E | - |
| Deposits and others | - |
| Amortization of debt issuance costs | (296,590) |
| Note Payable | 1,450,000 |
| | - |
| Net cash used in investing activities | 1,153,410 |
| | - |
| Net decrease in cash and cash equivalents | 165,097 |
| | - |
| Cash and cash equivalents, beginning of period | $       9,071 |
| | - |
| Cash and cash equivalents, end of period | $     174,168 |

**One Way Loans LLC dba PowerLend**

Internal Financial Statements
April 30, 2019
(Unaudited)



UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

One Way Loans LLC dba Powerlend
Balance Sheet
(Unaudited)
April 30, 2019

## ASSETS

| | | |
|---|---|---:|
| Current Assets | | |
| Cash | $ | 82,491 |
| Accounts Receivable | | 2,856,137 |
| Prepaid expense and other current assets | | 372,936 |
| Total current assets | | 3,311,564 |
| | | |
| Intangibles | | 4,646 |
| Property, plant and equipment (net) | | 17,362 |
| Deferred marketing | | 2,341,538 |
| | | |
| Total Assets | | 5,675,111 |

## LIABILITIES AND MEMBERS' DEFICIT

| | | |
|---|---|---:|
| Current Liabilities | | |
| Accounts Payable | $ | 577,283 |
| Accrued Expense | | 468,732 |
| Total current liabilities | | 1,046,016 |
| | | |
| Notes payable, net of current portion | | 6,346,045 |
| Total liabilities | | 7,392,061 |
| | | |
| Members' deficit | | (1,716,950) |
| | | |
| Total liabilities and members' deficit | $ | 5,675,111 |
| | $ | - |

UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

0106

One Way Loans LLC dba Powerlend
Statement of Operations
(Unaudited)
For the Four Months Ended April 30, 2019

| | | |
|---|---:|---:|
| Revenue | $ | 296,133 |
| Cost of loan | | 459,305 |
| | | - |
| Gross Profit (Loss) | | (163,172) |
| | | - |
| Operating expenses | | - |
| General & Administrative | | 625,388 |
| Payroll, benefits and related expenses | | 344,644 |
| Total operating expenses | | 970,031 |
| | | - |
| Other expense | | - |
| Interest expense | | 692,880 |
| Other income | | - |
| Other expense | | 6,313 |
| Total other expense | | 699,194 |
| | | - |
| | | - |
| Net Loss | | $ (1,832,397) |

UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

0107

One Way Loans LLC dba Powerlend
Statement of Cash Flows
(Unaudited)
For the Four Months Ended April 30, 2019

**Cash Flows from Operating Activities**

| | |
|---|---:|
| Net Loss | $ (1,832,397) |
| Adjustments to reconcile net loss to net cash used in operating activities | |
| Depreciation | 6,313 |
| Bad debts recovery | 200,000 |
| Adjustments to retained earnings | 78,959 |
| Changes in operating assets and liabilities | |
| Accounts receivable | 6,477 |
| Accounts payable | 581,555 |
| Accrued expenses | (169,043) |
| Prepaid expenses and other current assets | 58,502 |
| Net cash used in operating activities | 762,874 |

**Cash Flows from Investing Activities**

| | |
|---|---:|
| Due from Member | (346) |
| Net cash used in investing activities | (346) |

**Cash Flows from Financing Activities**

| | |
|---|---:|
| Purchase of PP&E | |
| Deposits and others | |
| Amortization of debt issuance costs | (306,712) |
| Note Payable | 1,450,000 |
| Net cash used in investing activities | 1,143,288 |
| Net decrease in cash and cash equivalents | 73,420 |
| Cash and cash equivalents, beginning of period | $      9,071 |
| Cash and cash equivalents, end of period | $     82,491 |

UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

**One Way Loans LLC dba PowerLend**

Internal Financial Statements
May 31, 2019
(Unaudited)



One Way Loans LLC dba Powerlend
Balance Sheet
(Unaudited)
May 31, 2019

## ASSETS

| | | |
|---|---|---:|
| Current Assets | | |
| Cash | $ | 28,028 |
| Accounts Receivable | | 2,736,439 |
| Prepaid expense and other current assets | | 372,936 |
| Total current assets | | 3,137,403 |
| | | |
| Intangibles | | 4,646 |
| Property, plant and equipment (net) | | 15,784 |
| Deferred marketing | | 2,341,538 |
| | | |
| Total Assets | | 5,499,371 |

## LIABILITIES AND MEMBERS' DEFICIT

| | | |
|---|---|---:|
| Current Liabilities | | |
| Accounts Payable | $ | 617,377 |
| Accrued Expense | | 535,191 |
| Total current liabilities | | 1,152,502 |
| | | |
| Notes payable, net of current portion | | 6,364,476 |
| Total liabilities | | 7,516,978 |
| | | |
| Members' deficit | | (2,017,607) |
| | | |
| Total liabilities and members' deficit | $ | 5,499,371 |

UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

One Way Loans LLC dba Powerlend
Statement of Operations
(Unaudited)
For the Five Months Ended May 31, 2019

| | | |
|---|---|---:|
| Revenue | $ | 346,661 |
| Cost of loan | | 621,287 |
| Gross Profit (Loss) | | (274,626) |
| | | |
| Operating expenses | | - |
| General & Administrative | | 680,417 |
| Payroll, benefits and related expenses | | 367,731 |
| Total operating expenses | | 1,048,148 |
| | | |
| Other expense | | |
| Interest expense | | 803,401 |
| Other income | | 1,014 |
| Other expense | | 7,892 |
| Total other expense | | 810,279 |
| | | |
| Net Loss | $ | (2,133,053) |

0111

One Way Loans LLC dba Powerlend
Statement of Cash Flows
(Unaudited)
For the Five Months Ended May 31, 2019

**Cash Flows from Operating Activities**

| | | |
|---|---|---|
| Net Loss | $ | (2,133,053) |
| Adjustments to reconcile net loss to net cash used in operating activities | | |
| Depreciation | | 7,892 |
| Bad debts recovery | | 300,000 |
| Adjustments to retained earnings | | 78,959 |
| Changes in operating assets and liabilities | | |
| Accounts receivable | | 26,176 |
| Accounts payable | | 621,693 |
| Accrued expenses | | (102,585) |
| Prepaid expenses and other current assets | | 58,502 |
| Net cash used in operating activities | | 990,637 |

**Cash Flows from Investing Activities**

| | | |
|---|---|---|
| Due from Member | | (346) |
| Net cash used in investing activities | | (346) |

**Cash Flows from Financing Activities**

| | | |
|---|---|---|
| Purchase of PP&E | | |
| Deposits and others | | |
| Amortization of debt issuance costs | | (288,281) |
| Note Payable | | 1,450,000 |
| Net cash used in investing activities | | 1,161,719 |
| Net decrease in cash and cash equivalents | | 18,957 |
| Cash and cash equivalents, beginning of period | $ | 9,071 |
| Cash and cash equivalents, end of period | $ | 28,028 |

UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

**One Way Loans LLC dba PowerLend**

Internal Financial Statements
June 30, 2019
(Unaudited)



One Way Loans LLC dba Powerlend
Balance Sheet
(Unaudited)
June 30, 2019

## ASSETS

| | | |
|---|---:|---:|
| **Current Assets** | | |
| Cash | $ | 3,535 |
| Accounts Receivable | | 2,621,583 |
| Prepaid expense and other current assets | | 373,411 |
| Total current assets | | 2,998,529 |
| | | |
| Intangibles | | 4,646 |
| Property, plant and equipment (net) | | 14,205 |
| Deferred marketing | | 2,341,538 |
| | | |
| Total Assets | | 5,358,918 |

## LIABILITIES AND MEMBERS' DEFICIT

| | | |
|---|---:|---:|
| **Current Liabilities** | | |
| Accounts Payable | $ | 653,295 |
| Accrued Expense | | 625,609 |
| Total current liabilities | | 1,278,904 |
| | | |
| Notes payable, net of current portion | | 6,382,907 |
| Total liabilities | | 7,661,811 |
| | | |
| Members' deficit | | (2,302,892) |
| | | |
| Total liabilities and members' deficit | $ | 5,358,918 |

UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

One Way Loans LLC dba Powerlend
Statement of Operations
(Unaudited)
For the Six Months Ended June 30, 2019

| | | |
|---|---|---:|
| Revenue | $ | 388,431 |
| Cost of loan | | 777,521 |
| | | - |
| Gross Profit (Loss) | | (389,090) |
| | | |
| Operating expenses | | |
| General & Administrative | | 722,341 |
| Payroll, benefits and related expenses | | 384,743 |
| Total operating expenses | | 1,107,084 |
| | | |
| Other expense | | |
| Interest expense | | 913,708 |
| Other inome | | 1,014 |
| Other expense | | 9,470 |
| Total other income and expense | | 922,164 |
| | | |
| Net Loss | | $ (2,418,338) |

UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

0115

One Way Loans LLC dba Powerlend
Statement of Cash Flows
(Unaudited)
For the Six Months Ended June 30, 2019

**Cash Flows from Operating Activities**

| | | |
|---|---|---:|
| Net Loss | $ | (2,418,338) |
| Adjustments to reconcile net loss to net cash used in operating activities | | |
| Depreciation | | 9,470 |
| Bad debts recovery | | 400,000 |
| Adjustments to retained earnings | | 78,959 |
| Changes in operating assets and liabilities | | - |
| Accounts receivable | | 41,031 |
| Accounts payable | | 657,678 |
| Accrued expenses | | (12,167) |
| Prepaid expenses and other current assets | | 58,027 |
| Net cash used in operating activities | | 1,232,998 |

**Cash Flows from Investing Activities**

| | |
|---|---:|
| Due from Member | (346) |
| Net cash used in investing activities | (346) |

**Cash Flows from Financing Activities**

| | |
|---|---:|
| Purchase of PP&E | - |
| Deposits and others | - |
| Amortization of debt issuance costs | (269,851) |
| Note Payable | 1,450,000 |
| Net cash used in investing activities | 1,180,149 |
| Net decrease in cash and cash equivalents | (5,536) |

| | | |
|---|---|---:|
| Cash and cash equivalents, beginning of period | $ | 9,071 |
| Cash and cash equivalents, end of period | $ | 3,535 |

UNAUDITED FOR INTERNAL USE ONLY NOT FOR DISTRIBUTION

# EXHIBIT K

**Exhibit K - List of FMV of Assets & Liabilities**

**ASSETS**

Current Assets

| Bank Accounts | CARRYING | | FMV | |
|---|---|---|---|---|
| 1005 Cash - BofA 5014 | | \ | | \ |
| 1007 Cash - PB 3633330 - Operating | | 0.00 | | 0.00 |
| 1010 Cash - PB 3633470 - Payroll (ZBA) | | 0.00 | | 0.00 |
| 1012 Cash - PB 3633500 - Funding (ZBA) | | 0.00 | | 0.00 |
| 1015 Cash - PB 3633799 - Collections (ZBA) | | 0.00 | | 0.00 |
| 1017 Cash - PBDIP 3001954- General | | 3,534.57 | | 3,534.57 |
| 1022 Cash - PBDIP 3002004- Taxes | | 0.00 | | 0.00 |
| 1030 ACTUM Reserve | | 0.00 | | 0.00 |
| 1031 PDS Payment Data Systems | | 0.00 | | 0.00 |
| 1035 Deposit in transit | | 0.00 | | 0.00 |
| 1040 Cash-PB 4140 Checking | | 0.00 | | 0.00 |
| 1050 Petty Cash | | 0.00 | | 0.00 |
| 1080 Suspense | | 0.00 | | 0.00 |
| **Total Bank Accounts** | $ | **3,534.57** | $ | **3,534.57** |
| Accounts Receivable | | | | |
| 1105 Accounts Receivable - Interest (Active) | | 73,110.08 | | 0.00 |
| 1107 Accounts Receivable - Interest (Recovery) | | 885,747.16 | | 0.00 |
| 1110 Accounts Receivable - Principal (Active) | | 283,751.15 | | 0.00 |
| 1120 Accounts Receivable-Principal (Recovery) | | 2,055,551.67 | | 200,000.00 |
| 1125 Accounts Receivable-Late and Fees Charges | | 6,645.37 | | 0.00 |
| 1126 A/R-Actum Reserve | | 0.00 | | 0.00 |
| 1127 PDS Payment Data Systems Reserve | | 10,030.00 | | 10,030.00 |
| 1128 Accounts Receivable-First Associates | | 5,747.78 | | 5,747.78 |
| 1130 Allowance for Bad Debt (Recovery) | | -699,000.00 | | 0.00 |
| **Total Accounts Receivable** | $ | **2,621,583.21** | $ | **215,777.78** |
| Other Current Assets | | | | |
| 1150 Advances | | 0.00 | | 0.00 |
| 1151 A/R - JGB | | 0.00 | | 0.00 |
| 1155 A/R - Moses Gross | | 45,000.00 | | 0.00 |
| 1310 Prepaid Insurance | | 0.00 | | 0.00 |
| 1315 Prepaid Rent | | 0.00 | | 0.00 |
| 1320 Security Deposits | | 94,030.70 | | 0.00 |
| 1325 Prepaid Compensation | | 0.00 | | 0.00 |
| 1330 Accounts Receivable-others | | 0.00 | | 0.00 |
| 1335 Due from Member | | 0.00 | | 0.00 |
| 1340 Deferred Marketing Expense | | 234,380.30 | | 0.00 |
| 1345 A/R Stockbridge Escrow Account | | 0.00 | | 0.00 |
| **Total Other Current Assets** | $ | **373,411.00** | $ | **0.00** |
| **Total Current Assets** | $ | **2,998,528.78** | $ | **219,312.35** |
| Fixed Assets | | | | |
| 1415 Leasehold Improvements | | 18,320.68 | | 0.00 |
| 1417 Accumulated Depreciation-Leasehold Improvements | | -18,320.68 | | 0.00 |

| | | |
|---|---|---|
| 1420 Office Equipment | 37,880.45 | 0.00 |
| 1423 Accumulated Depreciation-Office Equipment | -23,675.25 | 0.00 |
| 1500 Intangible Assets | 4,646.25 | 0.00 |
| **Total Fixed Assets** | **$ 18,851.45** | **$ 0.00** |
| **Other Assets** | | |
| 1505 Loan Origination Costs | 0.00 | 0.00 |
| 1510 Deferred Marketing Expense-LT | 2,341,538.00 | 0.00 |
| **Total Other Assets** | **$ 2,341,538.00** | **$ 0.00** |
| **TOTAL ASSETS** | **$ 5,358,918.23** | **$ 219,312.35** |
| **LIABILITIES AND EQUITY** | | |
| **Liabilities** | | |
| **Current Liabilities** | | |
| **Accounts Payable** | | |
| 2005 PRE -Accounts Payable (A/P) | 653,295.21 | 653,295.21 |
| **Total Accounts Payable** | **$ 653,295.21** | **$ 653,295.21** |
| **Credit Cards** | | |
| 2050 PRE-Credit Card-AMEX | 10,571.25 | 10,571.25 |
| 2055 PRE-Credit Card- PB | 21,433.73 | 21,433.73 |
| **Total Credit Cards** | **$ 32,004.98** | **$ 32,004.98** |
| **Other Current Liabilities** | | |
| 2010 PRE-Accounts Payable - Other | 0.00 | |
| 2015 PRE-Accrued Expenses | 12,056.93 | 12,056.93 |
| 2020 PRE-Accrued Payroll Expense | 0.00 | |
| 2025 PRE-Accrued Payroll Taxes-EE | 0.00 | |
| 2030 PRE-Accrued Interest Payable - Jorge Aroche | 14,348.84 | 14,348.84 |
| 2035 PRE-Accrued Interest Payable - Michael Silberman | 14,348.80 | 14,348.80 |
| 2040 PRE-Accrued Interest Payable - JGB Management, Inc. | 0.00 | |
| 2060 PRE-Accrued  Payroll Taxes-ER | 0.00 | |
| 2065 PRE-Due to member-Harinder Rana | 17,000.00 | 17,000.00 |
| 2320 POST-Accrued Interest Payable - Jorge Aroche | 13,038.81 | 13,038.81 |
| 2325 POST-Accrued Interest Payable - Michael Silberman | 13,037.90 | 13,037.90 |
| 2330 POST-Accrued Interest Payable - JGB Management, Inc. | 0.00 | |
| 2335 POST-Accrued Interest Payable - IGCFCO III LLP | 277,705.38 | 277,705.38 |
| 2346 Deferred Compensation | 232,067.00 | 232,067.00 |
| **Total Other Current Liabilities** | **$ 593,603.66** | **$ 593,603.66** |
| **Total Current Liabilities** | **$ 1,278,903.85** | **$ 1,278,903.85** |
| **Long-Term Liabilities** | | |
| 2205 PRE-Note Payable - JGB Management, Inc.-LT | 0.00 | |
| 2217 PRE-Note Payable-contra account | -554.98 | -554.98 |
| Total 2205 PRE-Note Payable - JGB Management, Inc.-LT | **-$ 554.98** | **-$ 554.98** |
| 2210 PRE-Note Payable - Jorge Aroche -LT | 100,000.00 | 100,000.00 |
| 2215 PRE-Note Payable - Michael Silberman -LT | 100,000.00 | 100,000.00 |
| 2216 PRE-Unamortized loan issuance cost | 0.00 | 0.00 |
| 2352 Post-Note Payable - IGCFOCO III, LLC | 6,575,000.00 | 6,575,000.00 |
| 2380 POST-Unamortized loan issuance cost | -391,538.37 | -391,538.37 |
| **Total Long-Term Liabilities** | **$ 6,382,906.65** | **$ 6,382,906.65** |
| **Total Liabilities** | **$ 7,661,810.50** | **$ 7,661,810.50** |

0118

# EXHIBIT L

**Exhibit L - Payroll Analysis**

**Pre-Confirmation Payroll**

| | 1 Oct-19 | 2 Nov-19 | 3 Dec-19 | 4 Jan-20 | 5 Feb-20 | 6 Mar-20 | 7 Apr-20 | 8 May-20 | 9 Jun-20 | 10 Jul-20 | 11 Aug-20 | 12 Sep-20 | 13 Oct-20 | 14 Nov-20 | 15 Dec-20 | 16 Jan-21 | 17 Feb-21 | 18 Mar-21 | 19 Apr-21 | 20 May-21 | 21 Jun-21 | 22 Jul-21 | 23 Aug-21 | 24 Sep-21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Employee 1 | $8,500 | $8,500 | $8,500 | $8,500 | $8,500 | $8,500 | $8,500 | $8,500 | $8,500 | $8,500 | $8,500 | $8,500 | $8,500 | $8,500 | $8,500 | $8,500 | $8,500 | $8,500 | $8,500 | $8,500 | $8,500 | $8,500 | $8,500 | $8,500 |
| Employee 2 | $3,850 | $3,850 | $3,850 | $3,850 | $4,235 | $4,235 | $4,235 | $4,235 | $4,428 | $4,428 | $4,428 | $4,428 | $4,428 | $4,428 | $4,428 | $4,428 | $4,428 | $4,428 | $4,428 | $4,428 | $4,428 | $4,428 | $4,428 | $4,428 |
| Employee 3 | $2,245 | $2,245 | $2,245 | $2,245 | $2,470 | $2,470 | $2,470 | $2,470 | $2,582 | $2,582 | $2,582 | $2,582 | $2,582 | $2,582 | $2,582 | $2,582 | $2,582 | $2,582 | $2,582 | $2,582 | $2,582 | $2,582 | $2,582 | $2,582 |
| Employee 4 | $3,368 | $3,368 | $3,368 | $3,368 | $3,704 | $3,704 | $3,704 | $3,704 | $3,873 | $3,873 | $3,873 | $3,873 | $3,873 | $3,873 | $3,873 | $3,873 | $3,873 | $3,873 | $3,873 | $3,873 | $3,873 | $3,873 | $3,873 | $3,873 |
| Employee 5 | $4,840 | $4,840 | $4,840 | $4,840 | $5,324 | $5,324 | $5,324 | $5,324 | $5,566 | $5,566 | $5,566 | $5,566 | $5,566 | $5,566 | $5,566 | $5,566 | $5,566 | $5,566 | $5,566 | $5,566 | $5,566 | $5,566 | $5,566 | $5,566 |
| Insider 1 (COO) | $3,000 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 |
| Insider 2 (CFO) | $3,000 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 |
| Insider 3 (CEO) | $3,000 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| | $31,803 | $30,303 | $30,303 | $30,303 | $31,733 | $31,733 | $31,733 | $31,733 | $34,948 | $34,948 | $34,948 | $34,948 | $34,948 | $34,948 | $34,948 | $34,948 | $34,948 | $34,948 | $34,948 | $34,948 | $34,948 | $34,948 | $34,948 | $34,948 |

Average Annual Payroll $404,404

**Post-Confirmation Payroll**

| | 1 Oct-19 | 2 Nov-19 | 3 Dec-19 | 4 Jan-20 | 5 Feb-20 | 6 Mar-20 | 7 Apr-20 | 8 May-20 | 9 Jun-20 | 10 Jul-20 | 11 Aug-20 | 12 Sep-20 | 13 Oct-20 | 14 Nov-20 | 15 Dec-20 | 16 Jan-21 | 17 Feb-21 | 18 Mar-21 | 19 Apr-21 | 20 May-21 | 21 Jun-21 | 22 Jul-21 | 23 Aug-21 | 24 Sep-21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Employee 1 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Employee 2 | $3,850 | $3,850 | $3,850 | $3,850 | $4,235 | $4,235 | $4,235 | $4,235 | $4,428 | $4,428 | $4,428 | $4,428 | $4,428 | $4,428 | $4,428 | $4,428 | $4,428 | $4,428 | $4,428 | $4,428 | $4,428 | $4,428 | $4,428 | $4,428 |
| Employee 3 | $2,245 | $2,245 | $2,245 | $2,245 | $2,470 | $2,470 | $2,470 | $2,470 | $2,582 | $2,582 | $2,582 | $2,582 | $2,582 | $2,582 | $2,582 | $2,582 | $2,582 | $2,582 | $2,582 | $2,582 | $2,582 | $2,582 | $2,582 | $2,582 |
| Employee 4 | $3,368 | $3,368 | $3,368 | $3,368 | $3,704 | $3,704 | $3,704 | $3,704 | $3,873 | $3,873 | $3,873 | $3,873 | $3,873 | $3,873 | $3,873 | $3,873 | $3,873 | $3,873 | $3,873 | $3,873 | $3,873 | $3,873 | $3,873 | $3,873 |
| Employee 5 | $4,840 | $4,840 | $4,840 | $4,840 | $5,324 | $5,324 | $5,324 | $5,324 | $5,566 | $5,566 | $5,566 | $5,566 | $5,566 | $5,566 | $5,566 | $5,566 | $5,566 | $5,566 | $5,566 | $5,566 | $5,566 | $5,566 | $5,566 | $5,566 |
| Insider 1 (COO) | $3,000 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 |
| Insider 2 (CFO) | $3,000 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 |
| Insider 3 (CEO) | $3,000 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| | $23,303 | $21,803 | $21,803 | $21,803 | $23,233 | $23,233 | $23,233 | $23,233 | $26,448 | $26,448 | $26,448 | $26,448 | $26,448 | $26,448 | $26,448 | $26,448 | $26,448 | $26,448 | $26,448 | $26,448 | $26,448 | $26,448 | $26,448 | $26,448 |

Average Annual Payroll $302,404

**Payroll Savings $102,000**

0119

# EXHIBIT M

# SUBLEASE AGREEMENT
## AMENDMENT #1

This First Amendment to the Sublease Agreement ("Agreement"), dated April 8, 2019, between David Redlener, Sublessor, and One Way Loans, LLC dba PowerLend, Subtenant (collectively, the "Parties"), is made effective as of September 26, 2019.

WHEREAS, the Parties desire to amend the Agreement to establish a new base rent of THREE THOUSAND TWO HUNDRED FIFTY AND 00/100 DOLLARS ($3,250.00) effective December 1, 2019.

Entire Agreement. Other than the changes made herein, no other changes are being made to the Agreement which shall remain in full force and effect.

IN WITNESS WHEREOF, the undersigned have executed this First Amendment to the Agreement as of the date above.

**SUBLESSOR**                                 **SUBTENANT**

David Redlener                                One Way Loans, LLC dba PowerLend

By: David Redlener, as an individual          By: David Redlener, CEO

1

0120

# EXHIBIT N

**Issues and Qualifying Factors**

The Debtor believe, based on the following  hypothetical analysis (the "Liquidation Analysis") that the Plan meets the "best interests of creditors" test as set forth in section 1129 (a)(7) of the Bankruptcy Code.  The Debtor believes the Liquidation Analysis and conclusions set forth herein are fair and accurate, and represent the Debtors' best judgement with regard to the results of a Chapter 7 liquidation of the Debtor. The analysis was prepared solely to assist the Court in making this determination, and should not be used for any other purpose. The Liquidation Analysis was prepared by the Debtor and is based on the Debtor's unaudited balance sheet as of December 31, 2018.

The Liquidation is based on a number of estimates and assumptions that are inherently subject to significant uncertainties and contingencies that are beyond the control of the Debtor. There can be no assurances that the values assumed in the accompanying analysis would be realized if the Debtor were, in fact, liquidated under Chapter 7. Accordingly, actual recovery percentages could vary from the amounts set forth herein and such variances could be material.

The estimated net recovery values presented herein consist of the net proceeds from hypothetical disposition of the Assets, reduced by certain costs and claims that may arise under a Chapter 7 liquidation. Asset recoveries presented herein are net of estimated direct costs of a Chapter 7 liquidation and related encumbrances. Discounts have been applied to recovery values of certain Assets to account for the nature and timing of Chapter 7 liquidation process.  The Liquidation Analysis assumes that an orderly wind-down would be substantially completed within six-months. The Debtor believe that six-months is an appropriate time period for liquidation, after taking into account the amount of time it would take to market, sell and dispose of the remaining Assets. There can be no assurances that the liquidation activities could be completed within the time framers outlined above. It is possible that the disposition of the Assets could exceed the assumed liquidation period, which could reduce the hypothetical recoveries.

The Liquidation Analysis also assumes that the Chapter 7 liquidation process would be uncontested and cooperative.  To the extent this were not the case, the recoveries on the Assets could be lower than assumed in this Liquidation Analysis. The outcome of an orderly liquidation process could be materially different  from the estimated recoveries as indicated  herein if the Debtor expedited the liquidation of Assets on a forced liquidation basis (i.e. the Chapter 7 trustee disposes of the Assets in fewer than six-months).

The Liquidation Analysis necessarily contains an estimate of the amount of Claims that will ultimately become Allowed Claims. Estimates for various Classes of Claims are based solely upon the Debtor's continuing review of the Debtor's books and records. No order or finding has been entered by the Bankruptcy Court estimating or otherwise fixing the amount of Claims at the projected levels set forth in the Liquidation Analysis.  In preparing the Liquidation Analysis, the Debtor has projected amounts of Claims that are consistent with the estimated Claims reflected in the Disclosure Statement.

The Liquidation Analysis assumes that there are no recoveries from the pursuit of any potential preferences, fraudulent conveyances or other causes of action and does not include the estimated costs of pursuing those actions. The Debtor reserves all rights in connection with any preferences, fraudulent conveyances, or other causes of action.

**General Assumptions**

The following is a list of key assumptions that were utilized in the Liquidation Analysis:

1. The basis for the Liquidation Analysis is (i) the Asset values in the Debtor's unaudited balance sheet as of June 30, 2018 presented on the Debtor's monthly operating report filed with the Bankruptcy Court (adjustments have been made to these balances and are further described below), (ii) information included in the Disclosure Statement and the Plan, and (iii) amounts presented in the Schedules filed on the DATE OF FILING.

2. The Liquidation Analysis assumes that the liquidation of the Debtor would commence on or about October 31, 2019 under the direction of a court-appointed Chapter 7 trustee. The Liquidation Analysis reflects the wind-down of operations and liquidation of substantially all of the Assets over a six-month period (the "Liquidation Period"), during which time all of major Assets would be sold and the Cash proceeds, net of liquidation-related costs, would be distributed to satisfy Claims.

3. The Liquidation Analysis assumes that the Liquidation Period would not provide sufficient time to maximize value during the sale of the Assets, rather, the Assets would likely be valued and transacted upon at "distressed" levels.

4. The Liquidation Analysis assumes that proceeds realized from Chapter 7 liquidation would be further reduced by administrative costs incurred during the wind-down of the operations, the disposition of the Assets and the reconciliation of Claims. These costs include primarily professional fees and fees of the Chapter 7 trustee.

5. The Liquidation Analysis assumes the net proceeds for the sale of the Assets will be distributed under the absolute priority rule in section 1129 (b) (2) of the Bankruptcy Code and that no distributions will be made to Holders of Equity Interests until all Creditors are paid in full.

6. Upon conversion of Bankruptcy Case to Chapter 7, it is assumed that the Debtor will be permitted the use of Cash for the purposes of managing a wind-down and liquidation of the Assets.

7. While the Liquidation Analysis assumes liquidation over a six-month period commencing October 31, 2019, it is possible that the disposition and recovery from certain Assets could take longer to realize. The potential impact of litigation and actions by other Creditors could increase the amount of time required to realize the recoveries assumed in the analysis. Such events could also add additional costs to the liquidation in the form of higher legal and professional fees to resolve these potential events.

**Notes to Liquidation Analysis**

Except where noted, the Asset and Liability values are assumed to be consistent with the latest available financial data.  For the purposes of the Liquidation Analysis, the Debtor have utilized the estimated values presented in the unaudited balance sheet as of June 30, 2019, included in the Debtor's monthly operating report filed with the Bankruptcy Court.  In addition, amounts from the Disclosure Statements and amounts presented in the Schedules have been utilized.

(1) Cash- the Debtor's Cash balance as of June 30, 2019 as reported in the monthly operating report for the period then ended.  The Liquidation Analysis assumes that a conversion to Chapter 7 would reduce the Cash balance amount to zero by the commencement of the hypothetical liquidation.

*(2)* Accounts Receivable-Loan Portfolios represents the aggregate amount of performing and non-performing loans inclusive of principal and accrued interest.  The $202,000 liquidation value was based on an offer made by a third-party collection firm for the non-performing loan portfolio and from First Associates for the performing loan portfolio.  *It should be noted that both the performing and non-performing loan portfolio and all related portfolio receivables are encumbered as part of the collateral base to secure the senior DIP loan, thus the Debtor estate technically does not have access to liquidate such loan receivables.*

(3) Furniture & Fixtures/Office Equipment-consists primarily of desk top computers and printers, conference table, desks, and chairs. Company management believes that in the case of liquidation, the recovery rates will range from 5% to 15%.

(4) Deferred Marketing- represents an agreed upon forward looking transaction with a third-party to provide lead and marketing services at an agreed upon formula for a going concern. There is no value is such agreement upon the cessation of operations.

(5) Chapter 7 Trustee Fees-amount represents the preliminary estimated Chapter 7 trustee costs.

(6) Chapter 7 Trustee's Professional Fees- it is assumed that the Chapter 7 trustee will hire advisors to assist in the administration of the Chapter 7 liquidation.

(7) Administrative Claim- represents the aggregate amount of cure cost claims for executory contracts to be accepted at Plan Confirmation

(8) Professional Fee Claims-represents estimated fees due to Sulmeyer Kupetz, as Debtor's counsel and ASI Advisors, LLC, as Debtor's financial advisors.

(9) Priority Tax Claim- This liquidation analysis reflects an amount due to the City of Culver, CA Revenue Division representing an outstanding business tax due.

(10) Class 1: First Priority Secured DIP Loan Claim

(11) Class 2: Non-Insider General Unsecured Claims- GUC's is comprised of numerous claims that aggregate $488,698, which the Debtor has no objections for such claims.

(12)Class 3: Insider General Unsecured Claims-GUC's is comprised approximately five claims for insiders representing amount in excess of the Allowed Insider Priority Wage Claims, which the Debtor has no objections for such claims.

(13)Class 4: Non-Insider Priority Wage Claims-represents unpaid wages up to the statutory limits for unpaid wages pre-petition.

(14)Class 5:  Insider Priority Wage Claims-represents unpaid wages up to the statutory limits for unpaid wages pre-petition.

(15)Class 6: Equity Interests-Per the Plan, holders of Equity Interests in the Debtor shall neither receive nor retain any property under the Plan. On the Effective Date, all Equity Interests in the Debtor shall be cancelled and of no further force or effect and all Claims filed on account of Equity Interests shall be deemed disallowed by operation of the Plan.

**Liquidation Analysis for the Debtor**

Presented in the schedule below is a summary of the estimated net book value of Assets and related estaimted liquidation recoveries.

| *(in thousands)* | Reported Book Value at6/30/2019 | Estimated Book Value at Liquidation Date | Estimated Recovery Low Case (%) | High Case (%) | Estimated Liquidation Low $ | High $ |
|---|---|---|---|---|---|---|
| **Assets** | | | | | | |
| **Current Assets** | | | | | | |
| Cash | 3,535 | 0 | | | | |
| A/R-Loan Portfolios | 2,621,583 | 2,621,583 | | | 150,000 | 202,000 |
| Prepaid Expenses | 373,411 | 373,411 | | | 0 | 0 |
| Other Current Assets | 0 | 0 | | | 0 | 0 |
| **Total Current Assets** | 2,998,529 | 2,994,994 | | | 150,000 | 202,000 |
| | | | | | | |
| **Property & Equipment** | | | | | | |
| Furniture, Fixtures, Office Equipment | 14,205 | 14,205 | 5% | 15% | 710 | 2,130 |
| | | | | | | |
| **Total Property & Equipment** | 14,205 | 14,205 | | | 710 | 2,130 |
| Deferred Marketing | 2,341,538 | 2,341,538 | 0 | 0 | 0 | 0 |
| | | | | | | |
| **Total Other Assets** | 2,341,538 | 2,341,538 | | | 0 | 0 |
| | | | | | | |
| **Total Assets** | **5,354,272** | **5,354,272** | | | **150,710** | **204,130** |
| | | | | | | |
| **Estimated Liquidation Costs and Claims** | | | | | | |
| Chapter 7 Trustee Fees | | | | | 25,000 | 50,000 |
| Chapter 7 Trustee's Professional Fees | | | | | 25,000 | 50,000 |
| Administrative Claims | | | | | 31,624 | 31,624 |
| Professional Fee Claims | | | | | 390,000 | 390,000 |
| **Total Estimated Liquidation Costs and Claims** | | | | | **471,624** | **521,624** |
| | | | | | | |
| **Net Estimated Liquidation Proceeds** | | | | | **0** | **0** |

| **PRELIMINARY** | Est. Claim | | Net | |
|---|---|---|---|---|
| **Estimated Claims** | Amount | | Distribution | |
| Priority Tax Claims | $12,865 | | 0 | 0 |
| Class 1-Secured Claims | $8,300,000 | | 0 | 0 |
| Class 2-Non-Insider General Unsecured Creditors | $488,698 | Note-1 | 0 | 0 |
| Class 3- Insider General Unsecured Creditors | $203,890 | | 0 | 0 |
| Class 4-Non-Insider Priority Wage Claims | $51,291 | | | |
| Class 5-Insider Priority Wage Claims | $51,400 | | | |
| Class 6-Interests | $0 | | | |
| | | | | |
| **Total** | **$9,108,144** | | **0** | **0** |

Notes (1)- Amount payable ahead of all Chapter 7 and Chapter 11 Administrative costs and Professional Fees in Chapter 7 liquidation

# EXHIBIT O

**Exhibit O - Vendor List (October 1, 2019)**

| | |
|---|---:|
| ADT | $ 25.00 |
| Allied Delta Dental | $ 565.00 |
| Anthem Blue Cross | $ 2,974.00 |
| Broadvoice Business | $ 1,594.00 |
| Effortless Office | $ 2,568.00 |
| Equifax | $ 20.00 |
| Experian | $ 152.00 |
| Infinity | $ 1,500.00 |
| Kaiser | $ 881.00 |
| LADWP | $ 1,140.00 |
| SoCalGas | $ 174.00 |
| Spectrum | $ 200.00 |
| | $ 11,793.00 |

0126

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*):  **FIRST AMENDED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION FOR ONE WAY LOANS, LLC**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  September 27, 2019  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Dawn M Coulson on behalf of Interested Party Courtesy NEF
dcoulson@eppscoulson.com, cmadero@eppscoulson.com

Carl Grumer on behalf of Interested Party JGB (Cayman) Glenmachrie Ltd.
cgrumer@manatt.com, mchung@manatt.com;fstephenson@manatt.com

Carl Grumer on behalf of Interested Party JGB Collateral, LLC
cgrumer@manatt.com, mchung@manatt.com;fstephenson@manatt.com

Andrew Haley on behalf of Interested Party CF Culver City Office, L.P.
ahaley@shoreline-law.com, kbarone@shoreline-law.com

Asa S Hami on behalf of Debtor One Way Loans, LLC, d/b/a PowerLend
ahami@sulmeyerlaw.com, agonzalez@sulmeyerlaw.com;agonzalez@ecf.inforuptcy.com;ahami@ecf.inforuptcy.com

Asa S Hami on behalf of Interested Party Courtesy NEF
ahami@sulmeyerlaw.com, agonzalez@sulmeyerlaw.com;agonzalez@ecf.inforuptcy.com;ahami@ecf.inforuptcy.com

David S Kupetz on behalf of Debtor One Way Loans, LLC, d/b/a PowerLend
dkupetz@sulmeyerlaw.com, dperez@sulmeyerlaw.com;dperez@ecf.courtdrive.com;dkupetz@ecf.courtdrive.com

Dare Law on behalf of U.S. Trustee United States Trustee (LA)
dare.law@usdoj.gov, ron.maroko@usdoj.gov;Alvin.mar@usdoj.gov

Ron Maroko on behalf of U.S. Trustee United States Trustee (LA)
ron.maroko@usdoj.gov

Sabrina L Streusand on behalf of Creditor Actum Processing
Streusand@slollp.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Gerrick Warrington on behalf of Creditor Preferred Bank
gwarrington@frandzel.com, sking@frandzel.com

Claire K Wu on behalf of Debtor One Way Loans, LLC, d/b/a PowerLend
ckwu@sulmeyerlaw.com, mviramontes@sulmeyerlaw.com;ckwu@ecf.courtdrive.com;ckwu@ecf.inforuptcy.com

Claire K Wu on behalf of Interested Party Courtesy NEF
ckwu@sulmeyerlaw.com, mviramontes@sulmeyerlaw.com;ckwu@ecf.courtdrive.com;ckwu@ecf.inforuptcy.com

☐ Service information continued on attached page.

CKW 2686315v2 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                         **F 9013-3.1.PROOF.SERVICE**

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  September 27, 2019 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY**
The Honorable Sandra R. Klein
U.S. Bankruptcy Court
Roybal Federal Building
Bin outside of Suite 1582
255 E. Temple Street
Los Angeles, CA 90012

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 27, 2019 | Maria R. Viramontes | /s/Maria R. Viramontes |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

CKW 2686315v2 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                            **F 9013-3.1.PROOF.SERVICE**